Isaac D. Zorea
Law Office of Isaac Derek Zorea
P.O. Box 210434
Anchorage, AK 99521
(907) 677-3779
(907) 644-2802 facsimile

RECEIVED
MAR 2 1 2006
CLERK U.S. DISTRICT COURT
ANCHORAGE ALASKA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

CAROLYN MITCHELL,

    Plaintiff,

vs.

ANCHORAGE POLICE DEPARTMENT and the MUNICIPALITY OF ANCHORAGE, a municipal corporation, WALTER MONEGAN, Officer HENIKMAN, and Officer J. VOSS,

    Defendants.

Case No. A05-0273 CV (JWS)

## COMPLAINT

### AMENDED

Comes Now, CAROLYN MITCHELL, by and through her attorneys, MOSHE CALBERG ZOREA and ISAAC DEREK ZOREA, alleging as follows:

### JURISDICTION

1.1.    At all relevant times, Plaintiff resided within Anchorage, Alaska, Third Judicial District, State of Alaska.

1.2.    Defendant Municipality of Anchorage is now, and at all time mentioned in this complaint was, a municipal corporation existing by virtue of the laws of the State of Alaska, and located within the Third Judicial District.

1.3.    Defendant Anchorage Police Department is now, and at all times mentioned in this complaint was, an agency of the Municipality of Anchorage,

COMPLAINT: MITCHELL V. MOA, POLICE DEPARTMENT, ET AL.    PAGE - 1 -

1  existing by virtue of the municipal ordinances of the Municipality of Anchorage,
2  located within the Third Judicial District.

3      1.4.    Defendant Walter Monegan is now, and at all times mentioned in this
4  complaint was, the police chief for the Anchorage Police Department, a municipal
5  agency of the Municipality of Anchorage, located within the Third Judicial District.

6      1.5.    Defendant Officer Henikman, DSN 28525, is believed now, and at all
7  times mentioned in this complaint was, a duly appointed and acting police office of
8  defendant Municipality of Anchorage.

9      1.6.    Defendant Officer J. Voss, DSN 28532, is believed now, and at all
10 times mentioned in this complaint was, a duly appointed and acting police officer of
11 defendant Municipality of Anchorage.

12     1.7.    Venue properly rests within the Third Judicial District, State of
13 Alaska.

## FACTS

15     2.1    On or about May 8, 2004, at approximately 3:15 pm, plaintiff, and her
16 twelve year old son, DeMarcus, was shopping at the Sears Department Store, located
17 on the corner of Benson Blvd., and New Seward Hwy, in Anchorage, Alaska.

18     2.2    After purchasing some items at the Sears Department Store, plaintiff
19 and her son began to exit the store, heading toward the store's New Seward Hwy
20 exit, however, before she could exit the store, police officers from the Municipality
21 of Anchorage, Department of Police, directed plaintiff and other store patrons to exit
22 through the store's Mall entrance, and plaintiff and her son complied.

23     2.3.    Fearful that some emergency existed at Sears Mall, plaintiff and her
24 son, hurriedly followed police directions out of the Sears Department Store and into
25 the Sears Mall, where police stood with weapons drawn directing plaintiff, her son,
26 and other patrons to exit the Sears Mall through its Benson Blvd. Exit, and plaintiff
27 and her son complied.

28 COMPLAINT: MITCHELL V. MOA, POLICE DEPARTMENT, ET AL.                PAGE - 2 -

2.4. As soon as plaintiff, her son, and other mall patrons, exited the Sears Mall, she encountered police officers with weapons drawn, one of the officers with a drawn weapon shouted to the crowd, saying: "Everyone move except the African-American female." In seconds, plaintiff and her son were isolated in front of the Sears Mall, as they were the only minorities outside the mall.

2.5. Plaintiff, and her twelve-year old son, stood isolated in front of the Sears Mall facing multiple police officers with drawn weapons, until one officer with a drawn weapon ordered the "African-American male" to move from the female, and confused and frightened that her son would be shot, plaintiff directed her son to move away from her. Demarcus Mitchell moved away from his mother.

2.6. After her son moved from where she stood in front of the Sears Mall, plaintiff asked the police officers, who still stood in front of her with weapons drawn, whether her son could make a phone call with her cell phone, so her son could contact his father, and the police officers refused to permit her son to make any call to his father.

