Isaac D. Zorea
Law Office of Isaac Derek Zorea
P.O. Box 210434
Anchorage, AK 99521
(907) 677-3779
(907) 644-2802 facsimile

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

CAROLYN MITCHELL,                          )
                                           )
        Plaintiff,                         )
    vs.                                    )
                                           )
ANCHORAGE POLICE DEPARTMENT and the        )
MUNICIPALITY OF ANCHORAGE, a               )
municipal corporation, WALTER MONEGAN,     )
Officer HENIKMAN, and Officer J. VOSS,     )
                                           )
        Defendants.                        )
_____) Case No. 3:05-cv-00273-JWS

**PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT**

Plaintiff Carolyn Mitchell, through counsel, Isaac Derek Zorea, move for

partial summary judgment on the issue of whether Defendants Officer Henikman and

Officer Voss committed the tort of false arrest on May 8, 2004, pursuant to Federal

Rule of Civil Procedure 56.  This brief, and its attached exhibits, will show that no

factual dispute exists concerning whether Plaintiff Carolyn Mitchell was falsely

arrested on May 8, 2004, and this issue should be decided as a matter of law.

This lawsuit is the result of a deplorable situation wherein the plaintiff,

Carolyn Mitchell, suffered needless humiliation and fear in front of her twelve-year

old son, at the hand of the Anchorage Police Department.  While on a simple

shopping trip to the Sears department store, officers for the Anchorage Police

Department segregated Mitchell based on her race, subjected her to drawn weapons,

handcuffed her, and then publicly detained her for over twenty minutes.  During the

time that she was handcuffed, police officers refused to allow her to make a call to

her husband, so he could ensure the safety of her twelve-year old son.  While

standing handcuffed for anyone to see, police never questioned Mitchell nor

informed her of the reason for why she had been handcuffed.  When the police

decided that Mitchell had not committed any crime, they summarily released her,

without any explanation or counseling.

The harm inflicted upon Mitchell is all the more tragic because the

Anchorage Police Department has argued that its officers complied with, and

properly implemented, current police policy.[1]  None of the police officers involved in

this case have been, in any way, disciplined by supervisors at the Anchorage Police

Department.[2]  Similarly, neither officer named in this lawsuit acknowledges that they

violated the rights of Mitchell.  Both officers named in this case state that under

similar situations they would behave in similar fashion.

---

[1] Exhibit A, Monegan's Responses to Plaintiff's Requests for Admissions, at 2-3 (req. # 8-9) [Hereinafter: "Ex. A, at __."].

[2] Exhibit B, Officer Justin Voss's Responses to Plaintiff's Interrogatories and Requests for Production, at 2-3 (Int. # 4)  [Hereinafter: "Ex. B, at __."]; Exhibit C, Officer Ross Henikman's Responses to Plaintiff's Interrogatories and Requests for Production, at 2-3 (Int. # 4) [Hereinafter: "Ex. C, at __."].

This lawsuit intends to establish what limits exist on police officers investigating crimes within the Anchorage Municipality.  It is imperative that the Anchorage Police Department understand that the authority to stop and detain citizens in Anchorage, Alaska has limits.  Further, it is imperative that all defendants named in this suit realize that concerning plaintiff Carolyn Mitchell, police officers exceeded their authority when stopping and detaining her.

In her complaint, Carolyn Mitchell has alleged several causes of action, but her request for summary judgment is limited in scope.  Summary judgment is only available where the facts are not disputed and judgment on the law is appropriate.  In the case at hand, Mitchell seeks summary judgment only on the issue of false arrest.

The determination of whether the tort of false arrest has occurred is a legal question, and based on the undisputed facts of this case this legal determination is ripe for this court to decide.  As will be elaborated on below, all relevant facts related to false arrest are undisputed, and summary judgment on this limited issue is appropriate at this time.

I.  UNDISPUTED FACTS.

On Saturday, May 8, 2004, at approximately 3:15 p.m., Carolyn Mitchell was shopping at the Anchorage Sears department store, searching for a pair of shoes and a suit for her 12 year old son, Demarcus, to attend an upcoming church event. Exhibit D, Affidavit of Carolyn Mitchell, at 1, ¶ 1 [Hereinafter: "Ex. D, at __."].  Mitchell purchased the items and began to exit the store, with her son, through the northern exit. Id..

As Mitchell moved toward the northern exit of the Sears department store, she noticed police officers with weapons drawn directing patrons to exit the store through the mall entrance of the store (located westward). Ex. D, at 1, ¶ 2.  Mitchell, and her son, complied with the police officer's demands, and quickly left Sears department store through its westward exit. Id..  As she exited Sears department store from its westward exit, she observed police officers with weapons drawn standing within the Mall directing the departing customers to exit the mall through its south exit.  The Mall's south exit was through a hallway bordering the GNC store on the west and the Sears department store on east. Ex. D, at 2, ¶ 3.  The hallway exited into the Mall's parking lot that directly bordered Benson Boulevard. Id..

