# EXHIBIT D

Isaac D. Zorea
Law Office of Isaac Derek Zorea
P.O. Box 210434
Anchorage, AK 99521
(907) 830-1385
(907) 677-3779 facsimile

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

CAROLYN MITCHELL,                           )
                                            )
        Plaintiff,                          )
                                            )
vs.                                         )
                                            )
ANCHORAGE POLICE DEPARTMENT and the         )
MUNICIPALITY OF ANCHORAGE, a                )
municipal corporation, WALTER MONEGAN,      )
Officer HENIKMAN, and Officer J. VOSS,      )
                                            )
        Defendants.                         )
_____)

Case No. A05-0273 CV (JWS)

**AFFIDAVIT OF CAROLYN MITCHELL**

STATE OF ALASKA          )
                         ) ss.
THIRD JUDICIAL DISTRICT  )

Carolyn Mitchell, being first duly sworn upon her oath, states as follows:

1. On Saturday, May 8, 2004, at approximately 3:15 p.m., I was shopping at the Anchorage Sears department store, searching for a pair of shoes and a suit for my 12 year old son, Demarcus, to attend an upcoming church event. I purchased the items and began to exit the store, with my son, through the Northern exit.

2. As I moved toward the Northern exit of the Anchorage Sears department store, I noticed police officer with weapons drawn directed patrons to exit the store through the mall entrance of the store (located to westward). My son and I complied with the demands of the police officers, and quickly left Sears department store through its westward exit.

AFFIDAVIT OF CAROLYN MITCHELL:
MITCHELL V. MOA, POLICE DEPARTMENT, ET AL.                           PAGE - 1 -

Exhibit D – Page 1

3. As I exited Sears department store from its westward exit, which led directly into a Sears Mall, I observed police officers with weapons drawn standing within the Mall who directed the departing customers of the Sears department store to exit the mall through its South exit, which was through a hallway bordering the GNC store on the west and the Sears department store on east. The hallway exited into the Mall parking lot that directly bordered Benson Boulevard.

4. As I left the Sears Mall, as directed by police officers, I instantly observed two policeman, later identified as Officer Justin Voss and Officer Heinkman, who stood with weapons drawn and pointed toward my son and me. One of the Officers spoke toward me, saying "Everyone move except the African-American female."

5. After the police officer commanded that everyone except the African-American female was to move away from the Sears Mal exit, my son, Demarcus, did not want to leave my side, and tried to remain next to me. Next one of the police officers with weapon drawn identified my son by his clothing, and ordered that he "quickly move" away from the African-American female. My son reluctantly complied, after I told him to do as commanded.

6. After being singled out by the armed police officers, Justin Voss and Heinkman, I asked the officers what was happening, and why was I singled out. I also asked if I could let my son call his father, and this request was immediately denied by the officers.

7. After being denied an opportunity to have my son call his father, a police officer (later identified as Officer Heinkman) ordered me to drop to the ground the bag of items just purchased and my handbag, and to raise my hands in the air. Next, I was asked to by Officer Heinkman if I had any weapons, to which I replied that I did not have any weapons. I further pleaded that the officers were scaring my son, and that I wanted to know what was happening.

AFFIDAVIT OF CAROLYN MITCHELL:
MITCHELL V. MOA, POLICE DEPARTMENT, ET AL.                                    PAGE - 2 -

Exhibit D – Page 2

8. After dropping the bags I had been carrying, Officer Heinkman ordered me to turn around and walk backward with hands raised toward his voice. I complied with his instructions. Next, Officer Heinkman told me to stop, drop my hands, and then he handcuffed my hands behind my back. I asked why I was being handcuffed, and Officer Heinkman told me I would find out later.

9. After being handcuffed, I was escorted to the rear of one of the police cars nearby, and instructed to stand still. While standing handcuffed at the rear of the police car, Officer Heinkman emptied the contents of my purse onto the rear of the police car, and obtained my identification. The officer took my identification.

10. After obtaining my identification, I asked Officer Heinkman if he would remove my handcuffs, and he moved toward me as if he would remove the handcuffs. Before Officer Heinkman could remove my handcuffs, the other police officer (later identified as Officer Justin Voss) ordered Heinkman to keep the handcuffs on my wrists. Officer Heinkman decided to keep the handcuffs on my wrists, even though I told him that they were causing me pain.

11. Next, the officers led me in handcuffs from the rear of the police vehicle to the extreme edge of the Sears Mall, facing Benson Boulevard, where I was displayed for approximately twenty minutes, in full view of the hundreds of vehicles passing by on Benson Boulevard. Eventually I observed a police vehicle approach, and I was instructed to move toward the car. I was asked to step forward and backward. After the police car (later identified as containing a witness to a Robbery), drove away, a police officer removed my handcuffs and stated that I was free to go.

12. After being released, I was never fully informed of why I had been handcuffed and detained. When I eventually returned home with my child, I turned on the 5:30 pm news on KTUU Channel 2, and I viewed myself on the television

AFFIDAVIT OF CAROLYN MITCHELL:
MITCHELL V. MOA, POLICE DEPARTMENT, ET AL.                                    PAGE - 3 -

Exhibit D – Page 3

broadcast standing handcuffed in full view of the television cameras.

13. Subsequent to the May 8, 2004 incident, then-Police Commissioner Walter Monegan wrote concerning the incident that he the proper police procedure required that the officers explain their actions and apologize for handcuffing me. Commissioner Monegan at no time acknowledged that I should not have been handcuffed to begin with, only that I should have received an apology after the fact.

FURTHER your Affiant sayeth naught.

_____
Carolyn Mitchell

SUBSCRIBED and SWORN to before me this 11 day of April, 2007.

_____
Notary Public in and for Alaska
My commission expires: 10/20/07

Moshe Calberg Zorea
Notary Public for Alaska
My Commission expires 10/20/2007

AFFIDAVIT OF CAROLYN MITCHELL:
MITCHELL v. MOA, POLICE DEPARTMENT, ET AL.

PAGE - 4 -

Exhibit D – Page 4