Joyce Weaver Johnson
Assistant Municipal Attorney
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650
Phone: (907) 343-4545
Fax: (907) 343-4550
E-mail: uslit@muni.org

Attorney for Defendants
Municipality of Anchorage
Anchorage Police Department
Walt Monegan
Officers Voss and Henikman

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| CAROLYN MITCHELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ANCHORAGE POLICE DEPARTMENT and | ) |
| the MUNICIPALITY OF ANCHORAGE, a | ) |
| municipal corporation, WALTER MONEGAN, | ) |
| Officer HENIKMAN, and Officer J. VOSS, | ) |
| | ) |
| Defendants. | ) Case No. 3:05-cv-00273-JWS |
| | ) |

**<u>DEFENDANTS' OPPOSITION TO</u>**

**<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Plaintiff's arguments are fatally flawed, she mis-cites the statutory definition of "arrest," and the cases she cites fail to support her claim that she was "arrested," let alone "falsely arrested." Moreover, she employs dramatic and emotional language in an

attempt to overcome the factual and legal shortcomings of her claim. Her motion, limited to the state law issue of false arrest, must be denied.

Defendants agree that there are no disputed issues of fact material to the question whether an "arrest" or "false arrest" occurred. On the strength of the undisputed facts and the correct legal standards identified in this Opposition,[1] the Court should go beyond denying the motion, and grant Defendants a partial summary judgment in their favor on this issue.

**Plaintiff Misses Statute Defining "Arrest".**

Plaintiff relies on the wrong Alaska statute for her definition of "arrest". She cites, Motion at 9, and argues from the section titled "**Method of making arrest**" – omitting its statutory heading – and calls it Alaska's statutory "definition" of an arrest. She should have cited AS 12.25.160:

> **Arrest defined.** Arrest is the taking of a person into custody in order that the person may be held to answer for the commission of a crime.

Applying the correct definition, it is incontrovertible that Ms. Mitchell was not arrested. She was detained, nearly on the spot, for a period of 20 to 30 minutes, in handcuffs, by armed officers. She was never "held to answer" for a crime, nor charged with a crime. She was never transported, jailed, or given *Miranda* warnings and interrogated about a crime.

Sec. 160's phrase, "in order that", denotes purpose:

> [I]dioms. **in order that.** So that. **in order to.** For the purpose of.

The American Heritage College Dictionary, Third Edition 1997, at 961, "order" (emphasis in original).

There is no evidence that either Defendant Voss or Henikman planned, purposed or intended to hold Plaintiff, or the other look-alikes, beyond the reasonable time needed for the showups with the bank teller – unless, of course, the teller identified Plaintiff as the woman who had robbed her. It is undisputed that Defendants did not charge, interrogate, transport or jail Plaintiff.

On stronger facts than Plaintiff herein presents, the Alaska Court of Appeals resolved this issue against finding an "arrest". In *Greenawalt v. Municipality of Anchorage*, 692 P.2d 983 (Alaska App. 1985), the defendant, following an auto accident, was detained, transported in the back of a police car to the hospital for a blood draw, then released. Months later he was charged with driving while intoxicated. The trial court denied his claim that his detention on the day of the accident was an "arrest" triggering his speedy trial rights. The Court of Appeals affirmed:

> He was in custody for a *limited duration* and for the *limited purpose* of ascertaining his blood-alcohol level . . . Under these circumstances we conclude that the trial court could find that *although Greenawalt was in police custody, the custody never amounted to an arrest* as that term is defined under AS 12.25.160.

*Id.* at 986 (emphasis added.)

---

[1] *See also* Defendants' briefing on arrest in their pending Motion for Summary Judgment at (**B**), pp. 13-16.

Plaintiff herein was not placed in a police car and transported far from the scene of the officers' investigatory stop, like the defendant in *Greenawalt*. Moreover, she was not detained for as long a time as the defendant in *Greenawalt* presumably was, considering the time needed to transport and process him at the hospital. Her detention was for a "limited time" and a "limited purpose" – awaiting the witness showup. If Greenawalt was not "arrested," Plaintiff herein was not "arrested." Mr. Greenawalt was not "held to answer for the commission of a crime" on the day of the accident; that came months later, when he was arraigned. Nor was Plaintiff herein "held to answer for the commission of a crime." Without the officers asking her any questions beyond her identity, and without them charging her, what was there to "answer"? Plaintiff has produced no evidence, nor can she, that she was "held to answer" for a crime. Her Motion must be denied.

### Even If an Arrest Had Occurred, It Would Not Have Been a False Arrest.

Under Alaska law, even an erroneous arrest, if made *with* proper legal authority, would not give rise to a claim for false imprisonment. The Supreme Court in *Waskey v. Municipality of Anchorage*, 909 P.2d 342 (Alaska 1996), affirmed summary judgment for the Municipality. Its police officer, on the strength of a facially valid warrant, had mistakenly arrested Plaintiff, the brother of the actual suspect. The Court cited *Hazen,* 718 P.2d at 461, for the elements of the tort: a restraint upon plaintiff's freedom, without proper legal authority. The Court held the Waskey warrant was "appropriate legal authority," and the officer had "no duty of care to proceed without error when he initiated legal action against" plaintiff. *Id.*, citing *Zerbe v. State*, 578 P.2d 597 (Alaska 1978).

