Isaac D. Zorea
Law Office of Isaac Derek Zorea
P.O. Box 210434
Anchorage, AK 99521
(907) 677-3779
(907) 644-2802 facsimile

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

CAROLYN MITCHELL,          )
       Plaintiff,        )
   vs.              )
                     )
ANCHORAGE POLICE DEPARTMENT and the )
MUNICIPALITY OF ANCHORAGE, a    )
municipal corporation, WALTER MONEGAN, )
Officer HENIKMAN, and Officer J. VOSS,  )
       Defendants.     ) Case No. 3:05-cv-00273-JWS
_____ )

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff Carolyn Mitchell opposes the motion for summary judgment filed by

the Defendants (hereinafter collectively "the Municipality") in this case. Summary

judgment is a judicial tool foreclosing a plaintiff's day in court. It is appropriate

where (1) the material facts are undisputed; and (2) the moving party is entitled to

judgment as a matter of law. In the case at hand, the Municipality failed to establish

undisputed *material* facts. Concerning key material facts, Mitchell and the

Municipality disagree. More importantly, however, the Municipality has improperly

identified the controlling law relevant to this case. Having misidentified the law, the

Municipality has failed to prove its entitlement to judgment on the law. For these

reasons, all fully elaborated upon below, this court should deny the Municipality's motion for summary judgment.

## I.  INTRODUCTION

On May 8, 2004, Carolyn Mitchell endured a nightmarish encounter with Anchorage police officers, while her twelve-year-old son watched in mute helplessness.  When the dust settled from her encounter with officers from the Anchorage Police Department (APD), Mitchell filed this present lawsuit seeking verification that her rights had been violated by the named defendants.  Mitchell is pursuing claims under the Federal Civil Rights Act, 42 U.S.C. § 1983, and state law claims for false arrest, defamation, and intentional infliction of emotional distress.  On April 30, 2007, Mitchell filed with this court a request for summary judgment in her favor on the state law issue of false arrest.

The Municipality has presented this court with an umbrella motion for summary judgment, hoping to completely eliminate Mitchell's day in court.  The Municipality's motion for summary judgment, however, fails on every point.  As Mitchell will elaborate on below, the Municipality's motion initially fails because it does not prove that there are no disputes as to material facts.  Secondly, and probably most importantly, the Municipality's motion fails because it incorrectly identifies the controlling law for Mitchell's various causes of action.

This court has jurisdiction over Mitchell's case solely because her complaint alleges that the Municipality violated her rights under the United States Constitution,

1    specifically the Fourth Amendment.  Alleging a federal cause of action, Mitchell's

2    complaint is premised on how the federal courts, specifically the United States

3    Supreme Court, have interpreted her Fourth Amendment protection against

4    unreasonable searches and seizure.  In presenting its motion, however, the

5    Municipality has relied almost exclusively on Alaska case law, and Alaska statutes.

6    Furthermore, the Municipality incorrectly asserts that the Alaska Court of Appeals

7    case, Howard v. State, 664 P.2d 603 (Alaska App. 1983), is a decision from Alaska's

8    Supreme Court. Defendant's Motion for Summary Judgment, 7 [Hereinafter:

9    "Def.Mot., ___."].

10

11        Mitchell argues that the Municipality cannot establish entitlement to

12   judgment as a matter of law unless it identify the correct legal elements at issue in the

13   case.   Relying on state law, the Municipality's motion simply fails to identify the

14   proper legal analysis for deciding whether Mitchell's Fourth Amendment rights have

15   been violated.  If the Municipality hopes to prove that Mitchell has no chance to win

16   her case at trial, it is imperative that it identify the correct legal arguments.  Facts

17   become material, for purposes of summary judgment, only when the facts are applied

18   to the correct legal framework.  The Municipality's motion argues that Mitchell

19   cannot prevail in her claims under 42 U.S.C. § 1982, but its motion only focuses on

20   Alaska's legal interpretation of what constitutes an unreasonable search and seizure.

21        Regarding Mitchell's state law claims, the Municipality's motion fails to

22   prove entitlement to judgment as a matter of law.  Throughout its motion for

23   summary judgment, the Municipality relies upon facts that are disputed.  At the

1
2
3
4
5

summary judgment stage, the court is required to interpret any disputed evidence against the moving party.  In crafting its argument for summary judgment in this case, the Municipality overtly manipulates facts in order to fit these facts into a legal framework exonerating the conduct of Officers Voss and Henikman.

6
7
8
9
10
11
12

     As Mitchell will prove below, the Municipality's motion for summary judgment must fail on every point.  Undisputed facts do exist in this case, however, these facts point only toward a grant of summary judgment favoring Mitchell.  The only facts that are undisputed in this case are those facts proving that Mitchell's rights have been violated by the Municipality.  As to all issues raised by the Municipality, this court should completely deny its Motion for Summary Judgment.

