EXHIBIT A

| | | |
|---|---|---|
| 1 | | -- you told her -- told her to turn around? |
| 2 | A | Yes. |
| 3 | Q | Before you handcuffed her? |
| 4 | A | Yes. |
| 5 | Q | Now when you told her to turn around do you know what |
| 6 | | Mister -- Officer Voss was doing, was he still holding |
| 7 | | her at guard? |
| 8 | A | I don't remember. |
| 9 | Q | When she turned around what did you do with your |
| 10 | | weapon, was that still pointed at her? |
| 11 | A | Yes. |
| 12 | Q | At what point did you lower your weapon and reach for |
| 13 | | your handcuffs? |
| 14 | A | Before I was ready to handcuff her. |
| 15 | Q | Okay.  So she backed up -- you said she backed up.  How |
| 16 | | far did she have to back up to reach where you were, |
| 17 | | the 15 feet? |
| 18 | | MS. JOHNSON:  Foundation, speculation. |
| 19 | A | I encountered her at 15 feet, so it's within that |
| 20 | | range. |
| 21 | Q | (By Mr. I. Zorea)  At the time you -- or prior to |
| 22 | | handcuffing her, did Ms. Mitchell resist any of your |
| 23 | | commands? |
| 24 | A | No. |
| 25 | Q | Did she seem a flight risk? |

Exhibit A – Page 1

| | | |
|---|---|---|
| 1 | | the bags in her hands or whether you -- on the ground? |
| 2 | A | I don't remember. |
| 3 | Q | What prompted you to place her in handcuffs? |
| 4 | A | I placed her in handcuffs to detain her. |
| 5 | Q | Could you have detained her without placing her in |
| 6 | | handcuffs? |
| 7 | | MS. JOHNSON: Objection, speculation. |
| 8 | A | I could have, yes. |
| 9 | Q | (By Mr. I. Zorea) During your training was there any |
| 10 | | instruction on when it was an appropriate for an |
| 11 | | officer to place somebody in handcuffs? |
| 12 | A | Yes. |
| 13 | Q | And what sort of instruction did you have concerning |
| 14 | | when you could place somebody in handcuffs? |
| 15 | A | It depends on the situation. In..... |
| 16 | Q | (Indiscernible - simultaneous speech)...... |
| 17 | A | .....this particular situation I'd information that a |
| 18 | | armed bank robbery just occurred and someone matching |
| 19 | | the description of the suspect walked out the doors. |
| 20 | | It'd be appropriate for not only my safety, but the |
| 21 | | safety of the public and the safety of that individual |
| 22 | | to be placed in handcuffs. |
| 23 | Q | So is it your testimony that you placed her in |
| 24 | | handcuffs as a safety issue? |
| 25 | A | That's one of the reasons. |

| | | |
|---|---|---|
| 1 | Q | Whose safety were you concerned about? |
| 2 | | MS. JOHNSON: Asked and answered. |
| 3 | A | I mentioned my safety, the suspect's safety and the |
| 4 | | safety if the individuals walking around the shopping |
| 5 | | mall. |
| 6 | Q | (By Mr. I. Zorea) On the inside of the shop- -- |
| 7 | | shopping mall or..... |
| 8 | A | Anywhere. |
| 9 | Q | Yet you testified earlier that you weren't in fear for |
| 10 | | your safety though, were you? |
| 11 | A | No, I wasn't. This is what I do for a living. |
| 12 | Q | How were you protecting Ms. Mitchell's safety by |
| 13 | | placing her in handcuffs? |
| 14 | A | I was securing her so that -- it's been my experience |
| 15 | | that a lot of individuals who may be armed may have |
| 16 | | access to a weapon, while they're secured it eliminates |
| 17 | | their access to a weapon, reduces any probability of |
| 18 | | force. |
| 19 | Q | After placing her in handcuffs I think you stated that |
| 20 | | you did a pat down? |
| 21 | A | Correct. |
| 22 | Q | Okay. And what -- did the pat down reveal any weapons? |
| 23 | A | No. |
| 24 | Q | Did you look inside of the purse? |
| 25 | A | Yes. |

