# EXHIBIT B

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF ALASKA

 3  CAROLYN MITCHELL,                )
                                     )
 4              Plaintiff,           )
                                     )
 5       vs.                         )
                                     )
 6  ANCHORAGE POLICE DEPARTMENT and  )
    the MUNICIPALITY OF ANCHORAGE, a )
 7  municipal corporation, WALTER    )
    MONEGAN, OFFICER HENIKMAN, and   )
 8  OFFICER J. VOSS,                 )
                                     )
 9              Defendants.          )
    _____)
10  Case No. A05-273 CV (JWS)

11         VIDEOTAPE DEPOSITION OF OFFICER JUSTIN C. VOSS

12  APPEARANCES:

13        FOR THE PLAINTIFF:      MR. MOSHE CALBERG ZOREA
                                  MR. ISAAC D. ZOREA
14                                Attorney at Law
                                  7540 East 17th Avenue
15                                Anchorage, Alaska  99504
                                  (907) 337-7741
16
          FOR THE DEFENDANTS:     MS. JOYCE WEAVER JOHNSON
17                                Assistant Municipal Attorney
                                  632 West 6th Avenue, Suite 730
18                                Anchorage, Alaska  99501
                                  (907) 343-4545
19
          ALSO PRESENT:           MS. CAROLYN MITCHELL
20
                           * * * * * *
21

22

23

24

25
```

Exhibit B – Page 1

R & R COURT REPORTERS

811 G STREET
(907) 277-0572/Fax 274-8982

ANCHORAGE, ALASKA  99501

