Isaac D. Zorea
Law Office of Isaac Derek Zorea
P.O. Box 210434
Anchorage, AK 99521
(907) 677-3779
(907) 644-2802 facsimile

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CAROLYN MITCHELL, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| ANCHORAGE POLICE DEPARTMENT and the | ) |
| MUNICIPALITY OF ANCHORAGE, a | ) |
| municipal corporation, WALTER MONEGAN, | ) |
| Officer HENIKMAN, and Officer J. VOSS, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Case No. A05-0273 CV (JWS)

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION
TO PARTIAL SUMMARY JUDGMENT**

In opposing plaintiff Carolyn Mitchell's request for partial summary judgment, the Municipality has unwittingly reenforced the legal truth that defendants unlawfully arrested Mitchell on May 8, 2004. The fatal flaw in the Municipality's opposition brief, is its inability to understand the viable legal theory Mitchell has advanced in her motion. Mitchell's motion for summary judgment argues that the police unlawfully arrested her on May 8, 2004. The Municipality, confusing Mitchell's argument, opposes her motion by citing to cases dealing with the right to a

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PARTIAL
SUMMARY JUDGMENT: <u>MITCHELL V. MOA, POLICE DEPARTMENT, ET AL.</u>   PAGE - 1 -

speedy trial.

By failing to correctly identify what claim Mitchell presents to this court, the Municipality's opposition brief fails. Mitchell agrees with the Municipality that no disputes exist as to material facts relevant to this case, although, apparently the Municipality does not quite understand what facts are material to Mitchell's viable legal theory. Given that the material facts are undisputed, and given that the Municipality has been unable to dispute her legal arguments, Mitchell requests that this court grant her motion for summary judgment on the issue of false arrest.

The justifications for Mitchell's request shall be elaborated upon below.

### REPLY TO THE MUNICIPALITY'S ARGUMENT

In crafting its opposition brief, the Municipality makes abundantly clear its misinterpretation of Mitchell's viable legal theory. In her motion for partial summary judgment, Mitchell argues that she became unlawfully arrested when Officers Voss and Henikman held her at gunpoint, handcuffed her, and detained her for thirty minutes without probable cause. At no time has Mitchell argued that Officers Voss or Henikman told her *verbally* that she had been placed under arrest on the date in question. Instead, Mitchell argues that the actions taken by Officers Voss and Henikman so closely resembled the actions taken when police arrest a suspect, that by their conduct these officers *constructively*, or as a matter of law, arrested her.

The Municipality claims that Mitchell failed to cite to any viable legal theory

in her motion, and that she has cited incorrect statutes concerning her claims.[1]  By so arguing, the Municipality indicates that it has not carefully reviewed Mitchell's motion.  In contrast to the Municipality's assertions to the contrary, the legal theory Mitchell has presented to this court is viable, sound, and well argued.  Her motion for summary judgment should be granted.

I. **MITCHELL CORRECTLY CITED ALASKA'S STATUTE ON MAKING AN ARREST, RATHER THAN THE STATUTE DEFINING AN ARREST.**

In its opposition brief, the Municipality advances the theory that Mitchell "mis-cites the statutory definition of 'arrest.'" Def.Mot., at 1.  In arguing that Mitchell ought to have cited to AS 12.25.160, the Municipality refers this court to the case of Greenawalt v. Municipality of Anchorage, 692 P.2d 983 (Alaska App. 1985).  Id., at 3.  In its brief analysis of Greenawalt, the Municipality correctly identified that the case related to when an "arrest" occurred, such as would trigger "his speedy trial rights." Id..

The Municipality failed to understand the significance of the issue presented in Greenawalt.  Issues related to a speedy trial, specifically as outlined in Criminal Rule 45, address concerns outlined in article I, section 11, of Alaska's Constitution.  The legal theory Mitchell presents to this court is premised on article I, section 14, of Alaska's Constitution.  The difference between these two sections in Alaska's

---

[1] Defendants' Opposition to Motion For Partial Summary Judgment, at 1 [Hereinafter: "Def.Mot., at ___."].

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PARTIAL
SUMMARY JUDGMENT: MITCHELL V. MOA, POLICE DEPARTMENT, ET AL.          PAGE - 3 -

Constitution is a significant difference — a difference that the Municipality seems to not fully understand.

