UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| CAROLYN MITCHELL, ) | |
| ) | |
| Plaintiff, ) | 3:05-cv-00273 JWS |
| ) | |
| vs. ) | ORDER AND OPINION |
| ) | |
| ANCHORAGE POLICE ) | [Re: Motions at Dockets 50 and 53] |
| DEPARTMENT and MUNICIPALITY ) | |
| OF ANCHORAGE, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I. MOTIONS PRESENTED

At docket 50, defendants Municipality of Anchorage, Anchorage Police Department, former police chief Walt Monegan, and Officers Henikman and Voss (collectively "defendants") move for summary judgment dismissing all of plaintiff's claims pursuant to Federal Rule of Civil Procedure 56©. At docket 62, plaintiff Carolyn Mitchell opposes the motion. Defendants reply at docket 71. At docket 53, plaintiff moves for summary judgment on her false arrest claim against defendants Henikman and Voss. At docket 61, defendants oppose the motion. Plaintiff replies at docket 66. Oral argument was not requested, and it would not assist the court.

## II. BACKGROUND

On May 8, 2004, at about 3:15 p.m., Carolyn Mitchell and her twelve-year-old son DeMarcus were shopping at Sears, located in the Sears Mall in Anchorage, Alaska. When attempting to leave the store, Ms. Mitchell, DeMarcus, and other store patrons

were directed by Anchorage police officers to leave the Sears Mall through the Benson Boulevard exit. Outside the Mall, Ms. Mitchell observed two officers, later identified as Officers Voss and Henikman, who stood with their weapons pointed towards her. One of the officers directed everyone to disperse "except the African American female," referring to Ms. Mitchell. Shortly thereafter, the officer ordered DeMarcus to move away from his mother. Ms. Mitchell asked the police officers if her son could use her cell phone to call his father. The officers denied her request.

Officer Henikman, who was holding a Remington 870 shotgun, commanded Ms. Mitchell to drop her shopping bags and raise her hands in the air, which she did. Officer Henikman asked Ms. Mitchell if she had any deadly weapons. Ms. Mitchell responded that she did not. Officer Henikman ordered Ms. Mitchell to turn around and walk backwards towards the sound of his voice. Ms. Mitchell complied. When Ms. Mitchell reached Officer Henikman, he patted her down and handcuffed her. Mitchell asked why she was being handcuffed. Officer Henikman responded that she would find out later. Officer Voss kept his shotgun pointed at Ms. Mitchell while Henikman took her into custody.

Officer Henikman then took Ms. Mitchell to the rear of a police car and emptied the contents of her handbag on the police car's trunk. The officer found Ms. Mitchell's military identification card, but did not find any weapons. After Officer Henikman's search failed to produce any weapons, Ms. Mitchell requested him to remove the handcuffs because they were hurting her wrists. Officer Voss told Henikman to leave them on. While she was in custody, Ms. Mitchell expressed concern that the officers were scaring her son and asked the officers what was happening, but the officers did not explain why she was being held.

Unbeknownst to Ms. Mitchell, Officers Henikman and Voss had responded to a police dispatch broadcast at about 3:30 p.m., reporting an armed robbery at the Wells Fargo Bank located in the Sears Mall. The police dispatch described the robbery suspect as a heavy set black female, about five feet nine inches tall, carrying a bag, and wearing a dark blue t-shirt, a black headband or bandana, and dark sunglasses. Ms. Mitchell, who is an African American female, is five feet four inches tall, and was

wearing a white jogging suit with a blue shirt underneath at the time police took her into custody.

Officers Henikman and Voss required Ms. Mitchell to stand handcuffed at the rear of a police vehicle in full view of passing pedestrians and traffic on Benson Boulevard for about thirty minutes. During the time she was in custody, several people recognized Ms. Mitchell, an independent business person who runs a beauty shop. KTUU-News also video-taped her while she was in custody outside the Sears Mall.

After about thirty minutes, a police vehicle passed in front of Ms. Mitchell. A teller from Wells Fargo Bank, who was in the police vehicle, told the police that Ms.Mitchell was not the person who had attempted to rob the Wells Fargo Bank, after which the police officers removed the handcuffs from Ms. Mitchell and released her. That evening, Ms. Mitchell viewed footage of herself in police custody on KTUU Channel 2 news, which ran a story about the bank robbery.

