Joyce Weaver Johnson
Assistant Municipal Attorney
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650
Phone: (907) 343-4545
Fax: (907) 343-4550
E-mail: uslit@muni.org

Attorney for Defendants
Municipality of Anchorage
Anchorage Police Department
Walt Monegan
Officers Voss and Henikman

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CAROLYN MITCHELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ANCHORAGE POLICE DEPARTMENT and | ) |
| the MUNICIPALITY OF ANCHORAGE, a | ) |
| municipal corporation, WALTER MONEGAN, | ) |
| Officer HENIKMAN, and Officer J. VOSS, | ) |
| | ) |
| Defendants. | ) Case No. 3:05-cv-00273-JWS |
| | ) |

## AFFIDAVIT OF OFFICER JOHN DAILY

| | |
|---|---|
| STATE OF ALASKA | ) |
| | ) ss. |
| THIRD JUDICIAL DISTRICT | ) |

John Daily, being first duly sworn upon oath, deposes and states:

1.     I am a Senior Patrol Officer with the Anchorage Police Department.  I have been with APD for over 27 years.  During that time I have been working swing shift patrol for the vast majority of my career, with rotations in the Homicide Unit and Special Assignments Unit.  I have been a Field Training Officer for over 25 years and I have trained numerous officers.  I was lead instructor for the Officer Survival/ Safety cadre and have taught that in almost every academy since 1982.  I am also an instructor in Firearms, Defensive Tactics, SWAT, Crime Scene Processing, and Accident Investigations.  I am an Assistant Team Leader on SWAT and have been on that team for over 21 years.  I am a supervisor of one of three Major Crime Response teams and have been doing that for over 22 years. My primary responsibility on patrol is as a Uniformed Investigator.

With relation to this incident I have responded to several hundred incidents over the years where there was a robbery or similar crime, usually involving weapons and often where several people are around and where there are more than one suspect involved or suspected.

2.     I understand this is a case brought by one of several women detained following a bank robbery at the Sears Mall, who were held by APD officers until the bank teller could be brought around to either identify them as a suspect, or rule them out so they could be released.

3.     I have been asked by the Municipal Attorney's Office to comment, based on my experience as a patrol officer and as a trainer, on matters such as eyewitness

descriptions of suspects and the characteristics police use when we are trying to find, identify and apprehend a criminal.

4.    When we are responding urgently just after a serious crime, we must usually work from limited information.  One of the basics that we teach recruits is that they should be suspicious of everything that Dispatch tells you.  Their information is almost always second or third hand, they have no control over the ability of their source to gather and disseminate the needed information, the dispatcher themselves may not have the experience to ask all the right questions and may make mistakes in relaying that information to patrol, and there is a good chance that things have changed dramatically once we get there, because the information they are working on is usually, at best, several minutes old.  An eyewitness has described the suspect to the dispatcher, who has then broadcast it over the radio, together with the type of crime and location, and whether the suspect should be considered dangerous.   In other words, we have heard basic information on our radio but have little detail and, usually, nothing in writing.  We don't have the luxury of sitting in our cars, watching our computer screens, waiting for details and updates to be entered by Dispatch.  Normally we are driving Code 3 or 4 which means we are concentrating on traffic, the road, and depending on the circumstances, looking for the suspects leaving the area on foot or in a vehicle.  We are dependent on the verbal information that Dispatch or other officers are giving us as reading a computer screen during Code calls is a sure recipe for disaster.  Unless we are in some sort of a vehicle perimeter position, we are out and on the go.

5.     Nor do we have the luxury of 20-20 hindsight: we cannot carefully study the photograph, height and weight of the real robber, and compare it with each person we encounter in the vicinity of the crime.

6.     Eyewitness descriptions of suspects are never perfect, and they are sometimes very inaccurate.  The typical victim is not a trained observer, and is upset and shook up following the crime.  His or her perception of events may be clouded or confused.  I have seen criminals apprehended who were several inches different in height from a witness's description, several pounds lighter or heavier than described, and significantly different in clothing, hair and skin color from how the description sounded.  Experienced patrol officers must use a witness description as just one clue.  n training recruits and new officers, we teach them not to rely only on a description, but also to analyze a situation in terms of time, place, ways a suspect might seek to avoid apprehension, and strategies that are typical of persons involved in certain crimes.

7.     A crime like bank robbery is almost always pre-planned.  We have had dozens of instances in which the robber not only had accomplices and a getaway plan, but also had alternate clothing, sunglasses and the like stashed nearby for a quick change.  In one case I had a suspect with his alternate clothing rolled up around his waist and that also helped hide his gun that he had tied on a string underneath his clothing, which was not found even after two experienced officers searched him.  It was found when the suspect finally realized that he wasn't going to get a chance to use it and he showed the officers where it was on his person.  Armed robbers will dump or hide their weapon.

Masks come off, hats go on.  We may expect one thing, but we have to be prepared for the unexpected.  We have even had an armed robber approach an officer he knew and ask for and get a ride away from the area.  It is not unusual for them to escape by just blending into the crowd.  If you want to hide a book, put it in a library.  It's easy to spot the ones running at top speed or driving like a maniac.

8.    For these reasons, we rely more on personal characteristics that a suspect can't readily alter.  These include race, gender, height, body build, tattoos and scars.

9.    We don't have any time to lose and we don't have a photograph to examine; the description is of only limited value.  For these reasons we must err on the side of detaining anyone who reasonably resembles that description.

10.    At an active crime scene, as long as we have a perimeter established, we must assume the robber is someone who is still running around in there with a gun.  Accordingly, we remain vigilant until the scene is cleared, i.e., the buildings have been completely searched and any possible suspects secured.  At APD our philosophy is to stay at guard, weapons at low ready, outside of the holster, if there is any chance that the situation warrants it.

11.    In this case, I understand that the witness described the suspect as an African-American woman.  There is no doubt in my mind that her gender, skin color, body build, height, and the like, should be key identifiers for any officer tasked with trying to find and apprehend the real robber; these are salient physical characteristics that are not readily altered.

12.   No law enforcement officer can disregard race or gender and do his or her job in the circumstances described.   The idea is nonsense.   To do so would be incompetent, ineffective, and a threat to public safety.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

By: _____
        Officer John Daily

SUBSCRIBED and SWORN to before me this **14**th day of January, 2008.

_____
Notary Public in and for Alaska
My commission expires: **1 / 13 / 2011**

/
/
/
/
/
/
/
/
/
/
/
/
/
/
/

Affidavit of Officer John Daily
Case No. 3-05-cv-00273-JWS
Page 6 of 7

The undersigned hereby certifies that on 1/15/08 a
true and correct copy of the *Affidavit of Officer John
Daily* was served on:

       Isaac D. Zorea
       Moshe C. Zorea

by first class regular mail, if noted above, or by electronic
means through the ECF system as indicated on the Notice
of Electronic Filing.

 s/ Sheri Curro
Sheri Curro, Legal Secretary
Municipal Attorney's Office