Joyce Weaver Johnson
Assistant Municipal Attorney
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650
Phone: (907) 343-4545
Fax: (907) 343-4550
E-mail: uslit@muni.org

Attorney for Defendants
Municipality of Anchorage
Anchorage Police Department
Walt Monegan
Officers Voss and Henikman

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CAROLYN MITCHELL, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ANCHORAGE POLICE DEPARTMENT and ) <br> the MUNICIPALITY OF ANCHORAGE, a ) <br> municipal corporation, WALTER MONEGAN, ) <br> Officer HENIKMAN, and Officer J. VOSS, ) <br> ) <br> Defendants. ) <br> _____ ) | Case No. 3:05-cv-00273-JWS |

### AFFIDAVIT OF TROOPER MAJOR MATT LEVEQUE

STATE OF ALASKA         )
                                        ) ss.
THIRD JUDICIAL DISTRICT )

Matt Leveque, being first duly sworn upon oath, deposes and states:

1. I am a major with the Alaska State Troopers and have been with the Troopers for 17 1/2 years. I served in Sitka, Fairbanks, Palmer, Talkeetna, Bethel and Anchorage, and primarily worked in patrol and commanded an investigative bureau. In addition, I was assigned to train trooper recruits and other departments' new police officers in basic police procedures at the Department of Public Safety Training Academy for three years. Currently I am the deputy director – field operations, and report directly to the director of the Troopers. I make this Affidavit of my own personal knowledge.

2. The Municipality has asked me to comment, from the Troopers' standpoint, on several issues about detaining persons upon reasonable suspicion: (a) Do the Troopers sometimes have to detain a person for as long as 20-30 minutes before they either find probable cause to arrest, or release the person? (b) Must the Troopers sometimes use handcuffs for as long as 20-30 minutes even though the person is unarmed? (c) Must the Troopers sometimes continue to display firearms even though the person is handcuffed and cooperating? (d) Are there times when Troopers must refrain from questioning a detainee until he or she is arrested on probable cause, or until someone else, such as another officer or a K-9 team, can get to the scene? (e) Even if Troopers do not feel afraid of a suspect and doubt she is violent, are there situations where they need to keep her restrained for a while?

(a.) <u>Length of detention.</u> Alaska State Troopers frequently respond to crimes with only one or two troopers. In many of those cases, and with some domestic violence calls, it is difficult to immediately identify who has committed the crime. In many of these

cases, troopers detain one or more parties until investigative steps are concluded that will permit a determination regarding who, if anyone, should be arrested. Domestic violence scenes are frequently chaotic; children are crying, furniture is in disarray, and both guilty and innocent parties have every reason not to tell the truth to troopers. Detention of parties in these cases is common, and sometimes lengthy.

(b.) <u>Use of handcuffs</u>.  Alaska State Troopers frequently handcuff individuals who are not under arrest, but who have given the troopers indications that they are dangerous or potentially dangerous. Often times, at domestic violence scenes, and especially if there are only one or two troopers responding, the apparent violator will be handcuffed and placed in the locked back seat of a trooper vehicle while interviews and other investigative steps are undertaken. Simply assuming that a person placed in the locked back seat of a trooper vehicle will not be a threat is an unsafe practice. Individuals have escaped by breaking out windows in patrol vehicles. Trusting that an unhandcuffed person will not run away is also unsafe. Domestic violence responses involve emotional components that are difficult to understand or anticipate. Not handcuffing, or removing handcuffs from a person just because they appear to be calm or rational is bad police practice.

(c.) <u>Display of firearms.</u>  There are many situations where troopers respond to calls with drawn firearms. Regardless of the event, it is frequently unwise, tactically-speaking, to return to one's trooper vehicle just because a situation or individual appears to be safe. The fact that at a drug search, burglary response, or similar call, that nobody is

located, or that the person who is found is not armed means nothing. Professional law enforcement officers are taught to be alert for accomplices who may not be readily apparent, or who may have been hiding, or who may return to the scene. While it may be easier to put rifles or shotguns or handguns away, as they are cumbersome and inconvenient to carry, it may not be the prudent thing for a trooper to do.

(d.) <u>Not questioning her about the robbery.</u> While in many cases, Alaska State Troopers handle investigations from beginning to end without the assistance of dedicated investigators, there is usually no big hurry to interview suspects. Many of our troopers are very junior, and know they are not the most skilled interviewers. Even if a trooper is a skilled interviewer, they may choose not to conduct an interview at the scene of a crime. In some cases, more information is needed before the interview is started, and attempting to interview an individual while still at a crime scene is a poor way for the interviewer to establish critical rapport. And finally, any trooper who is actively involved in an interview is a trooper who is not involved in the maintenance of scene safety. In fact, not only are they not helping, but they have transformed their role into someone who needs to be protected. Protected from the person being interviewed, and protected from others who are at or who may return to the scene.

(e.) <u>Plaintiff not being perceived as a safety concern.</u> Troopers and police officers are trained to make decisions regarding the handcuffing of people on the basis of the totality of the circumstances existing at the time; not primarily because the trooper is fearful or not. It is specifically because individuals can be convincingly non-threatening

in appearance that law enforcement officers must treat suspects cautiously when they are responding to serious or violent crimes.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

By: _____
Major Matt Leveque

SUBSCRIBED and SWORN to before me this 15 day of January, 2008.

_Jessica M Craig_ -108636
Notary Public in and for Alaska
My commission expires: with office



The undersigned hereby certifies that on 1/15/08 a true and correct copy of the Affidavit of ~~Capt Bill Miller~~ Maj. Matt LeVeque was served on:

    Isaac D. Zorea
    Moshe C. Zorea

by first class regular mail, if noted above, or by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

s/ Sheri Curro
Sheri Curro, Legal Secretary
Municipal Attorney's Office

Affidavit of Maj. Matt LeVeque
Case No. 3-05-cv-00273-JWS
Page 5 of 5