Joyce Weaver Johnson
Assistant Municipal Attorney
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650
Phone: (907) 343-4545
Fax: (907) 343-4550
E-mail: uslit@muni.org

Attorney for Defendants
Municipality of Anchorage
Anchorage Police Department
Walt Monegan
Officers Voss and Henikman

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CAROLYN MITCHELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ANCHORAGE POLICE DEPARTMENT and | ) |
| the MUNICIPALITY OF ANCHORAGE, a | ) |
| municipal corporation, WALTER MONEGAN, | ) |
| Officer HENIKMAN, and Officer J. VOSS, | ) |
| | ) |
| Defendants. | ) Case No. 3:05-cv-00273-JWS |
| | ) |

## MOTION FOR SUMMARY JUDGMENT BASED ON IMMUNITY

Defendants Municipality of Anchorage, Walt Monegan and Officers Henikman and Voss,

through the Municipal Attorney's Office, move for summary judgment based on immunity.

## INTRODUCTION.

The parties' previous summary judgment motion practice was limited to the substantive

issues of whether plaintiff's constitutional rights were violated and whether common-law torts

were committed.  On the issue of false arrest under Alaska common law, this Court granted

summary judgment against the defendant officers.  Dkt.76.  In denying summary judgment for any party on the remaining issues, the Court left unresolved, <u>inter alia</u>, the question whether any unconstitutional seizure occurred under federal Fourth Amendment jurisprudence.

This Motion will focus on qualified immunity.  Under <u>Saucier v. Katz</u>, 533 U.S. 194, 200, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001), all defendants are entitled to this immunity, and should not be required to further shoulder the burdens of litigation.

Plaintiff brought this case under 42 U.S.C. Sec. 1983 and Alaska common law.  She sued Defendants Voss, Henikman and Monegan in both their individual and official capacities.  Her claim against Defendant Monegan is based on a supervisory theory.

Defendants address immunity first.  Part I will address (A.) qualified immunity for federal civil rights claims; (B.) qualified immunity for Alaska common-law torts; (C.) discretionary immunity; (D.) employer liability and (E.) supervisory liability.  Part II will briefly address punitive damages.  This Court's decision on Part I may moot Part II.

## SUMMARY OF CLAIMS.

This Summary will cite to the claims as presented in Plaintiff's Amended Complaint, Dkt. 25.  Under Sec. 1983, Plaintiff seeks damages for violation of her Fourth Amendment right under the U.S. Constitution to be free from unreasonable seizures, and seeks declaratory and injunctive relief.  Paras. 6.1-6.5.

Under Alaska common law, Plaintiff seeks damages for physical injury (Paras. 3.4 and 3.8); intentional infliction of emotional distress (Paras. 5.1-5.4), defamation (Paras. 4.1-4.6), false arrest (Paras. 3.1-3.9) and punitive damages.  (Paras. 3.9, 4.6 and 5.4.)

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 2 of 25

## FACTUAL BACKGROUND.

All claims arise from an incident on May 8, 2004, when Anchorage police made <u>Terry</u> stops of Plaintiff and three other women at the Sears Mall on Northern Lights Boulevard in Anchorage. The women were detained because they appeared similar to the police broadcast description of the suspect in a bank robbery at the Wells Fargo Bank in the mall (Henikman depo., Ex. A (Dkt. 50) at 13-14; Voss Aff. (Dkt. 51) at ¶ 2, referring to his police report, Ex. B (Dkt. 50), at Bates No. 9.

Some 15 minutes before Plaintiff was stopped, a woman had approached a teller window at the Wells Fargo bank in the Sears Mall, indicating she was armed and demanding money. (Henikman Aff. (Dkt. 52) at paras. 1-3). Before displaying any weapon or getting any money, the robber turned and left. The bank's 911 call brought a response by many Anchorage Police Department (APD) officers as well as agents of the Federal Bureau of Investigation (FBI).

Police radio initially broadcast a description of the robber provided by the bank teller. In the succeeding minutes, other descriptions of the bank robbery suspect were provided by other witnesses who had been at the bank at the time of the robbery. (Voss Aff. (Dkt. 51) ¶ 3, Calls for Service Inquiry Response, Ex. C (Dkt. 50) at pp. 1-2, cited in Voss affidavit (Dkt. 51) ¶ 3.) In general, and in the successive iterations broadcast, the suspect was described as a black female adult, heavy set, wearing a dark shirt and a black bandana or headband on her head, and carrying a bag. <u>Id.</u>

This was a Saturday afternoon in a shopping mall covering some four city blocks in Anchorage's midtown commercial district. The seriousness of the crime demanded an immediate and major response in the hope of preventing the robber from harming anyone or

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 3 of 25

escaping. Police and FBI surrounded the mall, watching the many exits for the suspect and possible accomplices, and trying to assure safety for shoppers and employees.

As the radio traffic (Ex. C at Dkt. 50) clearly shows, the scene was dynamic and chaotic. Nonetheless, Officers Henikman and Voss were well aware of the general description. (Ex. A (Dkt. 50) at 14; Voss depo., Ex. D (Dkt. 50) at 11, lines 5-22.)

