Isaac D. Zorea
Law Office of Isaac Derek Zorea
P.O. Box 210434
Anchorage, AK 99521
(907) 677-3779
(907) 644-2802 facsimile

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

CAROLYN MITCHELL,                          )
          Plaintiff,                          )
          vs.                                 )
                                              )
ANCHORAGE POLICE DEPARTMENT and the        )
MUNICIPALITY OF ANCHORAGE, a               )
municipal corporation, WALTER MONEGAN,     )
Officer HENIKMAN, and Officer J. VOSS,     )
          Defendants.                         )
_____    )

Case No. 3:05-cv-00273-JWS

## JOINT STATEMENT AND PRETRIAL REPORT

Complying with this Court's Order dated March 25, 2008, at docket 90, the

parties provide the following joint statement and pretrial report.

The parties have consulted and jointly prepared the following responses to

this Court's Order at docket 90:

A.    **ISSUES:**

    1.    **Statement of Issues (Plaintiff Statement of Issues).**

a.    Claim Under 42 U.S.C. § 1983.

Mitchell must prove the following legal elements in order to establish a claim

under 42 U.S.C. § 1983:

1)  as to each defendant, that defendants, Municipality of Anchorage, Walter Monegan, Officer Henikman, and Officer Voss, were acting under color of state law when detaining Mitchell;

2)  as to each defendant, that defendants, Municipality of Anchorage, Walter Monegan, Officer Henikman, and Officer Voss, by detaining Mitchell deprived her of a right, privilege, or immunity secured by the Constitution or laws of the United States.

b. Defamation: Slander per se.

  Mitchell must prove the following legal elements to establish a claim of defamation: slander per se:

1)  that there occurred a false and defamatory statement;

2)  that there occurred an unprivileged publication of the false and defamatory statement to a third party;

3)  that there existed fault amounting at least to negligence on the part of the publisher; and

4)  that there exists "per se" actionability.

c. Intentional Infliction of Emotional Distress.

  Mitchell must prove the following legal elements to establish a claim of intentional infliction of emotional distress:

1        1)     that the conduct of defendants, by arresting Mitchell, pointing

2

3                    weapons at her, having her standing handcuffed in public view, and

4                    separating her from her child, were extreme and outrageous;

5        2)     that the conduct of defendants, by arresting Mitchell, pointing

6                    weapons at her, having her standing handcuffed in public view, and

7                    separating her from her child, were intentional or reckless;

8        3)     that the conduct of defendants, by arresting Mitchell, pointing

9

10                 weapons at her, having her standing handcuffed in public view, and

11                 separating her from her child, caused her emotional distress; and

12        4)     that Mitchell's emotional distress is severe.

13   d.     False Arrest.

14        This cause of action has been established and as a matter of law occurred.

15

16

17       2.     **Statement of Issues ( Defendant's Affirmative Defenses).**

18        Defendants must establish the following legal elements to prevail on

19   their affirmative defenses:

20

21   a.     Qualified immunity, Sec. 1983:

22        1)     They did not violate Plaintiff's Fourth Amendment rights.

23        2)     If they did violate Plaintiff's Fourth Amendment rights, they

24

25                    could reasonably, but mistakenly, have believed that their actions

26                 did not violate her clearly established Fourth Amendment right.

27

28  

1

    b.    Qualified immunity, torts:

2

3

        1)    They did not commit the common-law torts alleged.

4

        2)    If they did commit the common-law torts alleged, they could

5

                reasonably have believed that their actions were lawful.

6

7

8

    c.    Discretionary immunity, AS 09.65.070(d)(2):

9

        1)    Defendants acted and/or failed to act according to their

10

                discretionary functions and/or duties as public officials.

11

12

13

    d.    Failure to state a claim:

14

        1)    Plaintiff's physical injury claim fails to state a viable cause of

15

16

                action or a claim on which relief can be granted.

17

        2)    Plaintiff's training claim fails to state a viable cause of action or

18

                claim on which relief can be granted.

19

        3)    Plaintiff's supervision claim fails to state a viable cause of action

20

                or claim on which relief can be granted.

21

22

        4)    Plaintiff's Monell claim fails to state a viable cause of action or

23

                claim on which relief can be granted.

24

    e.    Defendants' "statement" complained of was privileged because:

25

26

        1)    It affected important interests of the public and

27

28

2)    Its publication to the public is otherwise within generally

accepted standards of decent conduct.

f.    Defendants' "statement" complained of was privileged because:

1)    It affected matters of public safety.

2)    It affected the public interest.

g.    Legal justification.

1)    Defendants did not violate the law.

2)    If Defendants did violate the law, their actions were justified,

because they had a duty to make a prompt investigation.

3)    If Defendants did violate the law, their actions were justified,

because of necessity.

h.    Good faith.

1)    Defendants did not violate the law.

2)    If Defendants did violate the law, they did so by mistake, and in

good faith.

3.    **Plaintiff's Objections to Defendant's List of Affirmative Defenses.**

a.    Plaintiff objects to any questions of qualified or discretionary immunity going forward to the jury in this case.  Plaintiff believes that issues of qualified or discretionary immunity are legal issues, and not issues for the fact finder to decide.

