UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| CAROLYN MITCHELL, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ANCHORAGE POLICE DEPARTMENT, )<br>*et al.*, )<br>)<br>Defendants. )<br>) | 3:05-cv-00273 JWS<br><br>ORDER AND OPINION<br><br>[RE:   Exhibits; certain<br>        testimony] |

**A. Exhibits**

In a standard form order for pre-trial proceedings, the court required that the parties meet, mark their exhibits, and then file exhibit lists with the court.  The order also required each party "to serve and file all objections to exhibits."[1]  This was to be done by May 5, 2008.  The order also provided that when an objection was made, the offering party should respond with "arguments and authorities in favor" of admitting the exhibit to which an objection was taken.  The arguments and authorities were due by May 12, 2008.

Plaintiff filed no objections to any of defendants' exhibits.  Therefore, as announced at the final pre-trial conference, all of the exhibits on defendants' list of exhibits at docket 101 are admitted in evidence.

Defendants did file timely objections at docket 103 to some of plaintiff's exhibits.  The objections are found at docket 103.  At the final pre-trial conference, the court

---

[1]Doc. 90 at p. 3.

explained that to the extent plaintiff actually intended to seek admission of those exhibits consisting of deposition transcripts, the objections were sustained. The court indicated at the conference, that it would rule on the remaining objections prior to commencement of trial.

An examination of the record shows that plaintiff has not timely (or even belatedly) filed any arguments or cited any authorities in favor of the admission of the exhibits as to which defendants timely objected. It follows that the objections are all sustained, with the exception of the objection to exhibit 16 which is discussed below. Plaintiff's exhibits 7, 8, 9, 11, 12, 13, 17 and 18 are excluded from evidence.

The court's examination of plaintiff's witness list at docket 100 shows that exhibit 16 was marked "ADM" meaning that it was admitted by stipulation. The exhibit is admitted in evidence pursuant to D.Ak.LR 39.3(a)(5)([A]. The same local rule also provides that where an exhibit is marked "ADM," "no objections will be heard regarding [its] admissibility." It follows that the objection to exhibit 16 may not be considered. If defense counsel believed plaintiff's lawyer erred in marking exhibit 16 "ADM," that error should have been advanced as a preliminary issue for decision in connection with the objections filed on May 5. It was not.

In summary, all of defendants' exhibits listed at docket 101 are admitted and plaintiff's exhibits 1 thru 6, 10, and 14 thru 16 listed at docket 100 are admitted.

**B. Certain Testimony**

In their objections to exhibits, defendants noted that at deposition, plaintiff asked one officer if he learned police procedures in "Nazi Germany." Plaintiff's counsel is advised that no such question may be posed during the trial to any witness. Questions regarding the training an officer actually had might well be appropriate, but the inflammatory nature of and the impossibility of an affirmative response to an inquiry asking if a police officer in Alaska in 2008 received training in Nazi Germany will not be tolerated. Such a question would not elicit relevant testimony and could only be designed to inflame the passions of the jury.

In their objections to exhibits, defendants also argue that no officer should be questioned about what damage his firearm might cause if accidentally discharged.

Plaintiff argues that the evidence is "more prejudicial than probative, argumentative, calling for speculation, foundation, mischaracterizing testimony, and mischaracterizing evidence."[2] From this rambling verbal assault, it is somewhat difficult to distill exactly which rules of evidence counsel had in mind, but the court interprets the list of defects to implicate Rules 401, 402, 403, 602, 701 and 702.

Turning first to Rules 401 and 402, the individual officer's perception of the extent of harm which could have been done to plaintiff by the accidental discharge of a firearm is relevant to the merits of plaintiff's claim for intentional infliction of emotional distress ("IIED"). While it is plaintiff's perception of the risk which would relate to any damages to be awarded on her IIED claim, the officer's view of the risk could be relevant to assessing punitive damages. The court has separated this case into two phases, the first of which will concern entitlement to and the quantum of compensatory damages and the second of which will concern entitlement to and the quantum of punitive damages. Where testimony is relevant to both phases, it will be heard in the first phase. The fact that the testimony is relevant to the IIED claim under Rule 401 is sufficient to overrule any objection based on Rule 402.

Turning to Rule 403, the court finds no basis for excluding the evidence on the grounds advanced – prejudice. The evidence is of substantial relevance to the IIED claim. Any prejudice which might come from understanding that a firearm could have killed or maimed the plaintiff does not "substantially outweigh" the probative value of the evidence, which is the test under Fed. R. Evid. 403.[3] It may also be noted that any prejudice which does arise from this evidence is not "unfair" (the only type of prejudice which is of concern under Rule 403), because it is something inherent in the very act of drawing the firearm.

---

[2]Doc. 103 at p. 2.

[3]Alaska Rule of Evidence 403 is more restrictive; counsel may have had it in mind when she made her objection.

The objection under Rule 602 cannot be ruled on in advance of trial. Whether a particular officer has first hand knowledge of what happens to those struck by the discharge of the particular type of firearm is presently unknown to the court.

The court finds that a police officer could offer a lay opinion about the general consequences of discharging a firearm under Rule 701. To begin with a person who had seen the results of gunshot wounds suffered in circumstances sufficiently similar to those which would have surrounded an accidental discharge here, would be offering an opinion based on a rationally based perceptions. Secondly, that opinion would clearly be helpful to the trier of fact in assessing the merits of the IIED claim Of course, there would be limits on lay opinion about gunshot wounds, lest the opinion extend into an area requiring scientific, technical, or other specialized knowledge implicating Rule 702. For example, without qualifying as an expert, the officer could not offer an opinion about the precise extent of damage to be expected from a particular gunshot wound.

In summary, assuming the requisite foundation of personal knowledge is laid pursuant to Rule 602, plaintiff's counsel will be able to pose limited questions in the area of the consequences of a firearm's discharge. This will be limited to generalized testimony based on the officer's own perceptions. More precise or detailed opinion testimony may not be sought from lay witnesses.

DATED at Anchorage, Alaska this 29th day of June.

                                    /s/
                              JOHN W. SEDWICK
                    UNITED STATES DISTRICT JUDGE