2.7. As plaintiff stood isolated in front of the Sears Mall, in full view of all passing vehicles traveling on Benson Blvd., an armed police officer commanded plaintiff to drop her bags on the ground, and to raise her hands in the air. Plaintiff complied with this demand.

2.8. After being asked to drop her bags, the same officer with a drawn weapon inquired of plaintiff whether she had any deadly weapons, and plaintiff replied that she did not have any weapons, and asked what was happening to her, and that she wanted someone to look after her twelve-year old son.

2.9. As plaintiff stood with her hands in the air in front of the Sears Mall in full view of all passing vehicles traveling on Benson Blvd., she was ordered by an unseen officer to walk backwards, and plaintiff did so, taking four steps before an officer took her hands from behind and handcuffed plaintiff's hands behind her back.

COMPLAINT: MITCHELL V. MOA, POLICE DEPARTMENT, ET AL.                    PAGE - 3 -

2.10. After being placed in handcuffs, plaintiff was led to the rear of a police vehicle, fully in view of all vehicles passing along Benson Blvd., where police emptied the contents of plaintiff's handbag, obtained her identification, and yet failed to explain why plaintiff was being held. Police kept plaintiff in handcuffs, even after inspecting her handbag, and after discovering that she had no weapons on her person.

2.11. For over thirty minutes, police forced plaintiff to stand in handcuffs at the corner of the Sears Mall, in full view of all passing vehicles traveling on Benson Blvd., or stopped at the Benson Blvd., and New Seward Hwy intersection; during this time many people recognized plaintiff as she stood in handcuffs, and the local television news (KTUU) even video taped plaintiff in handcuffs.

2.12. After enduring over thirty minutes of humiliation, a police vehicle passed in front of plaintiff, and a teller from Wells Fargo bank informed police that plaintiff was not the bank robber that the police had been looking for, at which time the police chose to remove plaintiff's handcuffs and released her.

2.13 During the whole time that plaintiff remained in police custody, her twelve-year old son remained unattended to, and plaintiff feared for her son's safety.

2.14. At all times relevant to this complaint, plaintiff has been an independent business person, running a beauty shop, whose financial livelihood is dependent upon her integrity and reputation within the community.

2.15. Although Anchorage Municipal police officers held plaintiff in handcuffs for over thirty minutes, no officer give her an opportunity to arrange for care of her twelve-year old child, nor fully explain to plaintiff why she had been arrested.

2.16. During the time that Anchorage Municipal police held plaintiff in custody, handcuffed in full view of all vehicles passing, or stopped, on Benson Blvd., police made no efforts to remove plaintiff from public ridicule, or otherwise minimize the harm she suffered by being wrongfully incarcerated.

## LEGAL CLAIMS

A.  **FALSE ARREST**

3.1.  On or about May 8, 2004, at approximately 3:15 pm, a police officer for the defendant Municipality of Anchorage, wearing a police officer uniform, directed plaintiff out from the Sears department store that she had been shopping at with her 12-year old son. When plaintiff followed the police officer outside the building, she immediately noticed numerous other police officers for the Municipality of Anchorage pointing weapons toward her person, and toward her son.

3.2.  As soon as plaintiff noticed the police officers pointing weapons at her, and her son, one of the police officers segregated plaintiff from all bystanders, and away from her twelve-year old son, demanding that she as the only "African-American" woman remain where she stood.

3.3.  While multiple police officers for the Defendant Municipality of Anchorage continue to point their weapons at plaintiff, defendant police officer Henikman, DSN 28525, spoke from behind plaintiff, asked her to back up toward his voice, and when she had moved several feet backward, defendant officer Henikman did forcibly take plaintiff's hands behind her back and apply handcuffs to her, thereby placing her completely in his custody, and effectuating an arrest, per AS 12.25.050.

3.4.  After handcuffing plaintiff, police officer Henikman moved her toward the trunk area of a nearby police vehicle, where after rummaging through the contents of plaintiff's purse, and gathering her personal information, he told plaintiff he would remove her handcuffs, which were causing her wrists to swell. Before defendant officer John Doe 1 could remove plaintiff's handcuffs, defendant officer J. Voss, DSN 28532, instructed him to leave the handcuffs on plaintiff.