As she left the Sears Mall, as directed by police officers, Mitchell observed two policeman, later identified as Officer Justin Voss and Officer Henikman, who stood with weapons drawn and pointed toward her and Demarcus. Ex. D, at 2, ¶ 4. One of the officers spoke toward Mitchell, saying, "Everyone move except the African-American female." Id..  After the police officer issued the command, Demarcus did not want to leave his mother's side, and tried to remain next to her. Ex. D, at 2, ¶ 5. However, one of the police officer's with weapon drawn identified Demarcus by describing his clothing, and ordered that he "quickly move" away from the African-American female. Id..  Demarcus reluctantly complied, after Mitchell told him to do as commanded. Id..

After being singled out by the armed police officers, Justin Voss and Ross Henikman, Mitchell asked the officers what was happening, and why she had been

1   singled out. Ex. D, at 2, ¶ 6.  Mitchell also asked if the police officers would let

2   Demarcus call his father. Id..  Police quickly denied Mitchell's request to let

3
4   Demarcus use the phone to call his father, and he was left unattended while she

5   remained under police control. Id..

6           After denying Demarcus an opportunity to call his father, Officer Henikman

7   ordered Mitchell to drop to the ground the bag of items just purchased and her

8   handbag, and to raise her hands in the air. Ex. D, at 2, ¶ 7.  Next, Officer Henikman

9
10  asked Mitchell if she had any weapons, to which she replied that she did not have any

11  weapons. Id..  After dropping the bags she had been carrying, Officer Henikman

12  ordered Mitchell to turn around and walk backward, with hands raised, toward his

13  voice. Ex. D, at 3, ¶ 8.  Mitchell complied with Henikman's instructions. Id..  After

14
15  she backed up a short distance, Officer Henikman told Mitchell to stop, and drop her

16  hands. Id..  Henikman next handcuffed Mitchell's hands behind her back. Id..  When

17  Mitchell asked why she was being handcuffed, Officer Henikman told her she would

18  find out later. Id..

19          After being handcuffed, Henikman escorted Mitchell to the rear of a nearby

20  car, and instructed her to stand still. Ex. D, at 3, ¶ 9.  While Mitchell stood

21
22  handcuffed at the rear of the police car, Officer Henikman emptied the contents of

23  her purse onto the rear of the police car, and obtained her identification. Id..  The

24  officer took, and retained, her identification. Id..

25          After Officer Henikman had taken her identification, Mitchell asked if he

26  would remove her handcuffs. Ex. D, at 3, ¶ 10.  Henikman moved toward Mitchell,

27

28

1  as if he would remove the handcuffs. Id..  Before Officer Henikman could remove

2  Mitchell's handcuffs, however, Officer Voss told Henikman to keep the handcuffs on

3  her wrists. Id..  Officer Henikman decided to keep the handcuffs on Mitchell's wrists,

4  even though she told him that the handcuffs were causing her pain. Id..

5

6        The officers next led Mitchell in handcuffs from the rear of the police vehicle

7  to the extreme edge of the Sears Mall, facing Benson Boulevard. Ex. D, at 3, ¶ 11.

8  She remained, handcuffed and displayed, facing Benson Boulevard for over twenty

9  minutes, in full view of the hundreds of vehicles passing by on Benson Boulevard.

10 Id..  Eventually Mitchell observed a police vehicle approach, and she was instructed

11 to move toward the car. Id..  An officer asked Mitchell to step forward and backward,

12 so the police could conduct a show-up. Id..  After the police car drove away, a police

13 officer removed Mitchell's handcuffs and told her that she was free to go. Id..

14

15       According to all defendants, it is an undisputed fact that no probable cause

16 existed to arrest Carolyn Mitchell on May 8, 2004.[3]  Officer Henikman has also

17 testified that when he searched Mitchell he did not discover any weapons, or find

18 anything linking her to any criminal activity.[4]  Similarly, under oath, both Officers

19 Voss and Henikman stated that they did not perceive Mitchell to be a threat to their

20

21

22 _____

23       [3] Exhibit E, Officer Ross Henikman's Response to Plaintiff's Request for
   Admissions, at 2 (req # 4) [Hereinafter: "Ex. E, at __."]; Exhibit F, Officer Justin
24 Voss's Responses to Plaintiff's Request for Admissions, at 2-3 (req # 4) [Hereinafter:
   "Ex. F, at __."].
25