Plaintiff's arguments, taken to their logical conclusion, would impose on Defendant officers a duty to plaintiff and the other look-alikes to avoid detaining any of them more than momentarily. She would force them to investigate the crime without benefit of a showup by the victim. She would forbid them from detaining any suspect until they had developed air-tight probable cause to arrest the "real bad guy." She would require that they risk letting the armed bank robber get away, rather than risk inconveniencing innocent citizens. This is not the law in Alaska, nor is it the law of the Ninth Circuit or the U.S. Supreme Court.[2]

**Officers' Legal Duty Provides "Appropriate Legal Authority."**

Not only were Officers Henikman and Voss not required to let all suspects slip away for fear of detaining innocent persons such as Plaintiff. In fact, they had an *affirmative legal duty* to do as they did in response to this serious crime. A police officer is under a duty to protect the lives and property of the public. *Deal v. State,* 626 P.2d 1073, 1080 (Alaska 1980). Armed bank robbery incontrovertibly threatens the lives and property of the public. Defendant officers were *required* to investigate and to seek the perpetrator. *See also Coleman v. State*, 553 P.2d 40, 46 (1976), discussed in Defendants' Motion for Summary Judgment at p. 12.

---

[2] Those courts have ruled that stopping innocent people is inevitable:

> "*Terry* accepts the risk that officers may stop innocent people. Indeed, the Fourth Amendment accepts that risk" as well. . . . Courts cannot prevent mistakes such as this from taking place; we can only ensure that mistakes are kept to a minimum by requiring officers to act reasonably, for articulable reasons, and not on a hunch.

*Gallegos v. City of Los Angeles*, 308 F.3d 987, 990 (9th Cir. 2002) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 126, 120 S.Ct. 673 (2000).)

Thus, assuming an arrest *did* take place, it was on "appropriate legal authority" – during the immediate aftermath of an armed bank robbery, where proximity of time, place and appearance all gave rise to reasonable suspicion that Plaintiff might be the suspect. Under their duty as police officers, *Deal* at 1080, they not only could but *must* investigate and detain the possible suspects. Where there is a duty to detain, there is "appropriate legal authority," and there can be no cause of action for false imprisonment under *Waskey*.

**<u>Plaintiff's Summary Judgment Argument Lacks a "Viable Legal Theory."</u>**

Plaintiff's brief, pp. 8-9, references the need for a "viable legal theory"[3] when seeking summary judgment, but never identifies such a theory. Defendants submit Plaintiff has no "viable legal theory." The issue is false arrest, but the only cases Plaintiff cites for false arrest, *Ailak* and *Hazen,* do not support her claim. In fact, in neither of them did the Court actually rule that a false arrest had occurred. In *Ailak*, 570 P.2d at 169, the Supreme Court only held there had been sufficient evidence on which the jury could properly have found an arrest occurred. The Court did not find, as a matter of law, that an arrest had occurred – as Plaintiff herein is asking this Court to do. In *Hazen*, 718 P.2d at 461, the Court simply recited the definition of false arrest in order to show why certain disputed discovery was not relevant; it did not parse the tort's elements in the

---

[3] This phrase is used once, and only once, in Plaintiff's *Philbin* case, at 1265. In the *Philbin* case, the Court did not define or apply the phrase. Nor does Plaintiff do so in her brief, despite at least three references. Her use of the phrase is unhelpful.

Defendants' Opposition to Motion for Partial Summary Judgment
Case No. 3:05-cv-00273-JWS
Page 6 of 8

context of the facts of that case, nor hold that a false arrest had occurred. That question was remanded. Plaintiff's summary judgment argument is unpersuasive.

**Dramatic, Emotional Language Has No Place In This Legal Analysis.**

At the expense of rational discourse, Plaintiff relies on dramatic and emotional language (e.g., "deplorable," p. 1; "segregated" and "tragic", p. 2; "police-instilled terror," p. 19), and immaterial facts (e.g. "publicly detained," p.2, "displayed," p. 6; the police had "no fear", p. 13.) The use of emotionally charged language appears intended to sway this Court's view of the legal principles and relevant facts involved. There is no question that her detention was distressing for Plaintiff, as it would be for almost anyone. But "personally distressing" is not the same as "legally significant". Nor are questions such as whether the officers subjectively experienced "fear," as opposed to making a reasonable, objective, professional decision to restrain a possible suspect, material to the question of "arrest" or "false arrest." Dramatic language and immaterial details, Defendants submit, are unhelpful and the Court can properly disregard them.

**CONCLUSION.**

Defendants agree there is no genuine issue of material fact for trial as to the question of "arrest" or "false arrest." As a matter of law, however, Defendants submit, the Court must reach the opposite conclusion from that desired by Plaintiff: on the undisputed facts, no "arrest" or "false arrest" occurred. This Court should deny Plaintiff's motion and grant Defendants a summary judgment in their favor on these issues.

Respectfully submitted this 18th day of May, 2007.

               JAMES N. REEVES
               Municipal Attorney

             By: s/ Joyce Weaver Johnson
                Municipal Attorney's Office
                P.O. Box 196650
                Anchorage, Alaska 99519-6650
                Phone: (907) 343-4545
                Fax: (907) 343-4550
                E-mail: uslit@muni.org
                Alaska Bar No. 9306029

The undersigned hereby certifies that on 05/18/07 a true and correct copy of *Defendants' Opposition to Motion for Partial Summary Judgment* was served on:

Isaac D. Zorea
and
Moshe C. Zorea

by first class regular mail, if noted above, or by electronic means through the ECF system as indicated on the Notice of Electronic Filing.
 s/ Joyce Weaver Johnson