13
14

**II.**    **DISPUTED AND UNDISPUTED FACTS**

15
16
17
18
19
20
21
22
23
24
25

     In presenting the facts of this case, the Municipality has provided a version that differs markedly on key points from Mitchell's recollection.  As the nonmoving party, this court is required to interpret conflicting evidence in favor of Mitchell.  Similarly, the Municipality has failed to introduce certain facts that are extremely relevant to Mitchell's legal causes of action.  Consequently, the factual background of this case is vastly different from the picture the Municipality has painted for this court.  Rather then reiterate in narrative form the events of May 8, 2004, Mitchell will instead focus on where the parties agree on facts, where they disagree on facts, and facts have been omitted.

26
27
28

### A.    UNDISPUTED FACTS

It is undisputed that on May 8, 2004, APD officers responded to a reported armed bank robbery at the Wells Fargo Bank located at the Sears Mall, 600 E. Northern Lights Boulevard. Def.Mot., 2.  Additionally, police dispatch broadcast a description of the bank robber, describing the robber as a black female adult, heavy set, 5' 9" tall, wearing a dark shirt and a black bandana, and carrying a bag. Id., 3.  It is undisputed that Mitchell is a black female adult, somewhat heavy set, although only 5'4" tall. Id..  Further, it is undisputed that Mitchell departed the Sears Mall, and encountered Officers Voss and Henikman. Id..  Officers Voss and Henikman claim that they believed Mitchell matched the description broadcast by police dispatch. Mitchell has no evidence to dispute that Officers Voss and Henikman did in fact believe that she matched the description provided by dispatch.

The parties generally agree concerning the events that occurred when Mitchell first encountered Officers Voss and Henikman.  In the Municipality's motion, it stated as fact that Officer Henikman placed "the suspect in handcuffs while Officer Voss covered" Henikman with his gun drawn. Id..  Further, it is undisputed that once Mitchell had been placed in handcuffs, Officer Henikman "searched the suspects purse and identified her as Carolyn Mitchell by her military ID." Id..  It is further undisputed that the "officers took Ms. Mitchell and held her in handcuffs near a police car approximately 50 feet from the point of her apprehension, for approximately 20-30 minutes." Id..

The parties likewise generally agree concerning the events of Mitchell's

detention.  It is undisputed that during the 20-30 minutes of her detention, "Officers Voss and Henikman guarded Ms. Mitchell." Id..  It is undisputed that "[w]hile detained, Ms. Mitchell requested that the officers allow her son to use her cell phone." Id., 4.  Likewise, it is undisputed that "[t]he officers did not allow the use of the phone." Id..  It is also undisputed that Mitchell remained in detention until a bank teller could perform a showup. Id..  Finally, it is undisputed that when the bank teller indicated that Mitchell was not the bank robber, the police immediately released her from custody. Id..

Mitchell also agrees that a local television station, KTUU Channel 2 News, ran a story on the bank robbery. Id., 5.  Mitchell agrees that some of the footage from the scene included some depicting her. Id..

For the purposes of the Municipality's motion for summary judgment, Mitchell agrees as undisputed all the facts stated above.

**B.    DISPUTED FACTS, AND ADDITIONAL FACTS BY MITCHELL.**

The Municipality's motion does provide some undisputed facts, however, Mitchell argues that its motion also omitted facts, and misrepresents other critical facts.  The facts that the Municipality has omitted, and misrepresented, are critical elements required for deciphering the totality of the circumstances surrounding May 8, 2004.  These are facts that Mitchell intends to present to the trier of fact, and which at the summary judgment stage must be considered as accurate and true.

First, Mitchell wants introduced as a material fact that her encounter with APD actually started while she was in the Sears department store shopping with her

son, Demarcus. Affidavit of Carolyn Mitchell, ¶ 1[Hereinafter: "Mitchell Aff., ¶ _."].

It is not the case that Mitchell exited the Sears Mall due to her own desires, but rather

she had been directed to depart the Mall as she did by officers with APD. Id., ¶ 3.

Once outside the Mall, Mitchell acted absolutely compliant with the police requests,

a fact omitted by the Municipality.[1]  Further, Officer Henikman decided to handcuff

Mitchell even though he had no fear for his personal safety. Ex. A, at 3, ln 9-11.  He

has testified that he handcuffed Mitchell for the sole purpose of detaining her.  Ex. A,

at 2, ln 3-4.  Additionally, Officer Voss had no concern for his safety before, or after,

Mitchell had been handcuffed. Ex. B, at 4, ln 2-3.

After Mitchell had been handcuffed, it is undisputed that Officer Henikman

patted her down for weapons. Ex. A, at 3, ln 19-23.  It is also admitted, however, that

Officer Henikman did not find any weapons. Id..  As such, when Officer Henikman

proceeded to empty and search Mitchell's purse, this was done after the officer had

secured Mitchell, and found no weapon on her person. Ex. A, at 3, ln 19 to p. 4, ln

25.  It is also an undisputed fact that after Officer Henikman had searched Mitchell,

and her purse, and found no weapons, she then asked the officer if he would release

her. Mitchell Aff., ¶ 10.  It undisputed that Officer Henikman chose not to release

Mitchell. Id..