1  Q    Was there a weapon in her purse?
2  A    No.
3  Q    Approximately how long did it take for you to pat her
4       down and to look in her purse for weapons?
5  A    I'd estimate 15 seconds.
6  Q    Do you recall how long Ms. Mitchell was handcuffed?
7  A    No.
8  Q    Would you say that it was a matter of minutes or a
9       matter of seconds?
10 A    Minutes.
11 Q    What was your reasoning for keeping handcuffs on her
12      after you had ascertained that no weapons were on her
13      person or in her purse?
14 A    We had officers at the time going around the Sears Mall
15      with the teller who was a witness to the bank robbery
16      conducting show ups. And Ms. Mitchell was detained
17      until the teller could arrive and view Ms. Mitchell and
18      determine if she was or was not the suspect in the bank
19      robbery.
20 Q    Okay. Did -- didn't really answer my question. Why
21      did you keep the handcuffs on her after determining
22      that she didn't have any weapons?
23 A    She was being detained.....
24 Q    Okay.
25 A    .....pending the show up.

Exhibit A – Page 4

R & R  C O U R T  R E P O R T E R S

811 G STREET
(907) 277-0572/Fax 274-8982

ANCHORAGE, ALASKA  99501

| | | |
|---|---|---|
| 1 | Q | Is it required to have a person in detention, it is |
| 2 | | required to keep them in handcuffs, is that a policy -- |
| 3 | | municipal policy? |
| 4 | A | No, it's my decision.  She still could have been the |
| 5 | | bank robber. |
| 6 | Q | During the time that she was handcuffed, do you recall |
| 7 | | if Ms. Mitchell asked if she could make a telephone |
| 8 | | call? |
| 9 | A | I don't remember. |
| 10 | Q | Do you recall if she said she was concerned about her |
| 11 | | son? |
| 12 | A | I believe she did. |
| 13 | Q | Was that concern for her son directed at you or at |
| 14 | | another officer? |
| 15 | A | I don't remember who it was directed at. |
| 16 | Q | And what sort of statements did she make regarding her |
| 17 | | son? |
| 18 | A | I don't remember the exact statements. |
| 19 | Q | Did you give her any assurances as to her son's safety? |
| 20 | A | I don't remember. |
| 21 | Q | Do you recall news camera at any time arrived there on |
| 22 | | the scene where Ms. Mitchell was? |
| 23 | A | I believe the news media eventually showed up at the |
| 24 | | mall.  I wasn't paying attention to what they were |
| 25 | | doing. |

1  Q    Do you have an estimate of how long it took for the
2       bank teller to arrive at the scene to do a show up?
3  A    I would estimate approximately 20 minutes.
4  Q    Twenty minutes. And during this 20 minutes was Ms.
5       Mitchell in handcuffs the whole time?
6  A    Yes.
7  Q    Was Ms. Mitchell in custody?
8  A    She was being detained.
9  Q    Do you -- do you know what custody is, the term custody
10      means? Is that a term that they use in the police
11      department?
12 A    Yes.
13 Q    Okay. What -- what does custody mean?
14 A    My view of custody is when someone is not free to
15      leave.
16 Q    Okay. So was she in custody?
17 A    Yes.
18 Q    During the time that Ms. Mitchell was detained did you
19      ask her any questions?
20 A    I asked her some basic questions regarding her
21      identity.
22 Q    Did you ask her if she committed the bank robbery?
23 A    No.
24 Q    During the time that she was detained did you believe
25      that you were making an investigatory stop?

1  A    Yes.
2  Q    And what was the purpose of that investigatory stop?
3  A    To determine if the individual that I stopped was the
4       suspect in the bank robbery.
5  Q    And if that was the purpose why is it that you didn't
6       ask her any questions about whether she had committed
7       robbery?
8  A    I'm not going to ask any questions about the crime
9       unless I read Miranda.
10 Q    Oh.
11 A    Conduct an interview with her.
12 Q    Okay.
13 A    That wasn't the purpose of this stop.
14 Q    Okay. The purpose was not to conduct an interview of
15      her?
16 A    That's correct. The purpose was to await a show up
17      with the witness.
18 Q    Okay. At the time that the witness arrived for the
19      show up how many officers do you believe were on the
20      scene at that time?
21 A    I'm not sure exactly how many.
22 Q    More than just you and.....
23 A    Yes.
24 Q    .....Officer Voss? Can you explain the loc- -- the
25      geography of where Ms. Mitchell was held during these