```
 1  A        Um-hum.
 2  Q        .....taught you that under those circumstances you take
 3           the person into custody?
 4  A        Correct.
 5  Q        Okay.  Did they indicate to you that there was any
 6           criteria other than what you've testified to that was
 7           needed in order to take somebody into custody?
 8                    MS. JOHNSON:  Objection, foundation.
 9  Mischaracterizes the testimony.
10  Q        Okay.  Is there anything else that you were trained
11           that was necessary in order to take someone into
12           custody?
13  A        I'm not sure if I understand the question.
14  Q        Well, you've testified as to what preceded her being
15           taken into custody and I'm asking whether that was --
16           what you testified was done was all that was needed in
17           order to take somebody into custody?
18  A        I -- well, there's reasonable suspicion and I -- I've
19           seen the levels of evidence describe those kind of
20           straight line continuum where a preponderance of the
21           evidence is 51 percent.  Proof beyond a reasonable
22           doubt is way up here like 95 percent maybe, or
23           something to that effect.  And reasonable suspicion is
24           down here.  And I think what you're asking is did the
25           three things that I saw add up to that, or could there
```

Exhibit B – Page 2

| | | |
|---|---|---|
| 1 | Q | Did they say watch out for mother and child leaving the |
| 2 | | store? |
| 3 | A | The locate that was there had nothing to do -- didn't |
| 4 | | mention anything about a child or if the suspect was a |
| 5 | | mother. |
| 6 | Q | Okay. But this suspect, Ms. Mitchell, had a child? |
| 7 | A | Correct. |
| 8 | Q | So what did that do to the reasonable suspicion index? |
| 9 | | MS. JOHNSON: Objection, form. |
| 10 | A | I don't think it effected it at all. |
| 11 | Q | Okay. All right. So what happened? There you are. |
| 12 | | You're assisting Officer Henikman, I understand. And |
| 13 | | there is a young man there who you believe is -- or you |
| 14 | | agree is the son of Ms. Mitchell. What did you do? |
| 15 | | What did you do with the young man? |
| 16 | A | I -- I can't recall specifically. |
| 17 | Q | Did Ms. Mitchell make any acts that appeared to be |
| 18 | | threatening in any way? |
| 19 | A | At what point? |
| 20 | Q | Any point? |
| 21 | A | I don't recall that she did, no. |
| 22 | Q | Well, my understanding is that she comes out, the other |
| 23 | | people are dispersed away. Did that leave two people |
| 24 | | that were there left to deal with, Ms. Mitchell and her |
| 25 | | son? |

Exhibit B – Page 3

R & R  C O U R T   R E P O R T E R S
811 G STREET
(907) 277-0572/Fax 274-8982
ANCHORAGE, ALASKA 99501

| | | |
|---|---|---|
| 1 | A | I believe so. |
| 2 | Q | And Ms. Mitchell had not made any threatening gestures? |
| 3 | A | No. |
| 4 | Q | Okay. So then what did you do, or what happened in |
| 5 | | your vision? What did you see happen? |
| 6 | A | After what point. We're going -- going back and forth. |
| 7 | | I'm just not sure what..... |
| 8 | Q | The people are -- the people are gone. |
| 9 | A | Um-hum. |
| 10 | Q | The only people there are Ms. Mitchell and her son. |
| 11 | | Well, then what happened? |
| 12 | A | After she -- are you asking after she was taken into |
| 13 | | custody or..... |
| 14 | Q | Well, no, no. Right --when they first came out, you |
| 15 | | spread those others away. |
| 16 | A | Um-hum. |
| 17 | Q | And there are left Ms. Mitchell and her son. So what |
| 18 | | actions did you or your cohort take at that point? |
| 19 | A | At that point Officer Henikman and I gave verbal |
| 20 | | commands to Ms. Mitchell. I don't recall specifically |
| 21 | | what they were but most likely they were to keep her |
| 22 | | hands up and face away from us. Maybe put down any |
| 23 | | objects that she had. And then we took her into |
| 24 | | custody by placing hand cuffs on her and..... |
| 25 | Q | Okay. So you've got it all kind of lumped together. |

| | | |
|---|---|---|
| 1 | | you deal with others as well. Correct me if I'm wrong. |
| 2 | A | I just -- I don't understand the question. You keep |
| 3 | | referring -- the questions are hypothetical in nature |
| 4 | | and then when I answer you you're telling me that it's |
| 5 | | specifically what happened to Ms. Mitchell. And I |
| 6 | | don't..... |
| 7 | Q | Well, what's your training? You testified reasonable |
| 8 | | suspicion, detain, take them into custody. Is that the |
| 9 | | chronology of events? |
| 10 | | MS. JOHNSON: Objection, misstates the |
| 11 | | testimony. Form. |
| 12 | Q | Is that the chronology of events that you have just |
| 13 | | testified to today? |
| 14 | A | I don't..... |
| 15 | Q | Okay. What is your -- you've already given us a |
| 16 | | definition of reasonable suspicion. So what happens |
| 17 | | after reasonable suspicion? |
| 18 | A | What I just described. She was detained by hand cuffs |
| 19 | | being placed on her. |
| 20 | Q | Okay. |
| 21 | A | We held her in custody and we -- for furtherance of the |
| 22 | | investigation for -- I don't remember exactly how long |
| 23 | | it was but in order that we could -- so that we could |
| 24 | | further the investigation by performing a show up. |
| 25 | Q | Okay. So that's what I was asking you. What you just |

Exhibit B – Page 5

R & R COURT REPORTERS
811 G STREET
(907) 277-0572/Fax 274-8982
ANCHORAGE, ALASKA 99501

1   testified to, that is what you were trained to believe
2   is correct, is that right?
3   A   Well, I.....
4   Q   Or were you doing something that you were not trained
5   to do?
6         MS. JOHNSON: Objection, foundation. Form and
7   argumentative.
8   Q   Okay. Were you trained to do what you just said the
9   chronology was, or were you just doing it for the heck
10  of it?
11  A   The events I just described.....
12  Q   Yes.
13  A   .....were consistent with my training.
14  Q   Okay. Thank you. That's what I was asking. Okay. So
15  a person is hand cuffed, and were you trained as to
16  what you do with a hand cuffed person?
17  A   Yes.
18  Q   Okay. What was the training that you received about
19  what you do with the hand cuffed person?
20  A   Again, are we talking hypothetically about anybody
21  that's hand cuffed or.....
22  Q   Well, we'll speak about Ms. Mitchell. What were you to
23  do with her?
24  A   I didn't continue the contact with Ms. Mitchell.
25  Officer Henikman did.

|    |   |                                                                          |
|----|---|--------------------------------------------------------------------------|
| 1  |   | was possible.                                                            |
| 2  | Q | And so big deal, right?                                                  |
| 3  |   | MS. JOHNSON:  Objection to.....                                          |
| 4  | Q | That's all right?                                                        |
| 5  |   | MS. JOHNSON:  .....form.                                                 |
| 6  | Q | Is that -- is that what you're saying, it's perfectly                    |
| 7  |   | fine to have her be isolated and hand cuffed in front                    |
| 8  |   | of the public when you have not had any probable cause                   |
| 9  |   | to arrest her?                                                           |
| 10 |   | MS. JOHNSON:  Same objection.                                            |
| 11 | A | I would say that procedurally speaking there is nothing                  |
| 12 |   | wrong with that.                                                         |
| 13 | Q | Nothing wrong with that. Okay.                                           |
| 14 | A | Procedurally speaking, no.                                               |
| 15 | Q | Okay. This is your training again?                                       |
| 16 | A | Correct.                                                                 |
| 17 | Q | Do you have any history, background, did you ever take                   |
| 18 |   | any courses in history?                                                  |
| 19 | A | I had some history in high school.                                       |
| 20 | Q | Remember in Nazi Germany that's what they used to do,                    |
| 21 |   | the same thing. And they thought it was fine.                            |
| 22 |   | Remember that training?                                                  |
| 23 |   | MS. JOHNSON:  Objection, form.                                           |
| 24 | A | No.                                                                      |
| 25 | Q | Just detain people, cuff them, put them out there for                    |