In <u>Lindsay v. State of Alaska</u>, 698 P.2d 659 (1985), Alaska's Court of Appeals ably analyzed the differences between an "unlawful arrest" and a technical "arrest." The defendant in <u>Lindsay</u>, sought appellate review under two legal theories: suppression of evidence under article I, section 14, and failure to provide a speedy trial, under Criminal Rule 45. <u>Id.</u>, at 660. The two legal theories advanced in <u>Lindsay</u> provide a pertinent case study showing why the Municipality improperly cites to <u>Greenawalt</u> when Mitchell's case seeks redress for false arrest.

In <u>Lindsay</u>, state trooper investigated a theft involving furs, which they believed had been hidden on property owned by Peter Lindsay. <u>Id.</u>. The troopers, lacking probable cause to arrest Lindsay, had reliable information that he had the stolen furs on his property. <u>Id.</u>. The troopers located Lindsay, who was at a friend's house, and asked if he would accompany them to trooper headquarters (eights miles away) for questioning. <u>Id.</u>. The troopers did not handcuff Lindsay, and permitted him to ride to headquarters in the front seat of an unmarked police vehicle. <u>Id.</u>. When at headquarters, troopers questioned Lindsay, and asked if he would *consent* to a search of his property. <u>Id.</u>. Lindsay signed a consent to search form, and within twenty minutes made a confession that he knew where the stolen furs were located. Lindsay was advised of his Miranda rights, but not formally arrested until several weeks latter. <u>Id.</u>.

A critical issue in <u>Lindsay</u> centered around whether troopers arrested Lindsay

during the initial contact with him, or whether the initial contact was merely an investigative detention. Id., at 661. In holding that Lindsay "was unlawfully arrested," the court of appeals cited the Supreme Court decision Florida v. Royer, 460 U.S. 491 (1983). Id.. In Royer, the Supreme Court held that "Terry and its progeny . . . created only limited exceptions to the general rule that seizures of the person require probable cause to arrest. Detentions may be 'investigative' yet violate the Fourth Amendment absent probable cause." Lindsay, 698 P.2d, at 661, citing Royer, 460 U.S. at 499 (1983). The Lindsay court held that given the facts of the case, the troopers exceeded the limits of an investigative detention. Lindsay, 698 P.2d, at 662.

The Lindsay court held that state troopers unlawfully arrested Lindsay, even though the troopers did not verbally tell him that he had been placed under arrest. In rendering its holding, the Lindsay court did not reference AS 12.25.160, but rather focused its analysis on the troopers actions toward Lindsay. Id.. The court held that Lindsay had not voluntarily traveled to trooper headquarters, nor did he believe he was free to leave. Id.. Based on all the facts of the case, the court held that the 'duration and intrusiveness' of Lindsay's restrain exceeded that permissible in an investigatory detention. Id.. The court reasoned that because Lindsay's restrain exceeded the limits of an investigatory detention, he "was unlawfully arrested." Id..

The Lindsay court did reference AS 12.25.160, but only for the purposes of determining whether a violation occurred under Criminal Rule 45 (speedy trial). Id., at 663. The Lindsay court held that even though Lindsay had been unlawfully

arrested during his initial encounter with state trooper (February 20), he nonetheless had not been formally arrested until April. Id.. The court held that "[w]e believe that there are policy reasons for interpreting the word 'arrest' differently for fourth amendment purposes than for Criminal Rule 45 purposes." Id., at 662-3. The court continued stating: "[w]e believe that we should be more inclined to find an arrest when we are considering whether a person may have been illegally detained than we should when we are determining if there has been an arrest for Criminal Rule 45 purposes." Id., at 663.

The Lindsay court held that no violation under Criminal Rule 45 had occurred, even though an unlawful arrest had occurred weeks prior to the actual arrest. In a concurring opinion, one judge observed that to eliminate the confusion rendered by the Lindsay holding, the court should have simply held that Lindsay was "seized for fourth amendment purposes," and the "seizure was invalid." Id.. The concurring opinion states that "[i]n retrospect it would have been more accurate, and more in keeping with Supreme Court precedents, to say merely that all fourth amendment seizures must be supported by probable cause unless they qualify as custodial stops, and that an otherwise valid custodial stop may become invalid under the fourth amendment if it is unduly prolonged or involves unnecessary restraint." Id., at 663-4.