On October 21, 2005, Ms. Mitchell filed a complaint in the Superior Court for the State of Alaska, Third Judicial District at Anchorage, which was timely removed to federal court. On March 21, 2006, Ms. Mitchell filed an amended complaint against the Municipality of Anchorage, Anchorage Police Department, Walter Monegan, and Officers Henikman and Voss, alleging claims of false arrest, defamation/slander per se, intentional infliction of emotional distress, and violation of her rights under the Fourth Amendment pursuant to 42 U.S.C. § 1983. The court has original jurisdiction over plaintiff's claim under 42 U.S.C. § 1983, and supplemental jurisdiction over plaintiff's state law claims.

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56© provides that summary judgment should be granted when there is no genuine dispute about material facts and when the moving party is entitled to judgment as a matter of law. The moving party has the burden to show that material facts are not genuinely disputed.[1] To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but

---

[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

-3-

need not produce evidence negating that claim.[2] Once the moving party meets its burden, the nonmoving party must demonstrate that a genuine issue exists by presenting evidence indicating that certain facts are so disputed that a fact-finder must resolve the dispute at trial.[3] The court must view this evidence in the light most favorable to the nonmoving party, must not assess its credibility, and must draw all justifiable inferences from it in favor of the nonmoving party.[4]

## IV. DISCUSSION

Defendants move for summary judgment dismissing all of plaintiff's claims. Plaintiff cross-moves for summary judgment on her false arrest claim. The court considers each of plaintiff's claims below.

**Claim under 42 U.S.C. § 1983**

To establish a claim under Section 1983, plaintiff must demonstrate that the defendants "(1) were acting under color of state law and (2) deprived [plaintiff] of a right, privilege, or immunity secured by the Constitution or laws of the United States."[5] In her Section 1983 claim, plaintiff alleges that defendants Municipality of Anchorage, Monegan, Henikman, and Voss, "acting in their official capacities and under color of state law," arrested plaintiff without probable cause, thereby violating her Fourth Amendment right to be free from unreasonable search and seizure.[6] Plaintiff's complaint further alleges that "the official policy of the Anchorage Police Department, which permits citizens of Anchorage, Alaska, to become handcuffed and arrested, without warrant, and without verified, probable cause, as occurred to plaintiff on May 8, 2004, violates the protections provided under the 4th Amendment."[7]

---

[2]*Id.* at 325.

[3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[4]*Id.* at 255; *Soldano v. United States*, 453 F.3d 1140, 1143 (9th Cir. 2006) (citation omitted).

[5]*Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir. 2003).

[6]Doc. 25 at 8.

[7]Doc. 25 at 9.

Defendants argue that plaintiff's claim under 42 U.S.C. § 1983 fails because "Ms. Mitchell's Fourth Amendment rights were not violated."[8]  Contrary to plaintiff's assertion, defendants argue that plaintiff's "brief detention did not amount to an arrest"; rather, defendants Henikman and Voss merely conducted a *Terry* stop supported by reasonable suspicion.  Defendants "reserve the right to move for qualified immunity, if any Constitutional violation is found."[9]

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."[10]  The Fourth Amendment "requires that [] arresting officers have probable cause to justify their actions."[11]  In *Terry v. Ohio*,[12] the Supreme Court created a limited exception to the general rule that police detentions require probable cause.[13]  "Under *Terry* and its progeny, the Fourth Amendment allows police to conduct a brief investigatory search or seizure, so long as they have a reasonable, articulable suspicion that justifies their actions."[14]

It is undisputed that plaintiff's detention by defendants Voss and Henikman constituted a seizure for Fourth Amendment purposes, "as a reasonable person in [plaintiff's] situation would not have felt free 'to disregard the police and go about [her] business.'"[15]  At issue is whether plaintiff's detention ripened into an arrest.  "There is no

---

[8]Doc. 50 at 6.

[9]Doc. 50 at 2.

[10]*United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)).

[11]*Gallegos v. City of Los Angeles*, 308 F.3d 987, 990 (9th Cir. 2002).

[12]392, U.S. 1 (1968).

[13]*Gallegos*, 308 F.3d at 990 (citing *Florida v. Royer*, 460 U.S. 491, 498 (1983)).

[14]*Id.* (citing Illinois v. Wardlow, 528 U.S. 119, 123 (2000).