These officers noticed a female exit a Mall door who generally matched the description of the bank robbery suspect. (Ex. A (Dkt. 50) at 14; Ex. D (Dkt. 50) at 11, lines 5-22.) Ms. Mitchell is a black female adult, 5'4" tall, weighing approximately 180 pounds (Ex. B (Dkt. 50) at Bates No. 18). At the time of the bank robbery, she was wearing a white Nike jumpsuit and a blue shirt. (Henikman Aff. (Dkt. 52) at second ¶ 5.) To separate her from others who exited the door but who did not resemble the description of the suspect (all others were Caucasian, Mitchell Depo., Ex. E (Dkt. 50) at 17) the officers asked everyone to move away "except the African-American female." Mitchell Depo. Ex. E (Dkt. 50) at 18. Having allowed the others to leave the area, Officer Henikman placed Ms. Mitchell, now a suspect, in handcuffs, while Officer Voss covered Officer Henikman with his gun drawn. (Henikman Aff. (Dkt. 52) ¶ 6; Ex. D (Dkt. 50) at 25, lines 4-14.) Officer Henikman searched her purse and identified her as Carolyn Mitchell by her military ID. The officers then held Ms. Mitchell in handcuffs near a police car approximately 50 feet from the point where they had apprehended her (Ex. D (Dkt. 50) at 43, lines 3-8) for approximately 20–30 minutes (Mitchell depo., Ex. E (Dkt. 50) at 22, lines 15-18).

During this detention, Officers Voss and Henikman guarded Ms. Mitchell. They had their guns at guard (Ex. E (Dkt. 50) at 73, lines 1-4) or hanging in their slings, not pointed directly at Ms. Mitchell. (Ex. A at 18, lines 16-23 (submitted herewith), Ex. D (Dkt. 50) at 16, line 18, to 18, line 14.) Officers explained that Ms. Mitchell was being detained until the bank

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 4 of 25

teller could be brought by to identify her as the bank robber (Ex. E (Dkt. 50) at 21, ll. 12-14; 22, ll. 5-6; Henikman Aff. (Dkt. 52) ¶ 8.)

While Ms. Mitchell was being detained, her 12-year-old son, Demarcus Mitchell, was within the sight of the officers. (Henikman Aff. (Dkt. 52) ¶ 9.)  The officers allowed Ms. Mitchell's friend, Charolott Lacato, to stand by her side while she was detained, and allowed another friend, Jerod Lacato, to stand with Demarcus. (Ex. E (Dkt. 50) at 73, ll. 21-25 to 74, ll. 1-4.)  A local television camera crew's video footage shows the friend, Ms. Lacato, keeping Ms. Mitchell company.  Ex. F (Dkt. 60).

An APD officer drove the teller around the outside of the mall conducting showups with the three other suspects, then Ms. Mitchell. Immediately after Defendant Officers were told the teller had ruled her out as the bank robber, they released Ms. Mitchell and explained the reason for her detention. (Henikman Aff. (Dkt. 52) ¶ 10; Ex. B at 55, line 9 (submitted herewith) - p. 56, (Dkt. 50) line 4.

A few hours later, a woman was spotted downtown by another APD officer as fitting the description of the bank robber. The teller was again driven by for a showup.  The teller positively identified her as the robber. She was placed under arrest and turned over to the FBI. (Ex. B (Dkt. 50) at Bates Nos. 1,3,4,6,7,8,11,13,14).  She later pled guilty to federal charges of bank robbery and served a sentence in federal prison.

The television station, KTUU Channel 2 News, ran stories on the bank robbery. Their video was apparently taken from the other side of busy Benson Boulevard.  The footage depicts Ms. Mitchell standing apparently calmly, arms behind her back, near two police officers and beside a civilian woman.  (Ex. F) Dkt. 50.  The footage does not show handcuffs.  It does not

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 5 of 25

identify Ms. Mitchell by name.  It states no one has been arrested. KTUU later reported the actual bank robber, Cynthia Washington, was in custody. Id.

Ms. Mitchell sued MOA, Chief Monegan and Officers Henikman and Voss alleging civil rights violations under 42 U.S.C.§ 1983, injury, false arrest, slander per se, and IIED. Amended Complaint (Dkt. 25) at ¶¶ 3.1-6.5.)

On the facts of record summarized herein, Defendants are entitled to judgment as a matter of law.

## LEGAL STANDARD FOR SUMMARY JUDGMENT.

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The facts surrounding Defendants' actions are not in dispute, and Plaintiff's claims are ripe for summary judgment.

### I. IMMUNITY REQUIRES JUDGMENT FOR ALL DEFENDANTS.

Under the qualified and discretionary immunity afforded public officials by the settled jurisprudence of the U.S. and Alaska Supreme Courts, Defendants are entitled to summary judgment.

#### A. FEDERAL LAW GIVES QUALIFIED IMMUNITY.

Under the doctrine of qualified immunity, a government official performing a discretionary function is shielded from liability for civil damages if his conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).  Qualified immunity rulings should be made early to avoid the cost and expenses of trial.  Saucier, 533 U.S. at 200.