B.    STATEMENT OF UNCONTESTED FACTS

1.    On May 8, 2004, at approximately 3:30 p.m., a crime of violence, namely, a bank robbery, occurred at the Wells Fargo bank, which is located near the western end of the Sears Mall.

2.    The robber, a woman, indicated to the bank teller that she had a gun.

3.    The bank teller, and other witnesses, described the suspect as a black female adult, heavy set, wearing a dark shirt, and carrying a bag.  This descriptive information was broadcast to police and FBI who responded.

4.    Responding to the police broadcast, Officer Henikman and Officer Voss, of the Anchorage Police Department, took up positions near the eastern end of the Sears Mall, located along Benson boulevard.

5.    At approximately the same time that the robbery occurred at the Wells Fargo bank, located near the western side of the Sears Mall, Carolyn Mitchell, and her 12 year old son Demarcus, were shopping for clothes at the Sears department store, located at the extreme eastern side of the Sears Mall.

6.    Carolyn Mitchell, a black female, was wearing a white Nike jumpsuit, and

was carrying shopping bags from Sears department store.

7.     While Mrs. Mitchell was preparing to depart the Sears departments store, armed police officers directed that all shoppers at the store quickly exit the mall.  The officers directed the shoppers, which included Carolyn and her son Demarcus, to exit the mall through a exit along side the Sears department store, leading toward Benson boulevard.

8.     As Carolyn and Demarcus Mitchell departed the Sears Mall, along with the other shoppers, Officer Henikman and Officer Voss, noticed Carolyn Mitchell.  The two officers believed Carolyn resembled the descriptive information that had been broadcast.  Based on that belief the officers, pointed their weapons at Carolyn, and ordered people to "move away from the black female."  At the command of the officers, everyone moved from Carolyn except her son Demarcus.  The officers, upon seeing Demarcus remain, instructed the black male to move from the black female.  After the second request, Demarcus moved away from his mother's side, leaving Carolyn by herself.

9.     After Demarcus moved away from Carolyn Mitchell, Officer Henikman, with weapon pointed at her, told her to turn to turn around, and walk backward toward his voice.  Carolyn complied.  As she moved backward, Officer Henikman walked toward her and handcuffed her hands behind her back. While Officer Henikman handcuffed Carolyn, Officer Voss continued to point his weapon at her.

10.   After handcuffing Mitchell, Officer Henikman walked her to his police vehicle. When Carolyn reached the police vehicle, Officer Henikman took her purse and serached its contents, and retrieved her identification. Carolyn was identified by a military identification card, and was physically searched for weapons. Officer Henikman did not find any weapons on Carolyn's person, nor did he find any weapons within her purse.

11.   After being searched, and identified, Carolyn asked Officer Henikman if her son could use her cell phone to call his father. Officer Henikman did not permit Demarcus to use the phone. Officer Henikman also would not allow Demarcus to stand by his mother. Carolyn asked Officer Henikman why she had been detained, and the officer told her she would find out shortly.

12.   Carolyn Mitchell remained in handcuffs for 20-30 minutes. During that time, she was told to stand near the police vehicle. While Carolyn stood in handcuffs near the police vehicle, people who knew her saw her as they drove by on Benson boulevard. Also, local broadcaster KTUU Channel 2 News filmed the scene at the mall. The coverage of KTUU News showed Carolyn Mitchell standing with her hands behind her back, although it did not show her handcuffs.

13.   KTUU later broadcast the images which depicted Carolyn Mitchell, at least twice during its evening news programs. The broadcasts did not identify Mrs. Mitchell. The broadcast also stated that no arrests had yet been made by police.

14.     After about 20-30 minutes, a police vehicle drove by Carolyn Mitchell. In the vehicle was the bank teller, who told police that Carolyn was not the person who had robbed the Wells Fargo bank. Upon learning that Carolyn was not the bank robber, Officer Henikman released her.

15.     The real robber had apparently fled the mall before it was surrounded by police. She was located at a hotel near downtown Anchorage several hours later.

16.     Carolyn Mitchell experienced inconvenience, embarrassment, and emotional distress as a result of her detention.

17.     Carolyn Mitchell experienced further inconvenience, embarrassment, and emotional distress as a result of the KTUU broadcasts, and because she was exposed to what she believed to be public ridicule because people driving or walking along Benson boulevard could have seen her in handcuffs, or surrounded by police.

Respectfully submitted this 28ᵗʰ day of April 2008.

    S/  Isaac Zorea
Law Offices of Isaac D Zorea
P.O. Box 210434
Anchorage, AK 99521
907-830-1385
907-677-3739
Eyedz@gci.net

1

2

3              Certificate of Service

4      I hereby certify that on April 28, 2008
       I electronically filed the foregoing with
5      the Clerk of Court using the CM/ECF
       system which sent notification to the
6      following:

7
                  Joyce Weaver Johnson
8

9      and I hereby certify that I have mailed by
       United States Postal Service the document
10     to the following non CM/ECF participants:

11         none.

12
       Dated this 28th day of April 2008, at Anchorage, Alaska.
13

14      S/ Isaac Zorea
         Law Offices of Isaac D Zorea
15       P.O. Box 210434
         Anchorage, AK 99521
16       907-830-1385
         907-677-3779
17       Eyedz@gci.net

18

19

20

21

22

23

24

25

26

27

28