3.5.  Plaintiff remained in the custody of defendant police officers Henikman and J. Voss for over thirty minutes, during which time said officers forced

COMPLAINT: MITCHELL V. MOA, POLICE DEPARTMENT, ET AL.                    PAGE - 5 -

plaintiff to stand handcuffed within clear view of all passing pedestrians, and vehicles, traveling along the intersection of Benson Boulevard and New Seward Highway, one of the busiest intersections in Anchorage, Alaska.

3.6. Defendant police officers Henikman and J. Voss committed the above-described acts and detained plaintiff's person wrongfully, illegally, and without reason, just cause, warrant, judicial order, or other authority of law.

3.7. Defendant police officers Henikman and J. Voss committed the above-described acts while acting within the scope of their employment, and pursuant to training and instructions they received as officers of the Anchorage Police Department, under the supervision of Chief of Police, defendant Walter Monegan.

3.8. As a direct and proximate result of the conduct by defendant police officers Henikman and J. Voss, plaintiff was physically injured, humiliated and embarrassed in the presence of her child, numerous business associates, friends, and other witnesses, to plaintiff's damage in the sum in excess of the jurisdictional threshold of this court, the exact amount to be determined at trial.

3.9. In committing the acts exhibited by defendant police officers Henikman and J. Voss, exhibited a complete disregard for plaintiff's rights and person and exhibited a rash, belligerent, and outrageous attitude toward plaintiff, and a disregard for plaintiff's position as mother, and guardian, of her child. By the outrageous conduct exhibited by officers Henikman and J. Voss, plaintiff should be awarded exemplary and punitive damages against defendants in the further sum in excess of the jurisdictional threshold of this court, the exact amount to be determined at trial.

B. **DEFAMATION: SLANDER PER SE**

4.1. On or about May 8, 2004, at approximately 3:15 pm, defendants Anchorage Police Department and the Municipality of Anchorage, did, acting through its agents, defendants Walter Monegan, Officer Henikman, and Officer J. Voss, cause plaintiff to become handcuffed and arrested, in full view of the public, and her twelve-year old son, which arrest was made illegally, without warrant or probable cause, thereby publishing the false communication that plaintiff had committed an illegal act.

4.2. The above referenced false and defamatory publication that defendants made concerning plaintiff, amounted to an unprivileged publication to a third party.

4.3. The referenced false and defamatory publication, i.e. handcuffing and falsely arresting plaintiff Carolyn Mitchell, conveyed information concerning plaintiff that defendants should have known, were false, and/or misleading.

4.4 The false and defamatory publication that defendants made concerning plaintiff, by handcuffing and illegally arresting her on May 8, 2004, were publications that had a natural tendency to injure Mrs. Mitchell's reputation in her community, and adversely impact her ability to earn a living.

4.5. The false and defamatory publication that defendants made concerning plaintiff, by handcuffing and illegally arresting her on May 8, 2004, were made recklessly, and constitute outrageous behavior.

4.6. In compensation for the violations alleged in paragraphs 4.1 to 4.5, plaintiff Carolyn Mitchell seeks against defendants Anchorage Police Department and the Municipality of Anchorage, defendants Walter Monegan, Officer Henikman, and Officer J. Voss, in their individual and official capacities, compensatory damages, punitive damages, attorney fees, and all other remedies that the court deems just, and appropriate, in excess of the jurisdictional threshold of this court.

COMPLAINT: MITCHELL V. MOA, POLICE DEPARTMENT, ET AL.                    PAGE - 7 -

1    C.    <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

2        5.1.    Plaintiff, Carolyn Mitchell, incorporating the facts and allegations above, alleges that defendants Anchorage Police Department and the Municipality of Anchorage, defendants Walter Monegan, Officers Henikman, and Officer J. Voss, in their individual and official capacities, acted in such a way, by handcuffing, and illegally arresting plaintiff, in front of her twelve-year old son, and the general public, that its conduct was extreme and outrageous.

       5.2.    Plaintiff, Carolyn Mitchell, alleges that defendants Anchorage Police Department and the Municipality of Anchorage, defendants Walter Monegan, Officer Henikman, and Officer J. Voss, in their individual and official capacities, acted toward plaintiff in a manner that was intentional or reckless.