26       [4] Exhibit G, Transcript of Videotape Deposition of Officer Ross Henikman, at
   12, ln 22 to p. 13, ln 2 [Hereinafter: "Ex. G, at __."].
27

28

safety or the safety of any other person. Ex. G, at 20, ln 4 to p. 21, ln 4; Exhibit H, Transcript of Videotape Deposition of Officer Justin C. Voss, at 14, ln 17 to p. 15, ln 3. [Hereinafter: "Ex. H, at __."].  Finally, it is undisputed that during the time that Mitchell remained in handcuffs, neither Officers Voss nor Henikman asked Mitchell any questions concerning her involvement in a recent bank robbery. Ex. G, at 15, ln 22-23; Ex. H, at 20, ln 24-25.  Both officers state that the purpose for holding Mitchell was to permit a show-up by a witness to a recent attempted bank robbery. Ex. G, at 13, ln 11-25; Ex. H, at 19, ln 15-24.

## II.    STANDARD FOR SUMMARY JUDGMENT.

In considering a motion for summary judgment, the Court must draw all "reasonable inferences in favor of the nonmovant, [to] determine whether the parties genuinely dispute any facts material to a viable legal theory, and if not, whether the undisputed facts entitle the movant to judgment as a matter of law."  Philbin v. Matanuska-Susitna Borough, 991 P.2d 1263, 1265 (Alaska 1999).  Alaska's Supreme Court has held that "[t]he moving party bears the initial burden of proving through admissible evidence (1) the absence of genuine fact dispute, and (2) its entitlement to judgment as a matter of law." Id..

The question whether any material issues of fact exist, is answerable only when applied to the "viable legal theory" controlling the movant's arguments.  "If the movant makes a prima facie showing that it is entitled to judgment on the established facts as a matter of law, the opposing party must demonstrate that a genuine issue of fact exists to be litigated by showing that it can produce admissible evidence

reasonably tending to dispute the movant's evidence." <u>Broderick v. King's Way Assembly of God</u>, 808 P.2d 1211, 1215 (Alaska 1991), citing <u>Wassink v. Hawkins</u>, 763 P.2d 971, 973 (Alaska 1988); and <u>Gregor v. City of Fairbanks</u>, 599 P.2d 743, 746 (Alaska 1979).

Like the movant, the nonmoving party must rely on the viable legal theory controlling movant's argument to show that a genuine issue of material fact exists. In deciding whether the nonmoving party has met its burden, the court will "consider the affidavits, depositions, admissions, answers to interrogatories and similar material to determine . . . whether any of the post-pleading material suggests the existence of any . . . triable genuine issues of material fact." <u>Broderick v. King's Way Assembly of God</u>, 808 P.2d, at 1215, citing <u>Walker v. White</u>, 618 P.2d 561, 563 (Alaska 1980) (quoting <u>Jennings v. State</u>, 566 P.2d 1304, 1310 (Alaska 1977) (quoting 10 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 2721 at 475-76 (1973))).  "If the parties choose to submit affidavits, they must be based upon personal knowledge, set forth facts that would be admissible evidence at trial and affirmatively show that the affiant is competent to testify to the matters stated." <u>Id.</u>, 808 P.2d, at 1215, citing Alaska R.Civ.P. 56(e).

**III.   ARGUMENT**.

Alaska law recognizes the tort of false arrest as a subset of the tort of false imprisonment.  Alaska Courts recognize the following elements for a false arrest claim: "(1) a restraint upon plaintiff's freedom (2) without proper legal authority." <u>Hazen v. Municipality of Anchorage</u>, 718 P.2d 456, 261 (Alaska 1986), citing W.

Prosser, Law of Torts, § 11 (4th ed. 1971). The two part analysis for determining if a false arrest has occurred does not incorporate facts that are disputed in this case. Mitchell can established based on admissions, and deposition statements, made by the defendants in this case, that judgment on the issue of false arrest is justified.

**A.    ALASKA'S STATUTES AND CASE LAW HOLD THAT ANCHORAGE'S POLICE DEPARTMENT FALSELY ARRESTED CAROLYN MITCHELL ON MAY 8, 2004.**

The paramount issues that Mitchell requests that this court determine is whether or not police arrested her on May 8, 2004, and whether such arrest occurred legally. Alaska Statutes defines, in a fairly straight forward fashion, when an "arrest" has occurred under Alaska law. According to AS 12.25.050: "An arrest is made by the actual restraint of a person or by a person's submission to the custody of the person making the arrest." Under a strict reading of AS 12.25.050, if Mitchell proves that she was handcuffed, she will have proven that she was actually retrained, and thereby arrested.