Mitchell disputes several key factual statements provided by the Municipality

in its motion.  First, Mitchell disputes that Officer Henikman ever told her that she

---

[1] Exhibit A, Transcript of Videotape Deposition of Officer Ross Henikman, at 1, ln 21-24 [Hereinafter: "Ex. A, at __."]; Exhibit B, Transcript of Videotape Deposition of Officer Justin C. Voss, at 4, ln 2-3 [Hereinafter: "Ex. B, at __."].

"was being detained until the bank teller could be brought by to identify her as a bank robber." Def.Mot., 4.  Likewise, Mitchell disputes that when the officers released Mitchell, they "explained the reason for her detention." Id., 4-5.  It is Mitchell's position that Officer Henikman did not tell her why she had been handcuffed. Rather, Officer Henikman merely told Mitchell that she would "find out later" why she had been detained. Mitchell Aff., ¶ 8.  Further, Mitchell remembers that when the officers released her, the officers did not tell her why she had been detained. Id., ¶ 12.

Finally, the Municipality has presented as facts certain key issues that it fails to fully clarify.  The Municipality states as fact that "[o]ther women matching the description of the bank robbery suspect were detained." Def.Mot., 4.  Mitchell points out that the Municipality failed to state whether the other women referenced were also detained at gun point, handcuffed, and subjected to a search of person and belongings.  Similarly, the Municipality asserts as fact that the suspect Cynthia Washington was "detained at the Anchor Arms Hotel." Def.Mot., 5.  Again, the Municipality does not state whether the detention of Washington entailed the use of weapons, and handcuffs.  As a point of evidentiary fact, Mitchell points out that police statements suggest that Washington was not handcuffed until a showup had been performed. Exhibit C, Anchorage Police Department Police Report, at 4.

It is an uncontroverted fact of this case that Officers Voss and Henikman did not have probable cause to arrest Mitchell on May 8, 2004.[2]  Officer Henikman has

---

[2] Exhibit D, Officer Ross Henikman's Response to Request for Admissions, at 2 (req # 4) [Hereinafter: "Ex. D, at __."]; Exhibit E, Officer Justin Voss's Responses to Plaintiff's Request for Admissions, at 2-3 (req # 4) [Hereinafter:  Ex. E, at __."].

also testified that when he searched Mitchell he did not discover any weapons, or

find anything linking her to any criminal activity. Ex. A, at 3, ln 19 to p. 4, ln 2.

Similarly, under oath, both Officers Voss and Henikman stated that they did not

perceive Mitchell to be a threat to their safety or the safety of any other person. Ex.

A, at 9, ln 4 to p. 10, ln 4; Ex. B, at 3, ln 17 to p. 4, ln 3. Finally, it is undisputed that

during the time that Mitchell remained in handcuffs, neither Officers Voss nor

Henikman asked Mitchell any questions concerning her involvement in a recent bank

robbery. Ex. A, at 6, ln 22-23; Ex. B, at 6, ln 24-25. Both officers state that the

purpose for holding Mitchell was to permit a show-up by a witness to a recent

attempted bank robbery. Ex. A, at 4, ln 11-25; Ex. B, at 5, ln 15-24.


### III.    STANDARD FOR SUMMARY JUDGMENT

The United States Supreme Court observed that "at the summary judgment

stage the judge's function is not himself to weigh the evidence and determine the

truth of the matter but to determine whether there is a genuine issue for trial."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Continuing, the Court

stated that the "inquiry performed is the threshold inquiry of determining whether

there is the need for a trial – whether, in other words, there are any genuine issues

that properly can be resolved only by a finder of fact because they may reasonably be

resolved in favor of either party." Id., at 250.

The Ninth Circuit Court of Appeals has noted that "[d]espite the Supreme

Court's clear pronouncement limiting the scope of summary judgment, other circuits

have carved out various exceptions under which a court may disregard self-serving and incredible testimony or affidavits." Leslie v. Grupo ICA, 198 F.3d 1152, 1157 (9th Cir. 1999).  To clarify, and distinguish, the Ninth Circuit's treatment of summary judgment, the Leslie court wrote:

> In T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626 (9th Cir. 1987), we explained that, 'at summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.' Id., at 630-31 (citations omitted).  We specifically reject the notion that a court could disregard direct evidence on the ground that no reasonable jury would believe it. See Id. At 631 n. 3.

Leslie, 198 F.3d, at 1158.

The Supreme Court has clearly delineated what a plaintiff facing summary judgment must do in order to survive Rule 56 dismissal.  The Court stated that "the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor.  If he does so, there is a genuine issue of fact that requires a trial." Anderson v. Liberty Lobby, 477 U.S., at 257.