|   |   |   |
|---|---|---|
| 1 |   | scenarios were possible. They've happened in other |
| 2 |   | cases in the past. It's possible it could happen in |
| 3 |   | this one. I..... |
| 4 | Q | Okay. I'm asking..... |
| 5 | A | ....don't know what Ms. Mitchell's capable of. |
| 6 |   | I've..... |
| 7 | Q | Okay. |
| 8 | A | .....never met her. |
| 9 | Q | Okay. But I'm asking whether or not you believe that |
| 10 |   | she would use her son as a hostage? Not whether it was |
| 11 |   | possible, I'm asking whether you had a realistic fear |
| 12 |   | that she was going to use her son as a hostage in this |
| 13 |   | situation? |
| 14 |   | MS. JOHNSON: Objection, relevance, |
| 15 | speculation, and foundation. And the witness has already |
| 16 | testified that his fears are not -- it's his procedures that |
| 17 | he's telling you..... |
| 18 |   | MR. I. ZOREA: Okay. |
| 19 |   | MS. JOHNSON: .....and the practicality. |
| 20 |   | MR. I. ZOREA: Just so -- you -- you keep on |
| 21 | objecting to relevance. Relevance has -- his credibility has |
| 22 | everything to do with relevance. Her emotional distress has |
| 23 | everything to do with -- with -- that's all relevant. And so, |
| 24 | you know, you can object but I'm asking him a question and I |
| 25 | expect him to answer, okay. So you can object for the record |

|    |   |   |
|----|---|---|
| 1  |   | and that's fine.  Go..... |
| 2  |   | MS. JOHNSON:  Done so. |
| 3  |   | MR. I. ZOREA:  .....right ahead. |
| 4  | Q | (By Mr. I. Zorea)  I'm asking you what was in your |
| 5  |   | brain..... |
| 6  | A | As I mentioned before I -- I wasn't -- I wasn't in |
| 7  |   | fear. |
| 8  | Q | You weren't in fear? |
| 9  | A | No (ph). |
| 10 | Q | You weren't in fear that she was going to use..... |
| 11 | A | I wasn't --..... |
| 12 | Q | .....her son as a hostage? |
| 13 | A | I wasn't personally in fear, no. |
| 14 | Q | Okay.  Were you in fear -- 'cause you mentioned these |
| 15 |   | things on -- on her cross and I -- I want to clarify. |
| 16 | A | Uh-hum. |
| 17 | Q | Were you in fear that she was going to take a citizen |
| 18 |   | from the mall and use that citizen as a hostage if you |
| 19 |   | had released her from her handcuffs? |
| 20 |   | MS. JOHNSON:  Same objections. |
| 21 | A | I was not in fear. |
| 22 | Q | Okay.  Again, were you in fear she was going to |
| 23 |   | approach a vehicle, let's say, on Benson or on New |
| 24 |   | Seward and subdue whoever was in that vehicle and take |
| 25 |   | off from..... |

71

1            MS. JOHNSON: Same.....

2 Q   .....the scene?

3            MS. JOHNSON: Same objection.

4 A   I was not in fear.

5 Q   (By Mr. I. Zorea) Okay. Thank you. Again, specifically, I'm asking specifically what was in your head regarding movement of Ms. Mitchell? Where did you think an arrest would occur if you had moved -- was there a certain specific geographical distance from you apprehended her or where you put her in detention that you think if you had moved her beyond that that an arrest would have occurred?

13 A   No.

14 Q   Okay. That wasn't really a concern of yours where you moved her?

16            MS. JOHNSON: Objection, misstates the testimony.

18 Q   Well, I'm asking you was that an c- -- an actual concern that if you had moved her a certain distance then she would be arrested rather than just detained?

21 A   I've reviewed case law where that's happened in previous situations. And I chose not to move her.

23 Q   Okay. So, again, we're -- we want specific. When you chose -- when you made the decision not to move her very far from where you handcuffed her, is that