In its majority opinion, and its concurring opinion, the Lindsay court shows that the material facts concerning an arrest must be placed in the context of the legal theory presented. If Mitchell's motion argued a violation under Criminal Rule 45,

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PARTIAL
SUMMARY JUDGMENT: MITCHELL V. MOA, POLICE DEPARTMENT, ET AL.  PAGE - 6 -

then the Municipality would have properly identified AS 12.25.160 as the relevant statute.  Further, if Mitchell had argued a speedy trial cause of action, then the Municipality could argue, as relevant, the fact that she had not been charged, or jailed.  However, Mitchell's motion alleges an unlawful seizure, a violation of her rights under article I, section 14 of Alaska's Constitution.

Under the legal theory Mitchell advances, it is of little relevance that the Defendants did not jail her, or charge her with a crime.  The relevant facts are whether the police seized her "for fourth amendment purposes," and whether the "seizure was invalid."  As such, Mitchell's motion focused on how the Officers acted toward her, as proof that she had been arrested.  Mitchell referenced AS 12.25.050, instead of AS 12.25.160, because the former statute identifies what *conduct* by police will effectuate an arrest.  As the Lindsay court illustrates, in investigating fourth amendment violations it is the conduct of police that is more important than the formality employed by the police.  As such, Mitchell argues that AS 12.25.050 is the more apt statute for assessing whether an unlawful arrest has occurred.

## II.   IF MITCHELL WAS ARRESTED, HER ARREST WOULD BE UNLAWFUL.

The Municipality also argues, in its opposition brief, that even if Mitchell had been arrested, she would not have been arrested unlawfully. Def.Mot., at 4.  Without fully explaining its position, the Municipality argues that Officers Voss and Henikman had legal authority to arrest Mitchell. Id., at 5.  The Municipality citing to Waskey v. Municipality of Anchorage, 909 P.2d 342 (Alaska 1996), argues that

"[w]here there is a duty to detain, there is 'appropriate legal authority,' and there can be no cause of action for false imprisonment." Id., at 6. Mitchell argues that the Municipality's argument is utterly without merit.

In Waskey v. Municipality of Anchorage, 909 P.2d 342 (Alaska 1996), Alaska's Supreme Court analyzed facts completely different than those advanced by Mitchell's case. In Waskey, police officers relying on a facially valid warrant, arrested the wrong person. In Mitchell's case, Officers Voss and Henikman did not have a facially valid warrant to arrest anyone. Further, Officers Voss and Henikman admitted that they had no probable cause to arrest Mitchell.[2] As such, it is impossible for the Municipality to argue that Mitchell, if arrested, was arrested with proper legal authority.[3] The Municipality has cited no case holding that police may arrest a suspect without a warrant, and without probable cause.

It is well established that an arrest must be based on probable cause. In Waskey, the police relied on probable cause to obtain a valid warrant. The police used the valid warrant to effectuate an arrest. By arresting the wrong person, the police made a mistake, that the Supreme Court held to be innocuous. The facts of Waskey are not at all similar to the facts Mitchell has laid out for the court, and to

---

[2] Exhibit A, Officer Ross Henikman's Response to Plaintiff's Request for Admissions, at 2 (req # 4) [Hereinafter: "Ex. A, at __."]; Exhibit B, Officer Justin Voss's Responses to Plaintiff's Request for Admissions, at 2-3 (req # 4) [Hereinafter: "Ex. B, at __."].

[3] See: Coleman v. State of Alaska, 553 P.2d 40, 45 (Alaska 1976): "Alaska does not have a statute authorizing the police to forcibly stop a citizen on less than probable cause to arrest."

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PARTIAL
SUMMARY JUDGMENT: MITCHELL V. MOA, POLICE DEPARTMENT, ET AL.    PAGE - 8 -

which the Municipality has agreed. Def.Mot., at 2. Officers Voss and Henikman have never argued that they made a mistake by arresting Mitchell, rather they have argued simply that they never arrested her. Ex. A, at 2 (req # 4); Ex. B, at 2-3.