[15]*Id.* (quoting *California v. Hodari*, 499 U.S. 621, 628 (1991)).

bright-line rule to determine when an investigatory stop becomes an arrest."[16]  Rather, in determining whether a stop has turned into an arrest, courts consider the "totality of the circumstances," including "the intrusiveness of the stop, i.e., the aggressiveness of the police methods and how much the plaintiff's liberty was restricted, and the justification for the use of such tactics, i.e., whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken."[17]  In short, the court must evaluate "not only how intrusive the stop was, but also whether the methods used were reasonable *given the specific circumstances*."[18]  Here, whether the court deems plaintiff's detention a *Terry* stop or an arrest is of import because defendants have conceded that defendants Henikman and Voss did not have probable cause to arrest plaintiff.

In determining the severity of the intrusion and the aggressiveness of the police action, the Ninth Circuit has ruled that "handcuffing substantially aggravates the intrusiveness of an otherwise routine investigatory stop" and that "if the police draw their guns it greatly increases the seriousness of the stop."[19]  In addition, "whether the police physically restrict the suspect's liberty is an important factor in analyzing the degree of intrusion effected by the stop."[20]  The Ninth Circuit has allowed the use of especially intrusive means of effecting a stop only in special circumstances, such as,

> 1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; 2) where the police have information that the suspect is currently armed;
> 3) where the stop follows a violent crime; and 4) where the police

---

[16]*Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996).

[17]*Id.* (quoting *United States v. Del Vizo*, 918 F.2d 821, 824 (9th Cir. 1990) (citation omitted)).

[18]*Id.* (emphasis in original).

[19]*Washington*, 98 F.3d at 1188.

[20]*Id.* at 1189.

-6-

>have information that a crime that may involve violence is about to occur.[21]

In the instant case, it is undisputed that the police handcuffed plaintiff. Plaintiff has also presented evidence that she was fully compliant with the police officers and that the police officers drew and pointed their guns at plaintiff, refused to remove her handcuffs even after determining that she was unarmed, did not fear for their own safety, and held plaintiff for about thirty minutes. The evidence on record also shows that the only real physical similarity between plaintiff and the robbery suspect was the color of their skin.

Viewing the evidence in the light most favorable to plaintiff, the court concludes plaintiff has raised material questions of fact as to whether her detention amounted to an arrest. Consequently, defendants are not entitled to summary judgment on plaintiff's Section 1983 claim.

**False Arrest Claim**

Under Alaska law, "[t]he elements of the false arrest-imprisonment tort are (1) a restraint upon the plaintiff's freedom, (2) without proper legal authority."[22] Plaintiff's false arrest claim alleges in pertinent part that "[w]hile multiple police officers ...continue[d] to point their weapons at plaintiff...defendant officer Henikman did forcibly take plaintiff's hands behind her back and apply handcuffs to her, thereby placing her completely in his custody, and effectuating an arrest, per AS 12.25.050."[23] Plaintiff's complaint further alleges that Officers Henikman and Voss kept plaintiff in custody for over thirty minutes and that they detained plaintiff "wrongfully, illegally, and without reason, just cause, warrant, judicial order, or other authority of law."[24]

Defendants move for summary judgment dismissing plaintiff's false arrest claim on the grounds that defendants had proper legal authority to detain plaintiff. While

---

[21]*Id.*

[22]*Waskey v. Municipality of Anchorage*, 909 P.2d 342, 345 (Alaska1996).

[23]Doc. 25 at 5.

[24]Doc. 25 at 6.

-7-

maintaining that plaintiff's detention did not amount to an arrest, defendants acknowledge that the detention was "nonetheless a restraint upon plaintiff's freedom" for purposes of plaintiff's false arrest claim.[25] Defendants argue that plaintiff's false arrest claim still fails because "[t]he officers had reasonable cause to believe that Ms. Mitchell had committed the felony of bank robbery that had recently occurred at the Sears Mall" and thus had reasonable cause to arrest plaintiff under AS 12.25.030(a)(3).[26] Under AS 12.25.030(a)(3), a peace officer without a warrant may arrest a person "when a felony has in fact been committed, and the person making the arrest has reasonable cause for believing the person to have committed it." "In order to effect a lawful arrest without a warrant under AS 12.25.030(3), it is not necessary that at the time the arrest is made the peace officer have sufficient evidence for conviction."[27] Rather, "under AS 12.25.030(3) a peace officer, without a warrant, may arrest a person for a felony when the officer has probable cause to believe that a felony has been committed and probable cause to believe that the person committed it."[28] "In order to establish probable cause, there must exist facts and circumstances known to the officer which would warrant a prudent person in believing that an offense has been or is being committed."[29]

Here, Officers Voss and Henikman have conceded that they did not have probable cause to arrest plaintiff.[30] Moreover, the facts and circumstances known to the officers at the time would not warrant a prudent person in believing that plaintiff committed the robbery at the Wells Fargo Bank. For the above reasons, defendants

---

[25]Doc. 50 at 13.