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 6 of 25

When a court evaluates a claim of qualified immunity, the court first considers the threshold question of whether the facts, "taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right?"  Saucier, 533 U.S. at 201. The court's first step in analyzing § 1983 claims is to "identify the exact contours of the underlying right said to have been violated." County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998) (citations omitted).

If a court finds a constitutional violation, Saucier requires further inquiry.  If a constitutional violation occurred, the second inquiry is whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right.  Saucier, 533 U.S. at 202.  This requires an assessment of whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.

To survive the motion for qualified immunity, Plaintiff must state a violation of a constitutional right, and that right must have been clearly established at the time when the officers allegedly violated her Fourth Amendment rights.  For a right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Whether the reasonable official should have known depends in part on what information is available to him at the time of his action. Qualified immunity protects a public official who acted reasonably, based on what he reasonably believed.  This is true even if the facts turn out to be different from what he reasonably believed, or his actions did violate someone's constitutional rights, so long as his actions and beliefs were those of a reasonable public official.

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 7 of 25

### 1. Ms. Mitchell's Fourth Amendment Rights Were Not Violated; Her Section 1983 Claims Fail.

Plaintiff asserts her detention violated her Fourth Amendment rights under the U.S. Constitution.  However, as was more fully briefed in Defendants' Motion at Dkt. 50, this investigatory stop was well within the scope of reasonable actions under the constitutional jurisprudence of the Supreme Court and the Ninth Circuit.

### a. *Terry, Gallegos* Teach Scope of Investigatory Stops.

A brief investigatory stop falling short of an arrest is constitutionally permissible, so long as it is reasonable.

> "The Fourth Amendment prohibits 'unreasonable searches and seizures' by  the government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."

Gallegos v. City of Los Angeles, 308 F.3d 987, 990 (9th Cir. 2002) (quoting U.S. v. Arvizu, 534 U.S. 266 (2002), and citing Terry v. Ohio, infra.)

The U.S. Supreme Court, in Terry, had created a limited exception to the general rule that police detentions require probable cause. Terry v. Ohio, 392 U.S. 1 (1968).

> Under Terry and its progeny, the Fourth Amendment allows police to conduct a brief investigatory search or seizure, so long as they have a reasonable, articulable suspicion that justifies their actions.

Gallegos, 308 F.3d at 990. The Court recognizes stopping innocent people is inevitable:

> "Terry accepts the risk that officers may stop innocent people.  Indeed, the Fourth Amendment accepts that risk" as well. . . . Courts cannot prevent mistakes such as this from taking place; we can only ensure that mistakes are kept to a minimum by requiring officers to act reasonably, for articulable reasons, and not on a hunch.

Gallegos at 992 (quoting Illinois v. Wardlow, 528 U.S. 119, 123, 126,  120 S.Ct. 673 (2000).)

### b. Ms. Mitchell's Detention Was an Investigatory Stop, Not an Arrest.

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 8 of 25

Ms. Mitchell's brief detention did not amount to an arrest for purposes of her Sec. 1983 claim. There has never been bright-line rule to distinguish between an arrest and an investigatory stop; specific circumstances are to be considered and the intrusiveness of the stop to be evaluated. Gallegos, 308 F.3d at 991.

Here in Alaska, the  state Court of Appeals analyzed this question under both the U.S. Fourth Amendment and Alaska law, and set forth a five-factor test to determine whether a detention is a valid investigatory stop: 1) The stop must be limited to an investigation of a crime of violence or involving serious and substantial loss to property; 2) The stop must be limited and for the purpose of a specific inquiry soon to be resolved; 3) The stop must be brief; 4)  The stop must not require travel of an appreciable distance; and 5) The force used must be proportional to the risk reasonably foreseen by the officer at the time of the stop. Howard v. State, 664 P.2d 603 at 609-610.

### i.  Ms. Mitchell Was Detained for the Purpose of Investigating  a Bank Robbery, a Crime of Violence.

Ms. Mitchell's detention was limited to the investigation of a bank robbery. To be valid, a stop must first be limited to the investigation of a crime of violence or involving serious and substantial loss to property. Howard at 609.  These include crimes such as sexual assault and burglary. See Gallegos, 308 F.3d at 989 (burglary); Howard, 664 P.2d at 611 (sexual assault). The Gallegos court held that the detention of the plaintiff, mistaken for a burglary suspect, did not exceed the bounds of a valid investigatory stop. 308 F.3d at 989, 993. At the time of Ms. Mitchell's detention, APD officers were looking for a bank robbery suspect described as carrying a gun.

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 9 of 25

**ii.** **The Sole Purpose for Ms. Mitchell's Brief Detention Was to Allow the Victim of a Bank Robbery to Identify the Suspect.**

Ms. Mitchell was detained solely to allow the victim to verify the suspect's involvement in a bank robbery. As noted above, investigatory stops must be limited and for a specific inquiry soon to be resolved. In <u>Howard</u>, 664 P.2d at 611, police officers stopped a man suspected of sexual assault for the limited purpose of "maintaining the status quo while they verified the description of the suspect furnished by the victim." <u>Id.</u> In <u>Gallegos</u>, the plaintiff's detention was a valid investigatory stop where officers made the stop "solely to make sure they had the right man." 308 F.3d at 992.