       5.3.    Plaintiff, Carolyn Mitchell, alleges that defendants Anchorage Police Department and the Municipality of Anchorage, defendants Walter Monegan, Officer Henikman, and Officer J. Voss, in their individual and official capacities, acted toward plaintiff in such an egregious manner that the conduct did cause severe emotional distress to plaintiff.

       5.4.    As remedy for defendants' tort of intentional infliction of emotional distress, plaintiff, Carolyn Mitchell, does request compensatory damages, punitive damages, and attorney fees, in an amount in excess of the jurisdictional threshold of this court.

D.    <u>CIVIL RIGHTS VIOLATION, PER 42 U.S.C. § 1983</u>

       6.1.    Plaintiff, Carolyn Mitchell, incorporating the facts and allegations above, alleges that defendant Municipality of Anchorage, as a municipal corporation, and defined as a person for purposes of 42 U.S.C, § 1983, along with defendants Walter Monegan, Officer Henikman, and Officer J. Voss, acting in their official capacities, and under color of state law, did handcuff and illegally arrest plaintiff pursuant to official policy of the Anchorage Police Department.

COMPLAINT: <u>MITCHELL V. MOA, POLICE DEPARTMENT, ET AL.</u>        PAGE - 8 -

6.2. Plaintiff alleges that the official policy of the Anchorage Police Department, which permits citizens of Anchorage, Alaska, to become handcuffed, and arrested, without warrant, and without verified, probable cause, as occurred to plaintiff on May 8, 2004, violates the protections provided under the 4th Amendment of the United States Constitution.

6.3. Plaintiff alleges as a direct and proximate cause of the conduct by defendants, whereby official policy of the Anchorage Police Department, permitted officer Henikman and J. Voss, to arrest and detain plaintiff, she did suffer physical injury, humiliation and embarrassment in front of her child, business associates, friends, and other witnesses, to plaintiff's damage in the sum in excess of the jurisdictional threshold of this court.

6.4. Plaintiff further requests declaratory and injunctive relief against the Anchorage Police Department, requesting that its policies concerning arrests made without warrant be brought into line with the requirements of AS 12.25.030, so that other residents similarly situated to plaintiff, will not become arrested merely because of the color of their skin, or the basis of their gender.

6.5. Plaintiff further requests attorney fees, and remedies, as permitted under 42 U.S.C. § 1988.

WHEREFORE, plaintiff CAROLYN MITCHELL requests judgment against defendants Anchorage Police Department and the Municipality of Anchorage, defendants Walter Monegan, Officer Henikman, and Officer J. Voss, in their individual and official capacities, as follows:

1. As compensation for defendants' violations of FALSE ARREST, plaintiff seeks compensatory damages, emotional damages, punitive damages, and attorney fees in excess of $100,000.00, with the exact amount to be proven at trial.

COMPLAINT: MITCHELL V. MOA, POLICE DEPARTMENT, ET AL.                          PAGE - 9 -

2. As compensation for the defendants' violations of DEFAMATION: SLANDER PER SE, plaintiff seeks compensatory damages, emotional damages, lost income, punitive damages, and attorney fees in excess of $100,000.00, with the exact amount to be proven at trial.

3. As compensation for the defendants' violations of INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, plaintiff seeks compensatory damages, emotional damages, punitive damages, and attorney fees in excess of $100,000.00, with the exact amount to be proven at trial.

4. As compensation for the defendants' violations of 42 U.S.C. § 1983, plaintiff seeks declaratory and injunctive relief, compensatory damages, emotional damages, in excess of $100,000.00, with the exact amount to be proven at trial.

5. Plaintiff Carolyn Mitchell seeks all permissible attorney fees, and court costs, related to bringing forward this civil cause of action, specifically as permitted under 42 U.S.C. § 1988, and Alaska Civil Rules.

6. Plaintiff Carolyn Mitchell seeks such other and further relief as the court may deem just and proper based on the egregious nature of defendants' conduct.

Dated this 20th day of March 2006.

Law Office of Moshe Calberg Zorea

*(signature)*
Moshe Calberg Zorea
ABA No. 84-06055
Co-Counsel for Carolyn Mitchell

Law Offices of Isaac Derek Zorea

*(signature)*

Isaac Derek Zorea
ABA No. 00-11090
Co-Counsel for Carolyn Mitchell