In City of Nome v. Ailak, 570 P.2d 162 (Alaska 1977), Alaska's Supreme Court analyzed whether an arrest had occurred in a false arrest civil suit. In the case, Nome city police officers responded to a call reporting a rape and murder. When the police arrived at the identified address, they observed a young woman waving her arms toward the officers. City of Nome, 570 P.2d, at 167. The young woman stood near two men outside a residence. Before the police could talk with the young woman, she ran away. The police approached one of the bystanders, who pointed to the plaintiff Ailak, and stated: "He's the one. The girl said he raped her." Id.. After

1
2
3
4
5
6
7

investigating a nearby residence, the Nome police questioned Ailak, asking if he had

raped the young woman.  Ailak stated he did not.  Next the police asked if Ailak

could identify the young lady, if he saw her again.  When Ailak stated that he could,

the police asked him to get into the patrol car, and they searched for the woman with

Ailak in the car.  Within a short time, the police determined that Ailak had

committed no crime, and they released him. Id.

8
9
10
11
12
13
14
15
16
17
18
19

In analyzing the undisputed facts in City of Nome, the Court concluded that

Ailak had been falsely arrested.  The Court stated that whether a person was "in fact

arrested is to be determined by an objective standard." City of Nome, 570 P.2d, at

169.  Reviewing the facts, the Court stated that "Ailak was placed by the police in

the back of a police vehicle which had no handles on the inside of the back door in

order to prevent escape by occupants in the rear seat." Id..  Further, the Court stated

that the jury concluded that Ailak did not enter the vehicle voluntarily.  Based on

those undisputed facts, the Court concluded that "there was sufficient evidence from

which the jury could have properly found that Ailak was put under 'actual restraint'

within the meaning of AS 12.25.050 and that he was in fact arrested." Id..

20
21
22
23
24
25
26
27

The Court then stated that "the next question is whether the arrest was

lawful." Id..  Concerning whether a warrantless arrest is lawful, the Court identified

the following legal standard: "a peace officer, without a warrant, may arrest a person

for a felony when the officer has probable cause to believe that a felony has been

committed and probable cause to believe that the person committed it." Id.. Applying

the legal standards to the facts of the case in City of Nome, the Court held that

28

PLAINTIFF'S MEMORANDUM IN SUPPORT OF SUMMARY
JUDGMENT: MITCHELL v. MOA, POLICE DEPARTMENT, ET AL.                    PAGE  - 10 -

1    because he was actually restrained by police, Ailak had been arrested. Id.. Further,

2    the Court held that because police arrested Ailak without a warrant, and without

3    probable cause, the police committed the tort of false arrest. Id., at 170.

4

5        If this court applied the legal analysis the Supreme Court applied in City of

6    Nome, Mitchell clearly is entitled to summary judgment on the issue of false arrest.

7    The undisputed facts establish that Officer Heinikman actually restrained Mitchell

8    when he held her at gun point, and handcuffed her. Ex. G, at 6, ln 5-13. It is

9    undisputed that Officers Voss and Heinikman required Mitchell to submit to their

10   custody, and required that she remain in their custody for approximately twenty

11   minutes. Ex. G, at 15, ln 1-3; Ex. H, at 2, ln 5-13; p. 19, ln 21-24. In City of Nome,

12   the plaintiff was considered arrested when he was merely placed in the back of a

13   police vehicle. The facts presented in this case provide much stronger evidence that

14   she "was placed under actual restraint," by the defendants. On the question of

15   whether the officers legally arrested Mitchell, it is an undisputed fact that the officers

16   had no warrant to arrest her, and no probable cause that she committed any crime.

17   Ex. E, at 2 (req # 3,4); Ex. F, at 2 - 3 (req # 3,4).

18

19       The defendants in this case, however, attempt to skirt the analysis used by the

20   Court in City of Nome. In responding to discovery requests by Mitchell, the

21   defendants in this case allege that officers never arrested Mitchell.[5] The defendants

22   allege that Officers Voss and Henikman did not arrest Mitchell, but rather merely

23

24

25

26      [5] Exhibit I, Monegan's Responses to Plaintiff's Interrogatories and Requests for
     Production, at 2 - 3 (Int. # 1 - 3), [Hereinafter: "Ex. I, at __."].

27

28

conducted a lawful investigatory stop of her.  In deciding <u>City of Nome</u>, Alaska's

Supreme Court held that when the facts are viewed objectively, if police used actual

restraint on a suspect, then an arrest has occurred. <u>City of Nome</u>, 570 P.2d, at 169.

The Court in <u>City of Nome</u> did not find it necessary to conduct a fine line analysis

into whether an arrest or an investigatory stop occurred.  In deciding <u>City of Nome</u>,

the Supreme Court moved straight from the question of whether actual restraint

existed directly into a question of whether probable cause existed to justify the arrest.

<u>Id.</u>.