IV.    **ARGUMENT**

A.    **THE MUNICIPALITY FAILS TO PROVE IT IS ENTITLED TO SUMMARY JUDGMENT AS TO MITCHELL'S CLAIM UNDER 42 U.S.C. § 1983.**

In arguing that Mitchell's federal civil rights claim should be dismissed as a matter of law, the Municipality relies almost exclusively on an Alaska Appellate Court case, Howard v. State, 664 P.2d 603 (Alaska App. 1983). Def.Mot., 7-11.  Even though the Municipality mistakenly claims that Howard is an Alaska Supreme

Court case, its reliance on Alaska case law concerning a federal claim is misplaced. Mitchell's claim under 42 U.S.C. § 1983, alleges that the Municipality violated her federal protections against unreasonable searches and seizures, as protected by the Fourth Amendment.  Mitchell acknowledges that Alaska's Constitution also prohibits unreasonable search and seizure, Article I, Section 14, but her federal claim is limited to her allegations that her federal rights have been violated.

It is significant that the Municipality's motion focuses primarily on Alaska case law.  The United States Supreme Court is the ultimate authority for interpreting whether Mitchell's Fourth Amendment rights were violated on May 8, 2004.  As will be fully discussed below, the Supreme Court has never endorsed the five-factor test advanced by Howard.  Further, the Supreme Court has actually rejected reliance on the type of analysis used by the Howard court. United State v. Arvizu, 534 U.S. 266, 272 (2002) (*rejecting a 10 factor test used by Ninth Circuit Court of Appeals*). Alaska's Supreme Court has not invalidated the five-step analysis used by the Appellate Court in Howard, but the Court has also not adopted this test either.

By analyzing federal precedent on what constitutes a violation of Fourth Amendment protections, Mitchell will show that summary judgment on her federal civil rights claim must not be granted to the Municipality.  The undisputed facts in this case might warrant summary judgment in Mitchell's favor on her 42 U.S.C. § 1983 claim.  The undisputed facts, however, cannot create justification for the Municipality to prevail in its request for judgment as a matter of law on this issue.

### 1. ACCORDING TO FEDERAL CASE LAW, APD OFFICERS' CONDUCT TOWARD MITCHELL MUST BE CHARACTERIZED AS AN ARREST.

In asserting that Officers Voss and Henikman never arrested Mitchell, the Municipality advances the theory that "there is no bright line to distinguish between an arrest and an investigatory stop." Def.Mot., 7.  Realizing the hallowed importance of the Fourth Amendment, however, the Supreme Court has been quite willing to draw a bright line between an arrest and an investigatory stop.

The most factually relevant case wherein the Supreme Court has rejected the Municipality's legal premise is Dunaway v. New York, 442 U.S. 200 (1979).  In Dunaway, police for Rochester, New York, investigated an attempted robbery and murder at a pizza parlor. Id., 442 U.S., at 202.  Based on information from a jail inmate, Rochester police learned that Irving Dunaway had possibly been involved in the murder and attempted robbery. Id.., at 203.  The police did not obtain enough information, however, to create probable cause, such as would permit the issuance of a warrant. Id..  Nonetheless, police tracked down Dunaway, took him into custody, drove him to the police headquarters, and placed him in an interrogation room. Id..  When police took Dunaway into custody, however, they did not handcuff him, nor did they tell him that he was under arrest. Id..  Police gave Dunaway his Miranda warning at the station house, questioned him, and obtained probable cause to arrest him. Id..

At trial, Dunaway filed a motion to suppress statements made during his interrogation, alleging that the police had unlawfully seized him prior to giving him his Miranda warnings. Id..  The State, in opposing his motion, argued that the seizure

of Dunaway "did not amount to an arrest and was therefore permissible under the Fourth Amendment because police had 'reasonable suspicion' that [he] possessed 'intimate knowledge about a serious and unsolved crime.'" 442 U.S., at 207.  The State's argument centered on whether an arrest occurred under state law, such as would have required probable cause for arrest.  Ultimately the Supreme Court rejected the argument advanced by the State of New York, holding that constitutional law will determine if a suspect has been arrested, for purposes of the Fourth Amendment. Id., at 212.

In rendering its decision, the Dunaway Court carefully analyzed issues that are very similar to those applicable to Mitchell's case.  The Court stated, the "State now urges the Court to apply a balancing test, rather that the general rule, to custodial interrogations, and to hold that 'seizures' such as that in this case may be justified by mere 'reasonable suspicion.'" Id., at 211.  In replying to the State's argument, the Court held "Terry and its progeny clearly do not support such a result." Id., at 212. The Court continued, stating: "[t]he narrow intrusions involved in those cases were judged by a balancing test rather than the general principle that Fourth Amendment seizures must be supported by the 'long-prevailing standards' of probable cause, [citation omitted] only because these intrusions fell far short of the kind of intrusion associated with an arrest." Id..