This court should not be confused by the Municipality's manipulation of <u>Waskey</u>. If the Municipality admits that Mitchell was arrested, it must admit that the arrest, occurring without probable cause, was unlawful. To quote the concurring opinion in <u>Lindsay</u>: "all fourth amendment seizures must be supported by probable cause unless they qualify as custodial stops, and that an otherwise valid custodial stop may become invalid under the fourth amendment if it is unduly prolonged or involves unnecessary restraint." <u>Lindsay</u>, at 663-4. The rule given by the <u>Lindsay</u> concurrence contradicts the Municipality's argument that "[w]here there is a duty to detain, there is 'appropriate legal authority,' and there can be no cause of action for false imprisonment. . . ." Def.Mot., at 6. Mitchell argues that proper legal authority must be based on probable cause.

### III.   M<small>ITCHELL</small> S<small>UMMARY</small> J<small>UDGMENT</small> I<small>S</small> B<small>ASED</small> O<small>N</small> A V<small>IABLE</small> L<small>EGAL</small> T<small>HEORY</small>.

The Municipality also opposes Mitchell's summary judgment by arguing that her motion "has no 'viable legal theory.'" Def.Mot., at 6. On the issue of whether Mitchell has presented a viable legal theory in her motion for summary judgment, she will allow this court to assess for itself the validity of the Municipality's argument. The Municipality fails to identify why Mitchell's fifteen page argument section fails to present a viable legal theory. Needless to say, Mitchell reasserts her

position that she believes Officers Voss and Henikman unlawfully restrained, or arrested, her on May 8, 2004. Her argument section within the initial motion will stand or fall on its own merits.

**IV.    MITCHELL RIGHTFULLY USED DESCRIPTIVE LANGUAGE IN HER MOTION.**

The Municipality has also argued that Mitchell has relied on "dramatic and emotional language," and "immaterial facts," in presenting her motion for summary judgment. Def.Mot., at 7. As with the Municipality's other objections to Mitchell's motion, its argument concerning emotional language is misplaced. In presenting the facts associated with what Mitchell suffered on May 8, 2004, she is not required to mute the harsh realities concerning what she experienced.

The Municipality acknowledges that "her detention was distressful for Plaintiff," and yet it also argues that terror she experienced ought to be ignored by this court. Id.. One of the issues relevant in fourth amendment violations is whether the seizure by police was unreasonable. Coleman v. State, 553 P.2d, at 46-7. It is very relevant that Officers Voss and Henikman acted in a "deplorable" manner toward Mitchell, as this related to whether the conduct was reasonable given the totality of the circumstances.

The Terry stop exception, permitting a stop and frisk, is permitted because it is less traumatic to the citizen than would be a full blown arrest. Howard v. State, 664 P.2d 603, 610 (Alaska App. 1983). It is important that the court realizes that Mitchell suffered, at the hands of Officers Voss and Henikman, fear, humiliation and

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PARTIAL
SUMMARY JUDGMENT: MITCHELL V. MOA, POLICE DEPARTMENT, ET AL.          PAGE - 10 -

distress without probable cause. These facts help illustrate the fact that these officers acted unreasonably in their conduct toward Mitchell. This unreasonable conduct violated her rights, and amounted to unlawful seizure, and unlawful arrest.

## CONCLUSION

In all aspects, the Municipality's opposition brief fails to show that Mitchell's motion for partial summary judgment should fail. To defeat summary judgment, the Municipality must either prove a dispute as to material fact, or show that judgment as a matter of law is inappropriate. The Municipality fails on both of its objective.

Summary judgment should be granted to Mitchell on the issue of false arrest.

Respectfully submitted this 29th day of May 2007.

    S/  Isaac Zorea
Law Offices of Isaac D Zorea
P.O. Box 210434
Anchorage, AK 99521
907-830-1385
907-677-3779
Eyedz@gci.net

<u>Certificate of Service</u>

I hereby certify that on May 29, 2007 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification to the following:

 Joyce Weaver Johnson

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

 none.

Dated this 29th day of May, 2007, at Anchorage, Alaska.

S/ Isaac Zorea
 Law Offices of Isaac D Zorea
 P.O. Box 210434
 Anchorage, AK 99521
 907-830-1385
 907-677-3779
 Eyedz@gci.net