[26]Doc. 50 at 14-16.

[27]*McCoy v. State*, 491 P.2d 127, 130 (Alaska 1971).

[28]*Id.*

[29]*City of Nome v. Ailak*, 570 P.2d 162, 170 (Alaska 1977).

[30]Doc. 53, exh. E at 2, exh. F at 2-3.

have failed to establish that they are entitled to judgment as a matter of law on plaintiff's false arrest claim.

In her motion for partial summary judgment, plaintiff argues that she is entitled to judgment as a matter of law on her false arrest claim. Plaintiff first states that Alaska Courts have set out the elements of false arrest claim as 1) a restraint upon plaintiff's freedom 2) without proper legal authority. Plaintiff then suggests if she "proves that she was handcuffed, she will have proven that she was actually re[s]trained, and thereby arrested" pursuant to AS 12.25.050, which provides that "[a]n arrest is made by the actual restraint of a person or by a person's submission to the custody of the person making the arrest."[31] Plaintiff argues that if the court applies the legal analysis the Alaska Supreme Court applied in *City of Nome v. Ailak*,[32] she "clearly is entitled to summary judgment on the issue of false arrest."[33] In *City of Nome v. Ailak*, the Alaska Supreme Court concluded that "there was sufficient evidence from which the jury could have properly found that Ailak was put under 'actual restraint' within the meaning of AS 12.25.050 and that he was in fact arrested" based on evidence that the police placed Ailak in the back of a police vehicle which had no handles on the inside of the back doors and that Ailak did not enter the vehicle voluntarily.[34]

In her reply brief, however, plaintiff contends that her motion for partial summary judgment is premised on the legal theory of "an unlawful seizure, a violation of her rights under article I section 14 of Alaska's Constitution."[35] Plaintiff further argues that under her legal theory, "[t]he relevant facts are whether the police seized her 'for fourth amendment purposes,' and whether the 'seizure was valid.'"[36]

---

[31] Doc. 53 at 9.

[32] 570 P.2d 162 (Alaska 1977).

[33] Doc. 53 at 11.

[34] *City of Nome*, 570 P.2d at 169.

[35] Doc. 66 at 3, 7.

[36] Doc. 66 at 7.

Based on plaintiff's briefing, it is unclear to the court whether plaintiff is attempting to pursue a state law false arrest claim or whether plaintiff is attempting to pursue an unlawful seizure claim under the Alaska Constitution. Because it is unclear which claim plaintiff is pursuing, the court cannot determine whether plaintiff is entitled to judgment as a matter of law on her claim.

**Defamation/Slander Per Se Claim**

Under Alaska law, "[t]he elements of defamation are '(1) a false and defamatory statement; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) the existence of either 'per se' action ability or special harm."[37] Plaintiff's defamation/slander per se claim alleges that defendants published "the false communication that plaintiff had committed an illegal act" by handcuffing and arresting plaintiff in full view of the public and her twelve-year-old son. Plaintiff's claim further alleges that defendants' false and defamatory publication "had a natural tendency to injure Mrs. Mitchell's reputation in her community, and adversely impact her ability to earn a living" and "conveyed information concerning plaintiff that defendants should have known, were false, and/or misleading."[38]

Defendants argue that plaintiff's defamation claim must fail "because a defamatory statement was not made, the officers did not negligently publish a false and defamatory statement, and neither 'per se' actionability nor 'special harm' exists."[39] As to the first element of plaintiff's defamation claim, defendants argue that "the officers did not affirmatively state that Ms. Mitchell was a bank robber."[40] In *Alaska Statebank v. Fairco*, the Alaska Supreme Court recognized that conduct, unaccompanied by words, can sustain a suit for defamation.[41] Here, the evidence shows that defendants

---

[37] *MacDonald v. Riggs*, 166 P.3d 12, 15 (Alaska 2007).