Officers stopped four people who matched the suspect's description, including Ms. Mitchell, in and around the Sears Mall where the bank robbery had occurred.  As in <u>Gallegos</u> and <u>Howard</u>, the sole purpose for these stops was to allow the bank teller to identify them. Officers Voss and Henikman's stop of Ms. Mitchell was limited and for the specific purpose of allowing a victim, the teller, to identify the suspects.

**iii.** **Ms. Mitchell's Detention Was Brief and She Was Released Immediately After APD Officers Confirmed She Was Not the Bank Robbery Suspect.**

Ms. Mitchell's stop was also brief. While there is no "rigid time limitation," stops have been held to be brief where there was no unnecessary delay of a legitimate investigation, and suspicions are dispelled quickly. <u>Gallegos</u>, 308 F.3d at 992. The <u>Gallegos</u> court found a 45-60 minute detention to be brief where the plaintiff was released immediately after the neighbor confirmed he was not the man who had attempted a burglary. <u>See id.</u>  Ms. Mitchell's 20-30 minute detention was shorter and, as in <u>Gallegos</u>, Ms. Mitchell was released immediately after

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 10 of 25

the victim confirmed she was not the robber. There was "no unnecessary delay." Ms. Mitchell's stop was brief.

### iv. <u>Ms. Mitchell's Detention Did Not Involve Travel of an Appreciable Distance.</u>

Not only was Ms. Mitchell's stop brief, but it also did not involve travel of an appreciable distance. There is again no bright line rule that defines what an appreciable distance is; however, in <u>Gallegos</u>, a valid investigatory stop involved travel of a "few miles," 308 F.3d at 989. Ms. Mitchell was handcuffed when she was about 15 feet from the exit of Sears Mall, Ex. A at 16, line 22, and remained within that general area, or "several feet", "not far from where I found her," Ex. A at 35, line 13, to 38, line 8, just about 50 feet from Voss's patrol car, Ex. D at 43, line 7, a distance much less than "a few miles." Ms. Mitchell's stop did not involve travel of an appreciable distance.

### v. <u>The Force Used by Officers Henikman and Voss Was Reasonable Given the Risk Involved in Apprehending and Detaining a Suspect in an Armed Bank Robbery.</u>

Ms. Mitchell's stop only involved force proportional to the risk reasonably foreseen by the officers at the time; "drawn guns and handcuffing do not necessarily turn a stop into an arrest." <u>Gallegos</u>, 308 F.3d at 991; <u>Howard</u>, 664 P.2d at 609, 611.

In <u>Gallegos</u>, the court concluded that drawn guns were not unreasonable because police were unsure if the plaintiff/suspect was armed; that handcuffs were not unreasonable because the police were unsure of the plaintiff/suspect's identity; and that holding the plaintiff/suspect to be identified by the victim was not an unreasonable way of finding out if he was the person they were seeking. 308 F.3d at 991.

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 11 of 25

Like the officers in <u>Gallegos</u>, Officers Henikman and Voss did not know whether Ms. Mitchell, a suspect matching a bank robber's description, was armed; they were unsure of her identity, and they held her for the purpose of having the victim identify her. The Ninth Circuit in <u>Gallegos</u> stated that the Fourth Amendment accepts the risk that officers may stop innocent people. 308 F.3d at 992. In the present case as in <u>Howard</u>, the suspects were thought to be armed. Furthermore, whereas the two officers in <u>Howard</u> faced only two possible suspects, the officers in this case were far outnumbered by potential suspects and members of the public at a crowded shopping mall. Officers Henikman and Voss reasonably believed Ms. Mitchell to be a possible match for the reportedly armed bank robber (Henikman Aff. (Dkt. 52) at second ¶ 5; Voss Aff. (Dkt. 51) ¶ 4); thus, the force used was not disproportionate to the risk reasonably foreseen at the time. Ms. Mitchell's detention satisfies all the elements of the <u>Howard</u> five-factor test for a valid investigatory stop, and the "totality of the circumstances" standard of <u>Gallegos</u> at p. 991.

### c. **Ms. Mitchell's Investigatory Stop Was Reasonable.**

Officers Henikman and Voss had reasonable, articulable suspicion to detain Ms. Mitchell. If an individual's detention is an arrest, the Constitution requires that the arresting officers have "probable cause" to justify their actions. Because Ms. Mitchell's detention was only an investigatory stop, falling short of an arrest, it need only be based on "reasonable suspicion". <u>See Gallegos</u>, 308 F.3d at 990. Reasonable suspicion "is a less demanding standard than probable cause," and merely requires "a minimal level of objective justification." <u>Id.</u> An officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the intrusion. "And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 12 of 25

the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" <u>Terry</u>, 392 U.S. at 21-22.

Ms. Mitchell generally fit the physical characteristics of the suspect described as a heavy-set black female adult wearing a blue t-shirt. It was the duty of the officers to make a prompt investigation, which unfortunately required them to stop innocent people at the mall. However, the stop was eminently reasonable in light of the circumstances: a bank robbery had just occurred, and Ms. Mitchell, who was in the vicinity at the time, matched key characteristics of the suspected bank robber. Being reasonable, the stop was lawful under the Fourth Amendment. Thus, Ms. Mitchell's claim of civil rights violations under 42 U.S.C. § 1983 fails.