In criminal law, an investigatory stop, like an arrest, is a seizure under the

fourth amendment to the United States Constitution, and the article I, section 14, of

the Alaska Constitution. <u>Howard v. State of Alaska</u>, 664 P.2d 603, 608 (Alaska App.

1983).  However, unlike an arrest, an investigatory stop does not require probable

cause, and is not considered an unreasonable seizure. <u>Coleman v. State of Alaska</u>,

553 P.2d 40, 43 (Alaska 1976).  Alaska's Supreme Court has interpreted article I,

section 14, of Alaska's Constitution to permit "temporary detention for questioning

only when (1) the police officer has an actual suspicion that 'imminent public danger

exists or serious harm to persons or property has recently occurred,' and (2) this

suspicion is reasonable."  <u>Waring v. State of Alaska</u>, 670 P.2d 357, 365 (Alaska

1983), quoting: <u>Coleman v. State</u>, 553 P.2d, at 46.

In interpreting whether an investigatory stop transcended into a warrantless

arrest, the Courts look at the totality of the circumstances, viewed objectively from

the standard of a reasonable person. <u>Waring v. State</u>, 670 P.2d, at 364.  The Court

observed in assessing the legality of an investigatory stop that "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of seizure or search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Coleman v. State, at 45, quoting: Terry v. Ohio, 392 U.S. 1, 21-22 (1968). Similarly, the Coleman Court noted that "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." 553 P.2d, at 45, quoting: Adams v. Williams, 407 U.S. 143, 146 (1972).

Based on the above referenced law on investigatory stops, however, it is clear that police did not perform a valid investigatory stop on May 8, 2004, rather they falsely arrested Mitchell. As the analysis below will show, when police handcuffed Mitchell on May 8, 2004, they made absolutely no effort to question the plaintiff. The police also had no fear that Mitchell was a danger to themselves or any other person. When the police seized and searched Mitchell, they did not discover any evidence that could reasonably have incriminated her, nor any evidence that she committed any crime. When Officers Voss and Henikman seized Mitchell, the sole intent was to keep her in custody until a witness either exonerated her or incriminated her. Such an arbitrary show of force is clearly unreasonable, and can

not be misconstrued as justifiable under the circumstances.

**B.     ANCHORAGE POLICE OFFICERS ACTED UNREASONABLY WHEN THEY SEIZED HER AND CHOSE NOT TO QUESTION HER CONCERNING THEIR SUSPICIONS THAT SHE HAD COMMITTED A CRIME.**

The most basic elements of an investigatory stop is that police are instituting only a "temporary detention" of a person for the singular purpose of "questioning" a suspicious person. Waring v. State, 670 P.2d, at 365.  Alaska's Supreme Court stated unequivocally that "Alaska does not have a statute authorizing the police to forcibly stop a citizen on less than probable cause to arrest." Coleman v. State, 553 P.2d, at 45.  An investigatory stop must be limited to those situations where it is imperative that an officer obtain information from a suspicious person, so as to ensure that an "imminent public danger" does not exist. Id..  The Coleman Court stated of an investigatory stop: "It strike a balance between a person's interest in immunity from police interference and the community's interest in law enforcement.  It wards off pressure to equate reasonable cause to investigate with reasonable cause to arrest, thus protecting the innocent from the risk of arrest when no more than reasonable investigation is justified."  Coleman v. State, 553 P.2d 40, 46-7.

In contradistinction to the purpose of an investigatory stop, Officer Henikman made no effort to question Mitchell at the time that he handcuffed her, and took her into custody. Ex. G, at 15, ln 22-23.  Ironically, when asked hypothetically how he would conduct an investigatory stop of a suspect to a bank robbery, Henikman stated: "I would stop the individual and inquire if they committed the bank robbery." Ex. G, at 2, ln 14-24.  However, when asked if he asked Mitchell "if she committed

1    the bank robbery," Officer Henikman answered, "No." Ex. G, at 15, ln 22-23.  When

2    questioned why he did not "ask her questions about whether she had committed

3    robbery," Officer Henikman replied: "I'm not going to ask any questions about the

4    crime unless I read Miranda." Ex. G, at 16, ln 3-9.  Officer Henikman stated

5
6    unambiguously that the purpose for detaining Mitchell "was to await a show up with

7    the witness." Ex. G, at 16, ln 13-17.

8         Officer Voss stated under oath that Mitchell had been taken into custody "for

9    furtherance of the investigation." Ex. H, at 19, ln 18-24.  Similarly, Officer

10   Henikman stated that "Ms. Mitchell was detained until the teller could arrive and

11   view Ms. Mitchell and determine if she was or was not the suspect in the bank

12   robbery." Ex. G, at 13, ln 16-19.  By their own testimony, Officers Voss and

13
14   Henikman made no effort toward questioning Mitchell.  Rather the two officers

15   believed that they had a legal right to take Mitchell into custody, and detain her,

16   indefinitely until a witness showed up to either incriminate or exonerate her. Ex. G,

17   at 13, ln 11-25; Ex. H, at 51, ln 22-25.  This procedure is absolutely at odds with the

18
19   purpose of an investigatory stop, and can only be interpreted as a custodial arrest.