In formulating its holding, the Dunaway Court pronounced clearly that it is irrelevant how police departments decide to technically classify when an arrest has occurred.  The Court stated, "[i]n contrast to the brief and narrowly circumscribed

intrusions involved in [the Terry cases], the detention of petitioner was in important

respects indistinguishable from a traditional arrest." 442 U.S., at 212.  The Court

pronounced that "[t]he application of the Fourth Amendment's requirement of

probable cause does not depend on whether an intrusion of this magnitude is termed

an 'arrest' under state law. The mere fact that petitioner was not told he was under

arrest, was not 'booked,' and would not have had an arrest record if the interrogation

had proved fruitless . . . obviously do not make petitioner's seizure even roughly

analogous to the narrowly defined intrusions involved in Terry and its progeny." Id.,

at 212-3.

The Dunaway Court clearly defined as a legal principle that if a suspect is

treated in a fashion approximating a traditional arrest, then the protections associated

with a tradition arrest are legally required.  "Hostility to seizures based on mere

suspicion was a prime motivation for the adoption of the Fourth Amendment, and

decisions immediately after its adoption affirm that 'common rumor or report,

suspicion, or even 'strong reason to suspect' was not adequate to support a warrant

for arrest." Id., at 213.

Mitchell argues that the holding in Dunaway is in many respects at odds with

the Howard court's five-factor test.  Using the Howard court's five-factor test, the

Municipality attempts to judge in isolation the conduct of Officers Voss and

Henikman toward Mitchell. Def.Mot., 7-11.  The Municipality argues that the

officers did not arrest Mitchell because each individual factor of the Howard test can

be justified, and presented as reasonable.  However, as stated before, the Howard test

has no precedential value in assessing a Fourth Amendment violation.

Essentially, the Municipality argues that the balancing test used in <u>Terry</u> ought to be applied every time police slap handcuffs on a suspect.  Using the <u>Dunaway</u> Court's analysis, however, the court should first assess whether police acted toward Mitchell in a manner "indistinguishable from a traditional arrest." <u>Dunaway</u>, 442 U.S., at 212.  The <u>Dunaway</u> Court states that if the police did, as a matter of law, arrest the suspect, then the <u>Terry</u> balancing test is inappropriate. <u>Id.</u>.  If it is established that the police acted in a manner indistinguishable from an arrest, then the probable cause is required or the arrest is illegal. <u>Id.</u>, at 213.

Employing the <u>Dunaway</u> analysis, the material facts at issue in Mitchell's case become those facts related to whether Officers Voss and Henikman acted toward her in a manner indistinguishable from a traditional arrest.  Under this analysis, to prevail in its motion for summary judgment the Municipality must first prove that no dispute exists concerning whether the conduct of Officer Voss and Henikman amounted to a defacto arrest for purposes of the Fourth Amendment. Based on the facts of this case, however, it is clear that the Municipality cannot meet its required burden of proof to support its request for judgment as a matter of law.

Mitchell argues that all undisputed facts in this case prove that Officers Voss and Henikman did in fact arrest her on May 8, 2004.  Likewise, it is undisputed that Mitchell's arrest occurred without probable cause. Ex. D, at 2 (req. # 4); Ex. E, at 2-3 (req. # 4).  As such, Mitchell's arrest violated the Fourth Amendment because it was per se unreasonable. <u>Dunaway</u>, 442 U.S., at 214.  Given that the undisputed facts

prove that Mitchell was arrested without probable cause, her civil rights claim cannot be dismissed on summary judgment.

The undisputed facts proving that Officers Voss and Henikman arrested Mitchell will now be laid out for the court.  First, the undisputed facts establish that Officers Henikman placed Mitchell in handcuffs, thereby perpetrating a seizure under the Fourth Amendment. Ex. A, at 2, ln 3-4.  If  Officer Henikman intended to perform a Terry stop, he would have been permitted merely to stop and frisk Mitchell. Florida v. Royer, 460 U.S. 491, 499 (1983).  If Officer Henikman had approached Mitchell and she ran from him, or acted noncompliant, perhaps he would have had cause to handcuff her. Illinois v. Wardlow, 528 U.S. 119, 124 (2000).  The undisputed evidence in this case, however, establish that Officer Henikman did not stop and question Mitchell, but rather stopped and handcuffed her. Ex. A, at 3, ln 9-11.  Officer Henikman made no effort to question Mitchell prior to handcuffing her. Ex. A, at 6, ln 22-23.  Placing a suspect in handcuffs, while not absolutely determinative of an arrest, is a traditional act police take when arresting someone.