[38] Doc. 25 at 7.

[39] Doc. 50 at 16.

[40] Doc. 50 at 17.

[41] 674 P.2d 288, 294-95 (Alaska 1983).

-10-

handcuffed and searched plaintiff, held her with guns drawn, and detained her in public. Plaintiff argues that defendants' conduct in doing so clearly suggested that she committed, or was suspected of committing, criminal acts.  "A statement 'is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'"[42]  Plaintiff has raised genuine issues of material fact as to whether defendants' conduct that plaintiff committed the crime of bank robbery was defamatory under this definition. Similarly, a reasonable jury could find that defendants "published" a false and defamatory statement about plaintiff based on evidence that: defendants made plaintiff stand handcuffed facing a busy street: plaintiff recognized some people who passed by; and, a news station took and published footage of plaintiff standing in police custody,.

      Defendants next argue that Henikman and Voss did not act negligently because "[a] reasonable person in the same circumstances - a police officer encountering a person matching the physical description of a bank robbery suspect in the vicinity of the scene of the crime - would have done as Officers Henikman and Voss did in stopping the suspect to investigate her involvement in the crime."[43]  Plaintiff argues that "[t]he fact that Officer Henikman handcuffed, and detained Mitchell, without probable cause establishes that his conduct was either negligent or reckless."[44]  In addition, plaintiff presents evidence showing that neither defendant Henikman nor Voss believed that they had probable cause to arrest, feared for their own safety, or attempted to question plaintiff about her potential involvement in the bank robbery, as well as evidence showing that the only real physical similarity between plaintiff and the description of the bank suspect was the color of their skin.  Viewing the evidence in the light most favorable to plaintiff, plaintiff has raised genuine issues of fact as to the element of "fault amounting at least to negligence on the part of the publisher."

---

[42] *MacDonald*, 166 P.3d at 16.

[43] Doc. 50 at 19.

[44] Doc. 62 at 22.

-11-

As to the final element, defendants argue that plaintiff cannot establish the existence of either "per se" action ability or special harm. Under Alaska case law, "[f]or a publication to be libelous per se the words used must be so unambiguous as to be reasonably susceptible of only one interpretation - that is, one which has a natural tendency to injure another's reputation."[45] If the publication "is capable of two interpretations, one of which would be defamatory and the other not, then it is for the jury to determine which meaning would be given the words by those who read them."[46] "The general rule is that a plaintiff need not allege or prove (special) damages resulting from publication of a statement that is libelous per se whereas evidence of specific harm suffered must be adduced if the statement is not defamatory on its face."[47]

The Alaska Supreme Court has recognized that "statements injurious to plaintiff's business reputation are defamatory per se," and that where "the words spoken by the defendant were such as to either impute a crime to the plaintiff or affects his credit and financial reputation by imputing financial difficulty or dishonesty recovery is permitted without proof of special damages."[48] The Alaska Supreme Court has also specifically held that "[s]lander per se includes instances where 'the words impute a serious crime to the plaintiff.'"[49]

Plaintiff argues that her claim for defamation is premised on defendant "Henikman's act of impugning a crime to her, and that such act is clearly injurious to her business relationship."[50] Based on Alaska case law, it appears plaintiff's claim is actionable as a defamation per se claim. Moreover, plaintiff has also provided evidence of actual injury. In her deposition, plaintiff stated that people recognized her while she

---

[45] *Alaska Statebank*, 674 P.2d at 295 n. 15 (quoting *Fairbanks Publishing Co. v. Pitka*, 376 P.2d 190 (Alaska 1962)).

[46] *Id.*

[47] *Alaska Statebank*, 674 P.2d at 295.

[48] *Id.* (internal quotation and citations omitted).

[49] *MacDonald*, 166 P.3d at 18 (quoting *French v. Jadon*, 911 P.2d 20, 33 (Alaska 1996)).

[50] Doc. 62 at 22.

-12-

was standing handcuffed in police custody, and that after being mistaken for a bank robber, she lost a client and it was "hard for [her] to even just look at people, to be around people" and that she cancelled appointments with people "because she couldn't deal with it."[51]  "In *Gertz v. Robert Welch, Inc.*, the United States Supreme Court noted that it is appropriate to compensate a defamation plaintiff for such things as 'impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.'"[52]  Viewing the evidence in the light most favorable to plaintiff, a jury could find that plaintiff provided evidence of actual injury on the basis that defendants' conduct harmed plaintiff's reputation and standing in the community and caused her emotional distress.[53]  For the reasons stated above, defendants have failed to establish that they are entitled to judgment as a matter of law on plaintiff's defamation claim.