## 2.  <u>On the Information Available, the Reasonable Officer on the Scene Would Believe His Actions Lawful.</u>

The second prong of the qualified immunity analysis under <u>Saucier</u> is to determine whether it would be apparent to the reasonable officer that his conduct would violate the Constitution. The facts available to him at the scene, and his knowledge and training in the law, both inform this analysis.

Assuming <u>arguendo</u> that their detention of the Plaintiff for 20-30 minutes pending the showup violated the Fourth Amendment, this was not apparent to the reasonable officer, who knew only what Officers Voss and Henikman knew.

On this occasion they and dozens of other police and federal agents confronted a classic law enforcement emergency: On extremely limited information, just minutes after a crime of violence, they had to try to protect the public and apprehend the robber. Bank robbers often have accomplices, getaway drivers and clothing changes. Affidavit of Officer Glen Daily, Dkt. 81. Once Plaintiff was detained, their job was to keep her just long enough for the teller to take a look at her.

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 13 of 25

The officers could not know Plaintiff would turn out to be innocent. Meeting her under different circumstances, one might feel she is not the criminal type, or doesn't look much like Cynthia Washington. But the Supreme Court recognizes that the police must exercise their best judgment very quickly on limited information. The Court has repeatedly cautioned against judging police actions with 20-20 hindsight. In <u>Hunter v Bryant</u>, 112 S.Ct. 534 (1991), Bryant had sued under Sec. 1983 over an incident in which federal agents had placed him under arrest. The federal agents did so based on information suggesting he might assassinate the President. <u>Id.</u> at 537. The Court said:

> Our cases establish that qualified immunity shields agents Hunter and Jordan from suit for damages if "a reasonable officer could have believed [Bryant's arrest] to be lawful, in light of clearly established law *and the information the [arresting] officers possessed.*" <u>Anderson v. Creighton</u>, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). Even law enforcement officials who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity. Ibid.

<u>Hunter</u> at 536 (italics added).

The Court in <u>Hunter</u> also said:

> [T]he court should ask whether the agents acted reasonably under settled law *in the circumstances*, not whether another reasonable, or more reasonable, interpretation of the events can be constructed five years after the fact.

<u>Id.</u> at 537 (italics added).

That Ms. Mitchell's detention was reasonable under the circumstances is evident when one compares it with other Fourth Amendment cases. Even if arresting Bryant violated the Constitution, the Court said, the agents' decision under the circumstances was reasonable:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued . . .

<u>Id.</u> at 537 (internal citations omitted.)

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 14 of 25

That Plaintiff's stop was proper under Terry v. Ohio, 392 U.S. 1 (1968), was extensively addressed in Defendants' prior motion, Dkt. 50 at pp. 6-13, and need not be repeated. In short, Plaintiff unfortunately experienced exactly what the Supreme Court and Ninth Circuit teach is unavoidable: sometimes innocent people will be stopped:

> "*Terry* accepts the risk that officers may stop innocent people. Indeed, the Fourth Amendment accepts that risk" as well. . . Courts cannot prevent mistakes such as this from taking place; we can only ensure that mistakes are kept to a minimum by requiring officers to act reasonably, for articulable reasons, and not on a hunch.

Gallegos, 308 F.3d at 992. Officers Voss and Henikman have articulated their reasons; they acted on reason, training and judgment – not on a hunch.

### 3. Therefore, Federal Qualified Immunity Applies to These Officers.

For these reasons, even if the Court were to find a Constitutional violation on these facts, it must find for the officers on qualified immunity.

### B. ALASKA,TOO, GIVES QUALIFIED IMMUNITY.

Qualified immunity for public officials is analyzed in Alaska as it is federally. This became clearer with a recent decision by the Alaska Supreme Court. And, as will be shown at (2.) below, this immunity applies to common-law torts as well as constitutional and statutory violations.

### 1. Alaska Follows *Saucier v. Katz* in Granting Qualified Immunity.

The Court has clarified its jurisprudence on qualified immunity, bringing it in line with that of the U.S. Supreme Court. In Sheldon v. City of Ambler and Jones, ___P.3d ___, 2008 WL 697078, the Court adopted the test from Saucier, supra. Sheldon was an excessive force case based on Alaska statutes governing use of force, id. at 6, not on the U.S. Constitution. While affirming summary judgment in favor of Officer Jones for actions that resulted in an arrestee's

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 15 of 25

death, the Court said, "We also use this opportunity to <u>clarify</u> this court's standard for qualified immunity, bringing it <u>more explicitly</u> in line with current federal case law." <u>Id.</u> at 1. (Emphasis added.)  Thus, rather than altering its analysis, the Court expressly stated it was clearing up confusion left by one of its prior decisions.  <u>Id.</u> at 3.  The Court decided that an officer reasonably believing that his actions are lawful is entitled to qualified immunity.  <u>Id.</u> at 5.