20        By taking Mitchell into custody, detaining her in handcuffs, without making

21   any effort at obtaining information that could create an articulable suspicion that

22   Mitchell had committed a criminal act, Officers Voss and Henikman clearly arrested

23
24   Mitchell.  The paramount purpose of an investigatory stop is to obtain information

25   concerning specific events. Waring v. State, 670 P.2d, at 365.  Officers Voss and

26   Henikman merely wanted to detain Mitchell and have her answer for a crime. Ex. G,

27

28

at 13, ln 11-25; Ex. H, at 19, ln 15-24.  The conduct of Officer Voss and Heikman

breached the scope of an investigatory stop, and warrants summary judgment on the

issue of false arrest.

**C.    POLICE OFFICERS ACTED UNREASONABLY BY PLACING MITCHELL IN HANDCUFFS WHEN THEY KNEW SHE WAS NOT A DANGER TO ANYONE.**

Citizens in Alaska are constitutionally protected against unreasonable search

and seizure.  This constitutional guarantee is provided for within both Alaska's

Constitution, article I, section 14, and the United States Constitution, via the Fourth

Amendment.  Alaska's Supreme Court observed that "Terry v. Ohio created a

limited exception to this rule when the seizure is substantially less intrusive than a

traditional arrest and the interest in crime detection and the police officer's safety

outweighs the limited violation of individual privacy." Waring v. State, 670 P.2d, at

365, citing to: Terry v. Ohio, 392 U.S., at 20-21.  When executing an investigatory

stop, officers may under exigent circumstances handcuff a suspect, or utilize a show

of force. Howard v. State, 664 P.2d 603, 610 (Alaska App. 1983).  However, in

conducting an investigatory stop, a suspect should only be handcuffed or subjected to

a show of force when based on the totality of the circumstances such conduct is

warranted. Id.., at 611.

In the case at bar, however, Officers Voss and Henikman executed a seizure

that was equally as intrusive as a traditional arrest.  Further, according to their own

testimony, neither Officers Voss nor Henikman considered Mitchell a threat to their

safety or the safety of others at the time that they decided to handcuff and forcibly

detained her. Ex. G, at 20, ln 4 to p. 21, ln 4; Ex. H, at 14, ln 17 to p. 15, ln 3. According to the testimony of Officers Voss and Henikman, Mitchell never acted noncompliant to the officer's commands, and she never created a safety threat to either the officers or the public. Ex. G, at 8, ln 21 to p. 9, ln 5; Ex. H, at 15, ln 2-3.

When questioning Officer Henikman concerning why he placed Mitchell in handcuffs, the officer never identified a specific articulable fear for his safety or the safety of others. Instead, Officer Henikman stated that within a minute of her exiting the Sears Mall, he placed her in handcuffs, and detained her. Ex. G, at 6, ln 23 to p. 7, ln 1. Officer Henikman answered in the negative when asked whether Mitchell resisted any of his command, or whether she seemed "a flight risk." Ex. G, at 8, ln 21 to p. 9, ln 5. Similarly, Officer Henikman stated that he was never in fear for his personal safety. Ex. G, at 12, ln 9-11. Officer Henikman stated simply that he placed Mitchell in handcuffs "to detain her." Ex. G, at 11, ln 3-4.

What is more significant is the fact that Mitchell remained in handcuffs for over twenty minutes after Officer Henikman determined that she had no weapons on her person or in her purse. Ex. G, at 12, ln 19 to p. 13, ln 25. According to his testimony, Officer Henikman conducted a frisk and search of Mitchell within 30 seconds of coming in contact with her. Ex. G, at 13, ln 3-5. Both Officers Voss and Henikman stated that handcuffing is a permissible tool to detain a citizen during an investigatory stop. Ex. G, at 11, ln 3-4; Ex. H, at 21, ln 6-14. Acting consistent with what he believed legally permissible, Officer Henikman handcuffed and detained Mitchell simply so he could have a witness look her over. Ex. G, at 20, ln 4 to p. 21,

ln 4; Ex. H, at 14, ln 17 to p. 15, ln 3.