Next, after handcuffing her, Officer Henikman conducted a search of Mitchell's body (pat down), and her purse. Ex. A, at 3, ln 19 to p. 4, ln 25.  The Municipality presents no evidence suggesting that Mitchell consented to a search of her person or her purse.  The Municipality alleges that the search was for safety concerns, however, no safety concern could exist when Mitchell had already been placed in handcuffs.  Issues of police safety, such as to justify a stop and frisk, can only be realistically argued when the suspect has not already been placed in

1   handcuffs.

2       In addition to subjecting Mitchell to an unwanted seizure, and search,

3   Officers Voss and Henikman also prevented her from calling her husband, or letting

4   her son call his father. Mitchell Aff., ¶ 7.  If Officers Voss and Henikman had been

5   executing a mere investigatory stop, related to an attempted bank robbery that

6   occurred moments before, no justification can exist for why Mitchell's cell phone

7   could not be accessed by her son. Ganwich v. Knapp, 319 F.3d 1115, 1123-1124 (9th

8   Cir. 2003) (*officers violated Fourth Amendment protection when they prevented

9   detainees from calling family members*).  Again, allegations of police safety are not

10  credible considering the circumstances surrounding Mitchell's detention.  It is

11  unrealistic for the Municipality to argue that Officers Voss and Henikman actually

12  perceived real threat to safety could result from Demarcus using his mother's cell

13  phone to call his father.  The only realistic interpretation for why Mitchell's cell

14  phone could not be accessed is that she had become arrested, and her freedom curbed

15  as a result. Id..

16      Testimony from Officer Voss and Henikman also establish facts proving that

17  Mitchell had been placed under arrest on May 8, 2004.  Officer Henikman states that

18  despite handcuffing her, he never questioned Mitchell concerning the bank robbery,

19  and never sought information that could exonerate her. Ex. A, at 6, ln 22-23.  Instead,

20  Henikman admits that his purpose regarding Mitchell was to detain her until a

21  witness could perform a showup. Ex. A, at 4, ln 11-25.  Officer Voss and Henikman

22  both admit that they considered Mitchell in custody. Ex. B, at 2, ln 15-17; Ex. A, at

6, ln 7-17.  Further, Henikman tacitly admits that he did not place Mitchell in custody to obtain information from her about the robbery, but rather so a witness could determine whether she had committed the crime. Ex A, at 7, ln 14-17. Clearly, Officers Voss and Henikman made no effort at following the "narrowly defined intrusions involved in Terry and its progeny." Dunaway, 442 U.S., at 213.

Based on the undisputed facts presented by Mitchell, the Municipality's motion for summary judgment must be denied as to her claim under 42 U.S.C. § 1983.  The undisputed facts indicate that Officers Voss and Henikman behaved toward Mitchell in a manner indistinguishable from a traditional arrest.  If Officers Voss and Henikman did arrest Mitchell, this arrest must be deemed unreasonable because it occurred without probable cause.  At the very least, Mitchell has presented this court with an issue of fact that should go before a jury for final resolution.

B.    **LACKING LEGAL AUTHORITY TO DETAIN, RESTRAIN, AND SEARCH HER, DEFENDANT OFFICERS DID FALSELY ARREST CAROLYN MITCHELL.**

The Municipality next argues that Mitchell's state law claim of false arrest should be dismissed on summary judgment.  In framing its argument on the issue of false arrest, the Municipality seemingly argues that Officer Henikman had probable cause to arrest Mitchell.  The Municipality states on the one hand that "no arrest was here involved," and yet the focus of its argument centers on how if an arrest did occur "reasonable cause" existed for such an arrest. Def.Mot., 13.

The Municipality's argument on false arrest is simply confusing, and lacks legal precision.  The Municipality argues that Officer Henikman had "reasonable

cause" to believe that Mitchell committed the bank robbery at Wells Fargo Bank.

Def.Mot., 16.  To establish its argument, the Municipality explains that "[p]robable

cause . . . may rest on reasonably trustworthy information from an informant."

Def.Mot., 15.  By so arguing, the Municipality apparently is advancing the theory

that if this court concludes that Officer Henikman did in fact arrest Mitchell, the

arrest occurred based on probable cause to arrest.  Continuing its theory, the

Municipality argues that if Officer Henikman had probable cause to arrest Mitchell,

her detention occurred with proper legal authority.

  The central, and most glaring, flaw in the Municipality's argument is that

Officers Henikman and Voss have already admitted that no probable cause existed to

arrest Mitchell. Ex. D, at 2 (req. # 4); Ex. E, at 2-3 (req. # 4).  It seems a useless

endeavor for the Municipality to argue that the facts of this case could be

manipulated so as to create probable cause for arrest, when the arresting Officer has

admitted he did not arrest her based on probable cause.

  The Municipality frames its probable cause analysis around that used by the

Court in City of Nome v. Ailak, 570 P.2d 162 (Alaska 1977).  However, in Ailak, the

Nome police did not admit that they had no probable cause to arrest Mr. Ailak. Ailak,

570 P.2d, at 169.  In the Ailak case, reasonable cause for arrest remained an

unresolved legal conclusion at the time of trial, and the trial court's conclusion

became an appeal issue. Id., at 170.  In Mitchell's case, the Municipality has never

*before now*, advanced the notion that Officer Henikman had probable cause to arrest

Mitchell.