**Intentional Infliction of Emotional Distress Claim**

Defendants next move for summary judgment dismissing plaintiff's claim for intentional infliction of emotional distress ("IIED").  Plaintiff's IIED claim alleges that defendants "acted in such a way, by handcuffing, and illegally arresting plaintiff, in front of her twelve-year-old son, and the general public, that [their] conduct was extreme and outrageous" and intentional or reckless, and that defendants' conduct caused severe emotional distress to plaintiff.[54]

Under Alaska law, "[t]he elements of a claim for IIED are: '(1) the conduct is extreme and outrageous, (2) the conduct is intentional or reckless, (3) the conduct causes emotional distress, and (4) the distress is severe.'"[55]  In evaluating claims of IIED, the trial court is required to make a threshold determination of "whether the

---

[51]Doc. 50, exh. E at 7.

[52]*MacDonald*, 166 P.3d at 19 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)).

[53]*Id.*

[54]Doc. 25 at 8.

[55]*Lincoln v. Interior Regional Housing Authority*, 30 P.3d 582, 589 (Alaska 2001) (quoting *Teamsters Local 959 v. Wells*, 749 P.2d 349, 357 (Alaska 1988)).

-13-

severity of the emotional distress and the conduct of the offending party warrant submission of the claim to the jury."[56] If this threshold determination is conducted at the time of summary judgment, "the court must afford the plaintiff all favorable factual inferences."[57]

Defendants argue that they are entitled to summary judgment on plaintiff's IIED claim "because the officers' conduct was not a concerted effort to inflict emotional distress upon Ms. Mitchell."[58] In support, defendants cite *Lybrand v. Trask*,[59] where the Alaska Supreme Court affirmed the trial court's dismissal of plaintiff's IIED claim in part on the grounds that the conduct was isolated and did not involve "multiple, concerted efforts to seriously damage the well-being and reputation of the plaintiff."[60] Defendants' argument is unavailing, however, because the *Lybrand* court also acknowledged that "[o]f course, an isolated incident...may also be sufficiently egregious to satisfy the outrageousness threshold."[61] Plaintiff argues that she has presented evidence from which a jury could easily conclude that Officers Voss and Henikman engaged in extreme or outrageous conduct towards plaintiff. In support, plaintiff points to evidence that she was shopping with her twelve-year-old son when Officers Voss and Henikman pointed their shotguns at her, segregated her based on her skin color, handcuffed her, and "stood [her] in front of Sears Mall for anyone to see."[62] Plaintiff also proffers evidence that defendants kept plaintiff in handcuffs for over twenty minutes, even though neither officer viewed plaintiff as a safety concern and no evidence linked her to

---

[56]*Lincoln v. Interior Regional Housing Authority*, 30 P.3d 582, 589 (Alaska 2001).

[57]*Jones*, 125 P.3d at 346.

[58]Doc. 50 at 19.

[59]31 P.3d 801 (Alaska 2001).

[60]*Lybrand*, 31 P.3d at 804.

[61]*Id.* at 805.

[62]Doc. 62 at 24.

criminal activity. Based on the evidence above, plaintiff has raised genuine issues of material fact as to whether defendants' conduct was extreme and outrageous.

Plaintiff also argues that defendants have failed to establish that they are entitled to judgment as a matter of law on her IIED claim because they have failed to argue two elements of an IIED claim, namely whether the alleged conduct caused emotional distress, and whether the distress was severe. The court concurs. Rather than point out a lack of evidence supporting plaintiff's claim of emotional distress, defendants state that "[i]t is not disputed that Ms. Mitchell's temporary detention resulted in some emotional distress."[63] Because defendants have failed to establish that they are entitled to judgment as a matter of law on plaintiff's IIED claim, the court will deny defendants' motion as to plaintiff's IIED claim.

## V. CONCLUSION

For the reasons set out above, defendants' motion for summary judgment at docket 50 is **DENIED**, and plaintiff's motion for partial summary judgment at docket 53 is **DENIED**.

DATED at Anchorage, Alaska, this 30th day of October 2007.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[63]Doc. 50 at 20.