In the instant case, as the Affidavits, depositions and fact recitation above show, the officers reasonably believed Ms. Mitchell resembled the description of the armed bank robber. They reasonably believed the robber might be found in the vicinity of the crime in the short time since it occurred.  They reasonably believed the robber might have accomplices, possibly armed, to help her escape. They reasonably believed it necessary to hold her and prevent a violent escape or rescue attempt.  And they believed they would not have to hold her very long, as the teller was soon to drive by.  If their beliefs were accurate, then they are not liable and the analysis need go no further.  If their beliefs turned out to be mistaken, they remain <u>reasonable</u> mistakes under these specific circumstances, <u>Sheldon</u> at 5.  Therefore, they are entitled to qualified immunity and freedom from the burdens of further litigation and trial.

## 2.   <u>Qualified Immunity Applies to Common-Law Torts.</u>

Alaska's law of qualified immunity applies not only to Constitutional and statutory violations, <u>see Sheldon</u>, but also to common-law torts.  This is demonstrated by a decision shortly pre-dating <u>Sheldon</u>, involving both Sec. 1983 claims and common-law claims of defamation and false light.  <u>Smith v. Stafford</u>, _____ P.3d____, 2008 WL 540181 (Alaska 2008). The <u>Smith</u> decision shows how the courts analyzed qualified immunity as having three prongs. In other words, a court had to determine (1) did the officials violate the plaintiff's rights; (2) was the law clearly established, and (3) were the actions taken in good or bad faith?

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 16 of 25

Smith was a father aggrieved by state social workers' handling of his daughter's Child in Need of Aid case. Acts and omissions by the workers deprived him of custody for extensive periods. He sued the assigned case worker, Margit Cox, and supervisor, Katie Stafford, raising federal Sec. 1983 and common-law tort claims for defamation and false light. The allegations underlying his tort claims were that Cox had deliberately misrepresented Smith's fitness as a father by photographing garbage and beer cans and falsely claiming he was drinking or having parties.

The Alaska Supreme Court found both state workers' actions were discretionary, thus entitling them to official immunity (qualified.) Id. at pp. 7-8. It dismissed all federal Sec. 1983 claims as to both based on federal qualified immunity. It also dismissed the tort claims against the supervisor, based on Alaska qualified immunity. However, it said a triable issue existed on the defamation and false light claims as to whether the worker had acted in "bad faith," with an "evil motive" or a "corrupt state of mind." Accordingly, summary judgment was denied her on those claims.

If the actions of Alaska social workers are "discretionary" for purposes of immunity, then certainly so are the actions of these Alaska police officers and their supervisors. Deciding whether they must restrict a citizen's liberty for a time, whether to handcuff, and whether to arrest, call for discretion. Voss, Henikman and Monegan are entitled to immunity.

### 3. <u>Plaintiff Fails to State a Claim for Physical Injury.</u>

Plaintiff's sole claim of "physical injury" is that the handcuffs caused her wrists to swell. Dkt. 25 at para. 3.8 and 6.3. She has produced no evidence for this, and no medical documents verifying any such "injury." This does not state a claim on which relief may be granted. In the alternative, such evidence merits nominal damages, at most.

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 17 of 25

Significantly, Plaintiff nowhere pleads negligence on the officers' part, nor assault or battery. What, then, is the legal basis for this "physical injury" claim?  It is not a Fourth Amendment excessive force theory; seizure is the only Constitutional theory pled.  A negligible claim, without a theory, is not legally cognizable.  Plaintiff's claim of "physical injury" is ripe for summary judgment and dismissal.

### 4.   Under *Sheldon* and *Smith*, Qualified Immunity Applies.

In deciding summary judgment on Plaintiff's Alaska tort claims of injury, false arrest, defamation and IIED, this Court should follow the Saucier analysis which the Alaska Supreme Court expressly adopted in Sheldon.  See (1.) above.

In this case, the Amended Complaint alleges Constitutional violations and common-law torts.  Nowhere, however, does Plaintiff allege Officers Voss or Henikman acted with "bad faith, "evil motive" or a "corrupt state of mind," as was the case with Ms. Cox in Smith.  In fact, the Complaint is devoid of assertions of "malice," purposeful harmor offense.  Thus, even a pre-Sheldon analysis such as that in Smith would find that qualified immunity applies here and there is nothing for the jury.

Under Alaska law, the officers are entitled to qualified immunity for the alleged Alaska torts, just as they are under federal law, for the alleged constitutional wrongs.

### C.   STATUTE PROVIDES DISCRETIONARY IMMUNITY.

All Defendants in this case are protected by Alaska statute for their discretionary acts. AS 9.65.070 protects the Municipality, former Chief Monegan, and Officers Henikman and Voss.  The law states:

**Sec. 9.65.070. Suits against incorporated units of local government.**

. . .

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 18 of 25

(d) An action for damages may not be brought against a municipality or any of its agents, officers, or employees if the claim . . .

(2) is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty by a municipality or its agents, officers, or employees, whether or not the discretion involved is abused . . .

Officers Henikman and Voss were required to use their judgment and discretion in responding to the bank robbery and detaining one of the look-alikes.  The decisions and actions complained of in Plaintiff's Amended Complaint were made according to their judgment and discretion as law enforcement professionals.   Based on AS 9.65.070, they are entitled to summary judgment and dismissal of all claims.