It is incontrovertible that Officer Henikman acted unreasonably when he handcuffed Mitchell, even though he had no fear that she presented a danger to anyone.  Alaska's Supreme Court states that one of the dividing lines between an investigatory stop and an arrest is the level of intrusiveness employed by the police.  Waring v. State, 670 P.2d, at 365.  In Mitchell's case, Officers Voss and Henikman made no effort at balancing the level of intrusiveness with the level of threat that Mitchell presented to the police and the public.  As such, Mitchell became subjected to the public humiliation of being handcuffed merely because the police believed "that procedurally speaking there is nothing wrong with that." Ex. H, at 21, ln 6-16.

Alaska's Supreme Court has been clear and consistent in denouncing the sort of arbitrary, excessive, conduct exhibited by Officers Voss and Henikman.  In Waring v. State, the Supreme Court cited favorably Florida v. Royer, wherein the United States Supreme Court stated "[t]he person approached [by police] . . . may not be detained even momentarily without reasonable, objective grounds for doing so." Waring, 670 P.2d, at 363, citing Florida v. Royer, 460 U.S. 491 (1983).  Based on the undisputed evidence provided by Officers Voss and Henikman, it is clear that these officers acted unreasonably by handcuffing, and detaining, Mitchell when she acted compliant, possessed no weapons, and presented a danger to no one.  If police can handcuff a citizen based on a mere speculation that such citizen committed a crime, then the concept of "unreasonable search and seizure" has no meaning whatsoever.

**D.      THE TOTALITY OF THE CIRCUMSTANCES ESTABLISH THAT ANCHORAGE POLICE OFFICERS FALSELY ARRESTED MITCHELL ON MAY 8, 2002.**

Alaska's Supreme Court requires that in assessing whether an investigatory stop is an unreasonable seizure, courts must objectively contrast the undisputed facts with the totality of the circumstances surrounding the challenged event.  In Mitchell's case, an objective assessment into what happened to her must take into consideration the sequence of events that happen on May 8, 2004.  The random aspect by which Mitchell became handcuffed, and humiliated in front of her terrified twelve year old son, makes her case all the more significant.  The tort of false arrest, like the exclusionary rule in criminal law, is designed to protect the rights of average citizens from arbitrary police abuses.  At its most basic core, Mitchell's case is all about the rights Alaskan citizens have to be free from being subjected to police instilled terror.

Prior to her encounter with Officers Voss and Henikman, Carolyn Mitchell engaged in the simple act of shopping with her twelve year old son. Ex. D, at ¶ 1.  She had purchased items for a church event to occur later that day. Id..  Officers Voss and Henikman have provided no evidence suggesting that the Mitchell's conduct while in the Sears department store created an articulable suspicion by Anchorage police.  Rather, Mitchell merely became one of many customers ushered out of Sears by police during a moment of crisis.  Likewise when she exited the mall, and encountered Officers Voss and Henikman, neither officer considered her a threat or a danger. Ex. G, at 20, ln 4 to p. 21, ln 4; Ex. H, at 14, ln 17 to p. 15, ln 3.  Mitchell

simply had the same body build and skin color of a bank robbery suspect, and that similarity caused her to face multiple shotguns, become handcuffed, and separated from her son. Ex. G, at 5, ln 21 to p. 7, ln 1; Ex. H, at 3, ln 18 to p. 5, ln 9. Her predicament occurred by chance, and not by any conduct on her part.

In order to survive summary judgment on the issue of false arrest, Officers Voss and Henikman must be capable of disputing a material issue of fact, such that will prevent judgment as a matter of law. However, when the undisputed facts of this case are viewed objectively it is clear that the Anchorage police department, via Voss and Henikman, violated Mitchell's rights. No defendant in this case has alleged that probable cause existed to arrest Mitchell. Ex. E, at 2 (req # 4); Ex. F, at 2-3 (req # 4). The only defense offered by the defendants is the simple allegation that police never arrested Mitchell. However, whether an arrest occurred or not, is not a factual dispute but rather a legal dispute based upon the undisputed facts of the case. Because no probable cause existed, if this court concludes as a matter of law that police did arrest Mitchell, the arrest is, as a matter of law, an illegal arrest.

The defendants in this case cling to the legal fiction that Mitchell's custodial detention did not amount to an arrest, but rather falls within the investigatory stop exception to the prohibition against unreasonable search and seizure. Officers Voss and Henikman freely admit that they detained, and took Mitchell into custody on May 8, 2004. Ex. G, at 15, ln 7 - 17; Ex. H, at 9, ln 15 to p. 10, ln 4. The officers made the decision to handcuff and detain Mitchell, based on the simple fact that she exited the mall, had black skin, and matched the generalized description of a bank

1
2
3
4
5
6

robber. Ex. G, at 5, ln 21 to p. 7, ln 1; Ex. H, at 3, ln 18 to p. 5, ln 9. Officer Henikman never sought a less intrusive means for determining whether Mitchell had attempted to rob a bank. Ex. G, at 11, ln 5-8. Rather than ask, in a friendly manner, where Mitchell had been during the last twenty minutes, Officer Henikman decided to slap handcuffs on an innocent person.