For the purposes of defeating the Municipality's summary judgment on the issue of false arrest, Mitchell argues that it is an admitted fact that Officer Henikman had no probable cause to arrest Mitchell on May 8, 2004.  For the reasons here advanced, and those argued in her own Motion for Partial Summary Judgment on the issue of False Arrest currently before the court, Mitchell requests that the court deny the Municipality's motion on this issue.

C.    **BY PUBLISHING FALSE AND DEFAMATORY STATEMENTS THAT HAVE A NATURAL TENDENCY TO IMPUGN MITCHELL'S HONESTY AS A BUSINESS OWNER, DEFENDANTS ARE LIABLE FOR DEFAMATION PER SE.**

The Municipality argues that Mitchell's "defamation claim fails because a defamatory statement was not made, the officers did not negligently publish a false and defamatory statement, and neither 'per se' actionability nor 'special harm' exists." Def.Mot., 16.  Again, the Municipality's argument is premised on an incomplete research into the controlling law on defamation per se, and as such must fail.

The Municipality's arguments concerning Mitchell's defamation claim is premised on inadequate research into defamation case law.  In framing its legal analysis concerning Mitchell's defamation claim, the Municipality references the Alaska Supreme Court case, French v. Jadon, 911 P.2d 20 (Alaska 1996). Def.Mot., 16.  The plaintiff in Jadon, alleged defamation per se based on false statements related to her morality. Jadon, 911 P.2d, at 33.  While Jadon generally represents good case law on defamation per se, it is a poor match for the defamatory conduct

alleged in Mitchell's complaint.  Unlike the plaintiff in <u>Jadon</u>, Mitchell alleges that Officers Voss and Henikman acted in a manner that publicized a statement injurious to her business reputation.

An Alaska Supreme Court case more on point with Mitchell's defamation case is the decision rendered in <u>Alaska Statebank v. Fairco</u>, 674 P.2d 288 (Alaska 1983).  In <u>Fairco</u>, the defendant, Alaska Statebank, repossessed the plaintiff's business, and business accounts. <u>Id.</u>, 674 P.2d, at 290.  After taking possession of plaintiff's business accounts, Alaska Statebank refused payment on checks written by plaintiff, Fairco. <u>Id.</u>.  At trial, the trier of fact concluded that Alaska Statebank did not have a legal right to repossess Fairco's business. <u>Id.</u>, at 291. The trial court awarded Fairco damages based on defamation per se, because Alaska Statebank's conduct publicized a false statement that Fairco did not pay its loan obligations, and issued bad checks. <u>Id.</u>, at 294.

The facts presented in <u>Fairco</u>, much more closely resemble the facts presented by Mitchell's case.  Mitchell has alleged that when Officer Henikman handcuffed her, and then forced her to stand in public view in handcuffs, this constituted a publication that she was suspected of criminal activity.  Further, as a business owner, Mitchell argues that statements, or conduct, implying that police had probable cause to place her in handcuffs per se injured her standing in the business community. Unlike the plaintiff in <u>Jadon</u>, Mitchell alleges that having her stand handcuffed in public, in police detention, clearly suggests that she committed, or is suspected of committing, criminal acts.

In upholding Fairco's award for defamation, the Supreme Court held that for defamation purposes, a published statement can be in the form of observed conduct. Fairco, 674 P.2d, at 294. The Court held that: "Statebank's conduct was clearly defamatory despite the fact that the statement communicated by the repossession was not actually verbalized." Id.. Although Statebank did not literally publish a defamatory statement concerning Fairco, it behaved in an equivalent manner. The Court stated, "Statebank's act of closing Clowntown was suggestive of Fairco's failure to honor financial obligations, constituting a "statement" that spread throughout the business community and impaired [Fairco's] relationships with customers, clients, employees, business associates and suppliers." Id., at 295.

The Court in Fairco, also addressed the legal analysis for determining whether an offensive statement (or conduct) was "defamatory per se or per quod." Id.. The Court wrote that "[i]t has been held that statements injurious to plaintiff's business reputation are defamatory per se, Cook v. Safeway Stores, Inc., 266 Or. 77, 511 P.2d 375, 378 (1973) (en banc), and in particular, that where 'the words spoken by the defendant were such as to either impute a crime to plaintiff' . . . recovery is permitted without proof of special damages. Fairco, 674 P.2d, at 295, citing Cinquanta v. Burdett, 154 Colo. 37, 388 P.2d 779, 780 (1963) (en banc).

Mitchell's claim for defamation is premised on Officer Henikman's act of impuging a crime to her, and that such an act is clearly injurious to her business reputation. The fact that Officer Henikman handcuffed, and detained Mitchell, without probable cause establishes that his conduct was either negligent or reckless.