The Alaska Supreme Court found discretion, and immunity, where an elementary principal had to decide whether to release a child to his mother.  The mother presented an outdated custody stipulation.  Although the principal released the child, contrary to the father's custody rights, the Supreme Court found the principal immune from the father's suit under AS 9.65.070.  Pauley v. Anchorage School District, 31 P.3d 1284 (2001).

A decision by the Alaska State Troopers not to launch a search at night in bad weather, where a couple and their young grandchild were missing, was ruled immune under AS 09.50.250.  This statute is similar to AS 9.65.070 but applies only to the state.  Kiokun v. State, Dept. of Public Safety, 74 P.3d 209 (2003).

Similarly, investment decisions which turned out badly were found discretionary, and could not form the basis of tort liability against borough officials.  Integrated Resources Equity Corp. v. Fairbanks North Star Borough, 799 P.2d 295, 302-03 (1990).

By its terms, AS 09.65.070 protects the Municipality, Monegan, Voss and Henikman.  Every bit as much as social workers and principals, they must use their judgment and discretion every day.  There is no such thing as a cookbook for police work; they must do the best they can

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 19 of 25

in the situation presented, here, the immediate aftermath of a violent crime in a crowded public place. As with federal qualified immunity, Alaska statutory immunity is designed to free the officers to do their job the best they can in the circumstances, without fearing that using their best judgment in a hurry will subject them to liability.

On this basis as well, all defendants are entitled to immunity. It should be decided by the Court at this time, so that the Municipality and its officers need not bear the burdens of litigation and trial.

### D.    <u>EMPLOYER, SUPERVISOR LIABILITY DOES NOT APPLY.</u>

If the officers are not liable, neither are the employer or supervisors.

#### 1.    <u>Respondeat Superior Liability Does Not Apply Under Sec. 1983.</u>

A municipality cannot be held liable under Sec. 1983 solely because it employs a tortfeasor; the principle of vicarious liability in the form of <u>respondeat superior</u> does not apply. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691; 98 S.Ct. 2018, 2036-37 (1978); <u>Elder-Keep v. Aksamit</u>, 460 F.3d 979, 986 (8th Cir. 2006.)

#### 2.    <u>Alaska Statute and Case Law Bar Employer Liability on These Facts.</u>

Alaska law, unlike federal Sec. 1983 law, allows such vicarious liability. However, if AS 09.65.070(d)(2) and settled Alaska case law immunize the officers for alleged torts, then Monegan and the Municipality cannot be liable under <u>respondeat superior</u>.

Pursuant to its entry of summary judgment in favor of Officers Henikman and Voss on the principles discussed above, the Court should enter summary judgment in favor of Monegan and the Municipality on all tort claims.

#### 3.    <u>Under *Monell*, Employer or Supervisor Liability Depends on an Employee's Constitutional Violation.</u>

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 20 of 25

Supervisor and employer liability in the context of this case are narrowly limited by U.S. Supreme Court decisions.  In <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed. 2d 806 (1986), the Court held that, if the officer acted constitutionally, then the city cannot be liable.  Even if the officer acted unconstitutionally, the only way a supervisor or employer can be held liable under Sec. 1983 is for failure to train the officer or sanctioning improper policies or customs.  Moreover, the employer/supervisor failure must have caused the constitutional violation.  <u>Monell</u> at 691.

### a. **Plaintiff Fails to Allege or Show Deficient Training or Supervision.**

Plaintiff complains Defendant Officers acted "pursuant to training and instructions they received" from APD under the supervision of Chief Monegan. Dkt. 25, para. 3.7.  This is Plaintiff's sole allegation going to supervisory liability.  A bald, conclusory allegation, it fails to state a claim and is insufficient to take the question to the jury.   Nor has Plaintiff produced any evidence or argument to support a claim of bad supervision or training, nor shown that it could have caused the alleged wrongdoing.

Such generalized assertions "amount to nothing more than an attempt to hold the municipality liable under <u>respondeat superior</u>, a move unsupported by clearly established precedent of the Supreme Court."  <u>Center for Bioethical Reform, Inc., v. City of Springboro</u>, 477 F.3d 807, 819 (6th Cir. 2007).

### b. **Plaintiff Fails to Identify Any Deficient Policy.**

Additional broad generalizations lacking specific allegations or factual support characterize Plaintiff's claims that "official policy" of APD violated, or caused violation of, Sec. 1983.  These claims target both the Anchorage Police Department (part of the Municipality) and

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 21 of 25

former Chief Monegan.  Dkt. 25, paras. 6.2-6.4.  Under <u>Center for Bioethical Reform</u>, <u>supra</u>, Plaintiff fails to state a claim for <u>Monell</u> liability.

Accordingly, there is no genuine issue of material fact and the Municipality and former Chief Monegan are entitled to judgment as a matter of law on all of Plaintiff's Sec. 1983 claims against them.

## II. <u>PUNITIVE DAMAGES ARE NOT RECOVERABLE AS A MATTER OF LAW, OR ARE NOT ADEQUATELY PLED; THIS CLAIM MUST BE DISMISSED.</u>

One issue secondary to the above broad immunity questions will be briefly addressed.  In her prayer for relief at Paras. 1-3 of the Amended Complaint, Plaintiff seeks punitives against Defendants on her state law claims of false arrest, slander per se and intentional infliction of emotional distress.