7
8
9
10
11
12
13
14
15
16
17
18

Alaska's constitution protects its citizens from unreasonable search and seizures. As illustrated above, Alaska's Supreme Court requires that police conduct must be viewed from a reasonable person standard. Coleman, 553 P.2d, at 45. Using that standard, Officer Voss and Henikman clearly acted unreasonably when they restrained Mitchell even though she had no weapons, never resisted, and had accompanying her a twelve year old child. Officers Voss and Henikman have presented no justification for why they did not simply walk up to Mitchell, ask to see her identification, and ask if she knew anything about a bank robbery. By escalating the level of force used on May 8, 2004, Officers Voss and Henikman falsely arrested Carolyn Mitchell.

19
20
21
22
23
24
25
26
27

Anchorage police officers Voss and Henikman acted unreasonably when they decided to place Mitchell in custodial detention when no reasonable suspicion suggested that she had committed a crime. As Alaska's Supreme Court said in Coleman, "the police officer must be able to point to specific and articulable facts, which when taken together with rational inferences from those facts, reasonably warrant the intrusion." Coleman, 553 P.2d, at 45. The only specific and articulable facts that Officer Voss and Henikman viewed when Mitchell exited the Sear Mall

28

was the fact that she was black, and the impression that she was heavy set. Ex. G, at 5, ln 21 to p. 7, ln 1; Ex. H, at 3, ln 18 to p. 5, ln 9.  No person of "reasonable caution" could conclude that black skin, and a heavy set build, creates such an exigent circumstance that custodial detention of an otherwise innocent person is justified.

Based on the totality of the circumstances, the undisputed facts in this case establish that Anchorage police officers Voss and Henikman falsely arrested Carolyn Mitchell on May 8, 2004.  As such, summary judgment is appropriate on the issue of false arrest in this case.

## IV.     CONCLUSION.

In this motion for partial summary judgment, Carolyn Mitchell has proven that the material facts in this case are undisputed, and that she is entitled to judgment as a matter of law.  The material facts in this case center around the required elements for the tort of false arrest: "(1) a restraint upon plaintiff's freedom (2) without proper legal authority."  Hazen v. Municipality of Anchorage, 718 P.2d 456, 261 (Alaska 1986), citing W. Prosser, Law of Torts, § 11 (4th ed. 1971).  The evidence presented by Mitchell has shown that no dispute exists to any of the elements she needs to prove to establish the tort of false arrest.

Carolyn Mitchell has proven that she was falsely arrested when on May 8, 2004, Officers Voss and Henikman of the Anchorage Police Department pointed weapons at her, handcuffed her, and detained her without probable cause.  Mitchell has proven that Officer Voss and Henikman pointed their weapons at her, and

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ordered her to stop her movements after she left the Sears Mall with her twelve-year-old son. Ex. G, at 6, ln 5-22; Ex. H, at 2, ln 5-13, p. 19, ln 21-24.  Mitchell has also proven that Officer Henikman did actually restrain her by ordering her to put her hands behind her back, and then placing handcuffs on her wrists. Ex. G, at 6, ln 6-13. Finally, Mitchell has proven that after Officer Henikman placed her in handcuffs, he kept her in handcuffs for at least twenty minutes, until a witness arrived to do a show-up identification of her.  Ex. G, at 15, ln 1-8.

The relevant facts concerning whether an arrest occurred, and whether such an arrest occurred lawfully, are all undisputed.  As such, Mitchell requests that this court enter judgment as a matter of law in her favor on the issue of whether defendants Officer Justin Voss and Ross Henikman falsely arrested her on May 8, 2004.

Respectfully submitted this 30th  day of April 2007.

 S/  Isaac Zorea
Law Offices of Isaac D Zorea
P.O. Box 210434
Anchorage, AK 99521
907-830-1385
907-677-3779
Eyedz@gci.net

1

2
<u>Certificate of Service</u>

3
I hereby certify that on April 30, 2007
I electronically filed the foregoing with
4
the Clerk of Court using the CM/ECF
system which sent notification to the
5
following:

6

7
     Joyce Weaver Johnson

8
and I hereby certify that I have mailed by
United States Postal Service the document
9
to the following non CM/ECF participants:

10
     none.

11
Dated this 30th day of April, 2007, at Anchorage, Alaska.

12
 S/ Isaac Zorea
13
   Law Offices of Isaac D Zorea
   P.O. Box 210434
14
   Anchorage, AK 99521
15
907-830-1385
   907-677-3779
16
   Eyedz@gci.net

17

18

19

20

21

22

23

24

25

26

27

28