1
2
3
4
5

The undisputed facts establish that Mitchell did not rob the Wells Fargo bank, and Officer Henikman had not evidence to suggest that she had done so.  Nonetheless, Officer Henikman's actions of handcuffing Mitchell subjected her to a per se injury to her business reputation.

6
7
8
9

Based on the analysis above, the Municipality's argument concerning Mitchell's defamation claim must fail, and this court should deny its motion for summary judgment.

10
11
12

### D.     BY ACTING IN SUCH A MANNER AS TO CAUSE MITCHELL SEVERE EMOTIONAL DISTRESS, DEFENDANTS ARE LIABLE FOR IIED.

13
14
15
16
17
18
19
20

Finally, the Municipality argues that this court should dismiss as a matter of law Mitchell's claim for intentional infliction of emotional distress (IIED).  In presenting its final argument that this court should dismiss Mitchell's claims, the Municipality argues that Officers Voss and Henikman's conduct "did not involve multiple, concerted efforts to seriously damage the well-being and reputation of the plaintiff." Def.Mot., 19.  As with the Municipality's previous arguments, its argument on the issue of IIED is not well argued, and must fail.

21
22
23
24
25
26
27

In presenting its arguments, the Municipality misidentifies the critical elements Mitchell must prove to establish a claim of IIED.  In Walmart, Inc. v. Stewart, Alaska's Supreme Court stated that "[t]he elements necessary for establishing a prima facie case of IIED are: '(1) the conduct is extreme and outrageous, (2) the conduct is intentional or reckless, (3) the conduct causes emotional distress, and (4) the distress is severe.'" Stewart, 990 P.2d 626, 635

28

(Alaska 1999). Based on the undisputed facts of this case, Mitchell believes she has established a prima facie case of IIED, or at least that a factual dispute exists regarding these elements.

First, Mitchell argues that Officers Voss and Henikman acted in an extreme and outrageous manner toward her on May 8, 2004. The undisputed facts establish that when she encountered Officers Voss and Henikman on the date in question, Mitchell had done nothing illegal, and had merely been shopping with her son. Mitchell Aff., ¶ 1. Despite her law-abiding conduct, when Mitchell walked out of the Sears Mall, Officers Voss and Henikman greeted her with armed shotguns. Mitchell Aff., ¶ 4.

The evidence shows that Officers Voss and Henikman made no effort to interact in a more calm and rational manner toward Mitchell. Rather than calmly ask Mitchell if she would answer a few questions, Officers Voss and Henikman segregated Mitchell based on her skin color, handcuffed her and stood in front of Sears Mall for anyone to see. Mitchell Aff., ¶ 4-6. Based on these facts, a jury could easily conclude that Officers Voss and Henikman acted in an extreme and outrageous manner.

The evidence also shows that Officers Voss and Henikman acted toward Mitchell in an intentional or reckless manner. Testimony by Officer Voss and Henikman establish that neither officer viewed Mitchell as a safety concern. Ex. A, at 9, ln 4 to p. 10, ln 4; Ex. B, at 3, ln 17 to p. 4, ln 3. Nonetheless, Officers Voss and Henikman kept Mitchell in handcuffs for over twenty minutes, even though she had

been searched, and no evidence existed to link her to criminal activity. Ex. A, at 3, ln 19 to p. 4, ln 2.

As to whether Mitchell suffered emotional distress, and whether the distress is severe, the Municipality has not argued that these elements are not satisfied.  As such, the Municipality is unable to prove that Mitchell's IIED claim must fail as a matter of law.

**V.    Conclusion**.

This court should deny the Municipality's motion for summary judgment on all points because its motion has failed to identify the controlling law concerning Mitchell's legal claims, and as such its motion has failed to prove no dispute as to material fact.  By failing to apply the correct legal standards to the undisputed facts of this case, the Municipality has failed to satisfy its burden for proving entitlement to summary judgment.

On all issues presented, the Municipality's motion for summary judgment fails, and its request for judgment as a matter of law should be denied.

Respectfully submitted this 18th  day of May 2007.

  S/  Isaac Zorea  
Law Offices of Isaac D Zorea  
P.O. Box 210434  
Anchorage, AK 99521  
907-830-1385  
907-677-3779  
Eyedz@gci.net

<u>Certificate of Service</u>

I hereby certify that on May 18, 2007
I electronically filed the foregoing with
the Clerk of Court using the CM/ECF
system which sent notification to the
following:

     Joyce Weaver Johnson

and I hereby certify that I have mailed by
United States Postal Service the document
to the following non CM/ECF participants:

     none.

Dated this 18th day of May, 2007, at Anchorage, Alaska.

 S/ Isaac Zorea
  Law Offices of Isaac D Zorea
  P.O. Box 210434
  Anchorage, AK 99521
907-830-1385
 907-677-3779
 Eyedz@gci.net