### A. <u>Punitive Damages Cannot Be Recovered Against the Municipality Under Any Theory of Law.</u>

Under Alaska law, punitive damages are not available against a municipality.  <u>Hazen v. Municipality of Anchorage</u>, 718 P.2d 456, 465-66 (1986).  This is true "irrespective of the nature of the conduct involved."  <u>Id</u>.  This Court should grant summary judgment to the Municipality on the issue of punitive damages.

### B. <u>Punitive Damages Cannot Be Recovered Against the Municipality or Its Officials Under Federal Law.</u>

Punitive damages are not recoverable against a municipality in a Sec. 1983 case.  <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 101 S.Ct. 2748 (1981).  Nor are they recoverable against a public official sued in his official capacity. <u>Mitchell v. Dupnik</u>, 67 F.3d 216, 223-24 (9th Cir. 1995).  Thus, punitive damages are not at issue for any defendant, in any capacity, except for the officers in their individual capacities.

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 22 of 25

C. **Plaintiff Has Failed To Plead or Present Evidence Supporting Punitive Damages Against Any Defendant; Supreme Court Sets a High Bar for Such Damages.**

Plaintiff's Complaint barely pleads punitive damages, referencing them seemingly as an afterthought.  See Dkt. 25, paras. 3.9, 4.6 and 5.4; prayer for relief at paras. 1-3.  The Complaint does not allege facts sufficient to support such a claim.  Nor, on all the evidence developed from the parties' discovery efforts for the past year, can Plaintiff support such a claim.  It must be dismissed.

The U.S. Supreme Court has set a high bar before punitive damages can be awarded in a Sec. 1983 case.  Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).  The Court said:

> We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be <u>motivated by evil motive or intent</u>, or when it involves <u>reckless or callous indifference</u> to the federally protected rights of others.

Id. at 56 (emphasis added.)

Plaintiff has not alleged, nor does she have evidence of, any evil motive or intent on the part of the officers.  She merely states the officers "recklessly" published defamatory information, Dkt. 25 at Para. 4.5, and acted generally in a "reckless" manner, Dkt. 25 at Para. 5.2.  Such vague and conclusory allegations do not warrant jury consideration of punitive damages for the officers.

D. **Punitives Are Not for Plaintiff's Subjective Experience of Incident.**

Punitive damages are not awarded based on a plaintiff's subjective experience of embarrassment, fear or distress, but on the conduct of the defendant.  In other words, assuming liability, Plaintiff may be entitled to some compensatory damages.  No matter how upset she was, however, she cannot have punitive damages unless a defendant had the requisite state of

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 23 of 25

mind.   Under the undisputed, objective facts, the individual officers detained her just long enough for the victim teller to take a look and tell police this was not the robber.  Dkt. 25 at Para. 2.12   Plaintiff's subjective allegations serve only to dramatize Plaintiff's claimed experience. (Making "no efforts to remove plaintiff from public ridicule," Dkt. 25 at Para. 2.16; acting toward plaintiff in "such an egregious manner that the conduct did cause severe emotional distress to plaintiff," Dkt. 25 at Para. 5.3.)  Such allegations shed no light on Defendants' conduct or state of mind required for punitives; they only assert Plaintiff's subjective reaction.

In one of the fundamental U.S. Supreme Court Sec. 1983 cases, the Court said:

> [B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery
.

Harlow, supra, 457 U.S. at 817-18.  Plaintiff's claim lacks even those "bare allegations of malice."  It must be dismissed for lack of specificity or a cognizable legal theory.

## CONCLUSION.

Without a doubt, that day at the Sears Mall was unpleasant for Ms. Mitchell.  She personally may have "issues of fact" about whether guns and handcuffs were needed.  It is surely hard for a law-abiding citizen to picture herself as someone dangerous.

However, such subjective "issues of fact" are not "material" as a matter of law to the officers' immunity.  They are not "material facts" to be addressed by the jury.  As to how the officers conducted their response and whether they violated the Fourth Amendment rights, there is no genuine issue of material fact precluding summary judgment, and Defendants are entitled to judgment as a matter of law on all claims.

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 24 of 25

Respectfully submitted this 28th day of April, 2008.

JAMES N. REEVES
Municipal Attorney

By: s/ Joyce Weaver Johnson
  Municipal Attorney's Office
  P.O. Box 196650
  Anchorage, Alaska 99519-6650
  Phone: (907) 343-4545
  Fax: (907) 343-4550
  E-mail: uslit@muni.org
  Alaska Bar No. 9306029

The undersigned hereby certifies that on 04/28/08 a true and correct copy of the *Motion for Summary Judgment Based on Immunity* was served on:

  - Isaac D. Zorea and Moshe C. Zorea

by first class regular mail, if noted above, or by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

 s/ Cathi Russell
Cathi Russell, Legal Secretary
Municipal Attorney's Office

Motion for Summary Judgment Based on Immunity
Mitchell v. Anchorage Police Department et al.
Case No. 3:05-cv-00273-JWS
Page 25 of 25